[ARGUMENT NOT YET SCHEDULED]
**UNITED STATES COURT OF APPEALS**
*for the* **District of Columbia Circuit**

| | |
|---|---|
| In re: ABD AL-RAHIM HUSSEIN AL-NASHIRI | ) No. 18-1279 <br> ) <br> ) **SUPPLEMENTAL** <br> ) **ATTACHMENTS TO** <br> ) **PETITIONER'S** <br> ) **PETITION FOR A WRIT** <br> ) **OF MANDAMUS AND** <br> ) **PROHIBITION** <br> ) <br> ) Dated: November 21, 2018 <br> ) |

Michel Paradis
CAPT Brian Mizer, USN, JAGC
LT Alaric Piette, USN, JAGC
U.S. Department of Defense
Military Commission Defense Organization
1620 Defense Pentagon
Washington, DC 20301

*Counsel for Petitioner*

**Volume 2 of 2**

| | |
|---|---|
| **From:** | Ward, Lisa (EOIR) |
| **To:** | Sheehey, Kate (EOIR); Santoro, Christopher A (EOIR) |
| **Subject:** | Fwd: Arlington Immigration Judge Candidate Request for an EOD Date in 2018 |
| **Date:** | Wednesday, August 02, 2017 8:02:38 PM |

FYI.


Begin forwarded message:


> **From:** "Keller, Mary Beth (EOIR)" <MaryBeth.Keller@EOIR.USDOJ.GOV>
> **Date:** August 2, 2017 at 7:53:16 PM EDT
> **To:** "McHenry, James (EOIR)" <James.McHenry@EOIR.USDOJ.GOV>
> **Cc:** "Reilly, Katherine - OGC (EOIR)" <Katherine.Reilly@EOIR.USDOJ.GOV>,
> "Ward, Lisa (EOIR)" <Lisa.Ward@EOIR.USDOJ.GOV>
> **Subject: FW: Arlington Immigration Judge Candidate Request for an EOD Date in 2018**

James



Duplicate

Thanks.
Mtk


*MaryBeth Keller*


> **From:** Lee-Sullivan, Marcia L. (EOIR)
> **Sent:** Wednesday, August 02, 2017 4:01 PM
> **To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
> **Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
> **Subject:** Arlington Immigration Judge Candidate Request for an EOD Date in 2018
> **Importance:** High

Judge Keller,

**From:**     Keller, Mary Beth (EOIR)
**To:**       Ward, Lisa (EOIR)
**Cc:**       Sheehey, Kate (EOIR)
**Subject:**  RE: Arlington Immigration Judge Candidate Request for an EOD Date in 2018
**Date:**     Wednesday, August 02, 2017 7:43:24 PM

Ok.   Will do.

*MaryBeth Keller*

**From:** Ward, Lisa (EOIR)
**Sent:** Wednesday, August 02, 2017 7:36 PM
**To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
**Cc:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Subject:** Re: Arlington Immigration Judge Candidate Request for an EOD Date in 2018

MaryBeth,

I think you need to talk to James.  He is aware of this situation.  He's been tracking all IJs with Kate and I hadn't realized that We had let him know about this one.

Also, I wasn't aware he was active duty, so we do have allow that timeframe.

I just think we should check with James first.

Lisa

On Aug 2, 2017, at 7:14 PM, Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV> wrote:

> Thanks Marcia.  I don't think we can extend an offer, but delay the EOD indefinitely, until an unknown date at least 10 months into the future.  (b)(5) DP ▮▮▮▮▮▮▮▮
> I believe we need to treat this as we have the one other situation where a release from the military has come up, which is to hold the package, and tell the candidate we will connect with him again closer to the date he can EOD.   From the below, this sounds like February, which is 120 days prior to the May date he's mentioned, assuming we have a May or later class on the schedule at that time.
> I've copied in Lisa to make sure she is looped in and that we are handling this properly.
>
> Thanks.
> Mtk

*MaryBeth Keller*

**From:** Lee-Sullivan, Marcia L. (EOIR)

**Sent:** Wednesday, August 02, 2017 4:01 PM
**To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** Arlington Immigration Judge Candidate Request for an EOD Date in 2018
**Importance:** High

Judge Keller,

On June 21, 2017, Human Resources made the official offer to Mr. Vance Spath, to become an Immigration Judge at the Arlington Immigration Court at the IJ-2 salary level with an EOD date of September 17, 2017. On July 12, 2017, Human Resources received a response from Mr. Spath. Due to his military obligations, Mr. Spath is requesting an **EOD date of May 15, 2018 or later.** For your review, I am including the message the Human Resource Specialists, Ms. Holly Pryor received from Mr. Vance Spath on July 12, 2017 at 7:12am.

*Ms. Pryor,*

*I wanted to let get back with you as soon as I could. Please express to your management I remain extremely interested in the position. I also know I would bring the right experience and enthusiasm to the job. The complication of the job offer remains my status as an active duty member of the Armed Forces, and my position as Chief Judge of the Air Force. The application and interview process has taken a bit longer than I expected. When the initial offer came in March 2017, it was for the entry at IJ-1 and a start date only a few weeks later. I indicated this would not work. On May 10, 2017, the offer was changed to IJ-2, with a start date to be determined. On June 21, 2017, a voicemail was left with a start date of September 18, 2017. I did express the September 2017 start may work - in March 2017, but I did not expect the amount of time to see if that date would be approved. The Air Force requires 120 days (at a minimum) for release from active duty. I made some inquiries regarding exceptions to policy, and that is not an option. The Air Force has not approved these for a variety of reasons. I also am uncomfortable with such short notice to the Air Force after the lengthy interview and application process for a variety of reasons.*

*As this timeline has unfolded, there have also been some significant changes in circumstances for me. I am in the midst of a murder trial that has already had extensive motion practice. I remain detailed to a case at Guantanamo Bay Cuba which requires significant time to hand to another trial judge. The requirements for security clearances and clearance to travel for the case are significant. Finally, the Air Force assignment season has passed, and the trial judiciary is left with a couple of significant vacancies that will not be filled until the next course for Air Force trial judges in April 2018. This situation is made worse as a chief judge of a circuit has also just submitted his retirement application. He has requested the 120 day minimum period of time.*

*Again, I want to express my sincere desire to join the team of Immigration Judges. However, I must request a start date of May 15, 2018 or later. That start time period gives me the lead time I need to ensure I give a bit more than the 120 day minimum notice, and to leave the active duty trial judiciary in the place to which I have led it. Please express to management my commitment to them, but also, my commitment to leave active duty in a manner consistent with serving there for over 25 years. I wish the timing of the above events had been different, but at this point, we are where we are at. I look forward to hearing from you all.*

*I am traveling for the next three weeks. However, I have my cell,* (b)(6) *, and I will have email access.*

*I look forward to hearing from you.*

*Vhs*

*//SIGNED//*
*VANCE H. SPATH, Colonel, USAF*
*Chief Trial Judge*


To date, Human Resources has not responded to his request. Please advise.


Marcia Lee-Sullivan
Executive Programs Manager
Office of the Chief Immigration Judge
(703) 305-1725

| | |
|---|---|
| **From:** | Giles, Naomi (EOIR) |
| **To:** | Sheehey, Kate (EOIR) |
| **Cc:** | Pryor, Holly (EOIR) |
| **Subject:** | RE: IJ Candidate Spath |
| **Date:** | Wednesday, April 11, 2018 9:50:35 AM |

Kate – per Holly he is good for the 8th July 2018.


Naomi Giles

Human Resources Specialist (Staffing/Classification)

Executive Office for Immigration Review

Tele 703 305-0526/Fax 703 305-1456




From: Sheehey, Kate (EOIR)
Sent: Wednesday, April 11, 2018 9:36 AM
To: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
Subject: IJ Candidate Spath


Naomi – last week in our notes re: IJ candidates that are from old ads, you noted that candidate Vance Spath would be available to talk to after 4/9 re: the July EOD.  Can you confirm with him that he can EOD in July?


Thanks,

Kate

| | |
|---|---|
| **From:** | Caldwell, Rhonda (EOIR) |
| **To:** | Sheehey, Kate (EOIR) |
| **Cc:** | Butler, Vicki A. (EOIR) |
| **Subject:** | RE: Vance Spath |
| **Date:** | Thursday, May 10, 2018 8:29:15 AM |

Ok.  Thanks for clarifying that up for me.  Do you know his expected EOD date?

---

**From:** Sheehey, Kate (EOIR)
**Sent:** Wednesday, May 09, 2018 6:09 PM
**To:** Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Carballo, Vivian (EOIR)
<Vivian.Carballo@EOIR.USDOJ.GOV>
**Subject:** Re: Vance Spath

Shouldn't matter that it was a 14 month MOA.  His temp appointment order was already signed, it
should have been for 14 months.

On May 9, 2018, at 5:38 PM, Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV> wrote:

> Does it matter if he signed a 14 month MOA?  Are we doing a temp appointment for 14
> months, 18 months or 24 months.  Please advise at your earliest convenience.  Thanks,
> RC

---

**From:** Sheehey, Kate (EOIR)
**Sent:** Wednesday, May 09, 2018 3:29 PM
**To:** Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; Butler, Vicki A.
(EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Carballo, Vivian (EOIR)
<Vivian.Carballo@EOIR.USDOJ.GOV>
**Subject:** RE: Vance Spath

> Mr. Spath should enter on the temporary appointment.  He was slow not because we
> were waiting for the BI, but because he had military duty.  Given he thought he was
> going to enter on a temporary appointment, and that our new policy is that everyone is
> entering on a temporary appointment, I think it's ok to keep it as is and just use the old
> paperwork.

---

**From:** Caldwell, Rhonda (EOIR)
**Sent:** Wednesday, May 9, 2018 3:27 PM
**To:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Carballo, Vivian (EOIR)
<Vivian.Carballo@EOIR.USDOJ.GOV>
**Cc:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Subject:** RE: Vance Spath

> I did a search in the database and we have not done a permanent appointment packet
> for Vance Spath.  Even though the AG signed/approved the temporary appointment on

03/20/2017 Mr.
Spath has not entered on duty.  I believe we should confirm his BI status and prepare a permanent appointment packet with a footnote regarding Mr. Spath did not EOD on a temporary appointment.  Thanks, RC

---

**From:** Butler, Vicki A. (EOIR)
**Sent:** Tuesday, May 08, 2018 11:29 AM
**To:** Carballo, Vivian (EOIR) <Vivian.Carballo@EOIR.USDOJ.GOV>
**Cc:** Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>
**Subject:** RE: Vance Spath

Vivian:

I found Mr. Spath's recommendation memo (signed by AG on 09/23/16) and temporary appointment order (signed by AG on 03/20/17).  However, I did not find a permanent appointment order.  But, I am in the process of checking DOJ database.

 In the meantime, I also checked the (b)(7)(E) ███████████████████ ███ (where HR previously maintained orders) and I only saw a word document for Mr. Spath's temporary appointment order.

---

**From:** Carballo, Vivian (EOIR)
**Sent:** Tuesday, May 08, 2018 10:11 AM
**To:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>
**Cc:** Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>
**Subject:** FW: Vance Spath

Hi Vicki,

Do you know if an order (I'm guessing perm, per OS's email attached) was signed?

Thank you.

---

**From:** Sheehey, Kate (EOIR)
**Sent:** Tuesday, May 08, 2018 9:45 AM
**To:** Carballo, Vivian (EOIR) <Vivian.Carballo@EOIR.USDOJ.GOV>
**Subject:** RE: Vance Spath

I think his order is already done – he was ready to EOD last July (2017) but had military orders to Guantanamo that we couldn't put off.  Please have Vicki or Rhonda check in the database, but it should already be written and signed.

---

**From:** Carballo, Vivian (EOIR)
**Sent:** Tuesday, May 8, 2018 9:40 AM

**To:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Subject:** Vance Spath

Good morning Kate,

I'm updating the internal excel sheet and I had a question about Vance Spath. I have a note that the Director wants him to EOD in July. What kind of order does he need? And let me know if you'd like me to draft it. Thanks!

-Vivian

| | |
|---|---|
| **From:** | Butler, Vicki A. (EOIR) |
| **To:** | Himsey, Vanessa (EOIR) |
| **Cc:** | Sheehey, Kate (EOIR); Reilly, Katherine (EOIR); Barbee, Judy (EOIR); Caldwell, Rhonda (EOIR); Moutinho, Deborah (EOIR) |
| **Subject:** | RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18 |
| **Date:** | Thursday, June 14, 2018 12:28:20 PM |
| **Attachments:** | 165981.4036925 (AG signed and approved Permanent Appooint Order for an I....pdf |

Per our conversation, please see page 3.

---

**From:** Himsey, Vanessa (EOIR)
**Sent:** Thursday, June 14, 2018 12:24 PM
**To:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>
**Cc:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR) <Deborah.Moutinho@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18

Hi Vicki,

Sorry,  I was on the phone with Mr. Spath.  I will give you a call.  I'm not sure where that date came from.  I have been dealing with OARM since we were told Mr. Spath was
ready to EOD and OARM said they needed the documents before he could EOD since it's been over a year since the last documents were provided and he never EOD.

Thanks.

**Vanessa H. Himsey**
Security Specialist
Executive Office for Immigration Review
Office of Security
Ph: 703-305-1258
Fax: 703-605-0762
Vanessa.himsey@usdoj.gov



---

**From:** Butler, Vicki A. (EOIR)
**Sent:** Thursday, June 14, 2018 12:19 PM
**To:** Himsey, Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV>
**Cc:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>;

Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR)
<Deborah.Moutinho@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration
Judge position dated 06/06/18

Vanessa:

I just tried to call you.  FYI -- Mr. Spath's Permanent Appointment order indicates it was approved by
OARM on 05/29/18.

---

**From:** Himsey, Vanessa (EOIR)
**Sent:** Thursday, June 14, 2018 12:10 PM
**To:** Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; McHenry, James (EOIR)
<James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>;
Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR)
<Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>;
Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR)
<Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>;
McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR)
<Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR)
<Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR)
<Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>;
Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Lee-Sullivan, Marcia L. (EOIR)
<Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR)
<Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan,
Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR)
<Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Coleman,
Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration
Judge position dated 06/06/18

Good afternoon All,

I have been waiting on a new SF52 that is current, a current DOJ-54 and proof of active bar
membership (which I requested Mr. Spath on 2 occasions to provide).  Once received, his new AG
Order, SF-52, DOJ-54 and bar proof would have been forwarded to OARM.  I have not received the
documents from Mr. Spath or the SF-52.

OARM needs these documents before they will approve Mr. Spath to EOD.  As of this morning, June
14, 2018, I was told by OARM that Mr. Spath is not approved by OARM and they are not sure how
his Order was sent to the AG for signature without OARM seeing it.

I am going to try to reach Mr. Spath by phone again today regarding the DOJ-54 and Bar Proof as he
is not responding to emails.

Any other information any one can provide regarding Mr. Spath would be greatly appreciated.

Thank you.

**Vanessa H. Himsey**
Security Specialist
Executive Office for Immigration Review
Office of Security
Ph: 703-305-1258
Fax: 703-605-0762
Vanessa.himsey@usdoj.gov



---

**From:** Caldwell, Rhonda (EOIR)
**Sent:** Monday, June 11, 2018 9:11 AM
**To:** McHenry, James (EOIR) <James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>; McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR) <Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR) <Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>; Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR) <Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan, Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Himsey, Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV>; Coleman, Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>
**Subject:** AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18

**AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position (dated 06/06/18):**
WF 165981.4036925 – Vance H. Spath (Arlington).

Please see the attached pdf copy of the signed/approved Permanent Appointment Order.  Also,

a copy will be available to ADMIN and OCIJ via the IQ4 database.  Please pass this
information on to any of your staff you deem appropriate.

Thanks, RC



Executive Secretariat
Executive Office for Immigration Review, USDOJ
Administrative Resource Center (ARC)
5107 Leesburg Pike, Suite 1800
Falls Church, VA  22554
Direct – (703) 605-0590



# Office of the Attorney General
## Washington, D.C. 20530

ORDER NO. 4188-2018

APPOINTING VANCE H. SPATH AS AN IMMIGRATION JUDGE

By the authority vested in me as the Attorney General by 8 U.S.C. § 1103(g)(1), I hereby

appoint Vance H. Spath as an Immigration Judge, defined in 8 U.S.C. § 1101(b)(4).

This order shall be effective on the first day of the pay period in which the oath of office is

taken.

6/6/18
Date

Jefferson B. Sessions III
Attorney General

4036925.RN2

**U.S. Department of Justice**

Executive Office for Immigration Review

*Office of the Director*

Director

*5107 Leesburg Pike, Suite 2600*
*Falls Church, Virginia 22041*

May 18, 2018

MEMORANDUM FOR THE ATTORNEY GENERAL

THROUGH:             THE DEPUTY ATTORNEY GENERAL  ZB for
                                                           RJR
                                                           6.4.18

FROM:                James R. McHenry III   KHR for JRM
                     Director

SUBJECT:             Permanent Appointment of Vance H. Spath as an Immigration
                     Judge in the Arlington Immigration Court

PURPOSE:             To refer to the Attorney General for his consideration the paperwork
                     to permanently appoint Vance H. Spath as an immigration judge.

TIMETABLE:           At the Attorney General's earliest convenience.

DISCUSSION:          On September 23, 2016, then Attorney General Loretta E. Lynch
                     tentatively selected Vance H. Spath to serve as an immigration judge.
                     On March 20, 2017, Attorney General Session signed an order
                     temporarily appointing Mr. Spath as an immigration judge position,
                     not to exceed 14 months, pending a background investigation.[1]  Mr.
                     Spath's background investigation has now been completed and
                     adjudicated, and there is no derogatory information that would
                     preclude him from being permanently appointed to this position.

---

[1] The signed/approved Temporary Appointment memo/order (*see* WF 3796084) stated, By the authority vested in me as the Attorney General by 8 U.S.C. § 1103(g)(1), I hereby appoint Vance H. Spath as an Immigration Judge, defined in 8 U.S.C. § 1101(b)(4), for a period not to exceed 14 months.  This order shall be effective on the first day of the pay period in which the oath of office is taken.  Subsequent to that memo, however, Mr. Spath did not enter on duty due to a lengthy military commitment to which he was assigned while waiting for his Executive Office for Immigration Review paperwork.  The military commitment will be complete this month and, now that the background investigation is complete, we recommend Mr. Spath enter on duty with a permanent appointment.

Memorandum for the Attorney General                                                    Page 2
Subject:   Permanent Appointment of Vance H. Spath as an Immigration Judge

Mr. Spath is an excellent candidate for an immigration judge position. Mr. Spath has significant experience presiding over trials, and is, to quote one of his interviewers, "a seasoned advocate in complex areas of law" and a "seasoned judge who has a plethora of judicial experience." Although Mr. Spath does not have significant immigration experience, he has presided over cases involving many complex issues, including areas of international law and procedure, highly sensitive and emotional issues such as proceedings involving sexual assault or violent crimes, as well as complex Fourth and Fifth Amendment Constitutional cases.

Mr. Spath is a chief trial judge with the United States Air Force, Joint Base Andrews, Maryland.   Mr. Spath has served in this position since April 2014.   While chief trial judge, Mr. Spath was responsible for the operation of the Air Force Trial Judiciary, including its 26 trial judges.   He served as the Air Force's senior jurist for tribunals and criminal trials worldwide, and was vested with independent authority to issue final, binding decisions on criminal, evidentiary, and procedural issues.   Mr. Spath managed an annual criminal court docket of more than 500 federal criminal trials, and presided over more than 30 felony federal criminal trials each year, to include capital litigation.

Prior to serving as the chief trial judge, Mr. Spath served as director of training and readiness from July 2013 to April 2014, and from July 2012 to July 2013, he served as staff judge advocate.   Mr. Spath has served in the United States Air Force since 1993 and has held a variety of other positions.   He served as a chief regional military judge in the Pacific Judicial Region, Kadena Air Base, Japan, from July 2010 to July 2012, a regional military judge in the Western Judicial Region, Travis Air Force Base, California, from July 2009 to July 2010, a staff judge advocate, F.E. Warren Air Force Base, Wyoming, from July 2006 to July 2009, a chief circuit trial counsel in the Eastern Judicial Region, Bolling Air Force Base, Washington, D.C. from July 2004 to July 2006, a deputy staff judge advocate and prosecutor, Shriever Air Force Base, Colorado, from July 2001 to July 2004, a contract trial attorney, Wright-Patterson Air Force Base, Ohio, from July 1998 to July 2000, a circuit trial counsel/prosecutor, in the Central Judicial Region, Randolph Air Force Base, Texas, from July 1995 to July 1998, and an area defense counsel, Ramstein Air Force Base, Germany, from April 1994 to July 1995.

Memorandum for the Attorney General                                    Page 3
Subject:   Permanent Appointment of Vance H. Spath as an Immigration Judge

> Mr. Spath holds a Bachelor of Arts degree from Virginia Wesleyan College, Norfolk, Virginia, and a J.D. from Quinnipiac University, Hamden, Connecticut.
>
> Until one year from the date of his entry on duty.   Mr. Spath will be subject to removal from his newly-appointed position, without regard to many of the procedural requirements and appeal procedures specified in 5 U.S.C. Chapters 43 and 75 and 5 C.F.R. Parts 432 and 752, if he has performance problems or engages in misconduct.
>
> Mr. Spath's selection for this immigration judge position was made in accordance with the immigration judge hiring procedures approved on April 2, 2007.
>
> An Attorney General Order, permanently appointing Mr. Vance H. Spath as an immigration judge, is attached hereto for signature.

RECOMMENDATION:    That the Attorney General sign the attached order.

APPROVE: _____          Concurring components:

                  Date: June 6, 2018      OLC _____ 6/7/18

                                           OARM _____ 5/29/18


DISAPPROVE: _____          Nonconcurring components:

                                           None
OTHER: _____


Attachment

| | |
|---|---|
| **From:** | Santoro, Christopher A (EOIR) |
| **To:** | Sheehey, Kate (EOIR) |
| **Subject:** | Re: IJ candidate Vance Spath |
| **Date:** | Thursday, June 14, 2018 8:06:37 AM |

July is definitely out. Everyone n the Air Force has agreed to the Sep 2 EOD but they're holding to see what the Secretary of Defense is going to do. The case he is on at Guantanamo Bay has enough visibility that his departure is beyond AF control. They have found a new judge with high enough clearance to reassign to it but that process has taken longer than they expected.


Christopher A. Santoro
Deputy Chief Immigration Judge

On Jun 14, 2018, at 7:55 AM, Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV> wrote:

> Ok.  I'm happy to wait until Monday.  Do I need to tell Holly not to push for July?  Or to hold up and not call back this week?
>
> On Jun 14, 2018, at 7:39 AM, Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV> wrote:
>
>> I just spoke with him. I will talk to you when you get back on Monday unless you need a definitive answer sooner than that. I think (b)(5) DP ████████████████████████████████████
>>
>>
>> Christopher A. Santoro
>> Deputy Chief Immigration Judge
>>
>> On Jun 14, 2018, at 6:31 AM, Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV> wrote:
>>
>>> I feel like (b)(5) DP ████████████████
>>>
>>> Begin forwarded message:
>>>
>>>> **From:** "Sheehey, Kate (EOIR)" <Kate.Sheehey@EOIR.USDOJ.GOV>
>>>> **Date:** June 14, 2018 at 6:31:00 AM EDT
>>>> **To:** "Pryor, Holly (EOIR)"

**From:**    Pryor, Holly (EOIR)
**To:**      Sheehey, Kate (EOIR)
**Subject:** RE: IJ candidate Vance Spath
**Date:**    Friday, June 15, 2018 3:21:30 PM

Hi there - sure thing and I'll follow-up once he and I have spoken.

Thanks,

Holly R. Pryor
 Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Friday, June 15, 2018 3:00 PM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

If you haven't already, would you let Mr. Spath know that, while we wish he could come on board in July, we understand and we look forward to seeing him in September.

-----Original Message-----
From: Pryor, Holly (EOIR)
Sent: Thursday, June 14, 2018 8:51 AM
To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

You're welcome! hope it's nice in San Fran!

Holly R. Pryor
 Executive Office for Immigration Review (EOIR) Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Thursday, June 14, 2018 8:06 AM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: Re: IJ candidate Vance Spath

Ok, thank you!

> On Jun 14, 2018, at 8:01 AM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>
> Hi Kate,
>
> Mr. Spath has been called to active duty for work on a Guantanamo Bay case.  Due to the need for him on the case he says that this is what has prevented him from coming on board with EOIR sooner.
>
> He has put in his retirement request in hopes to alleviate any more delays.  In addition a Judge Advocate was

recently hired to take over his cases and has cleared.
>
> Mr. Spath feels very bad that our agency has had to wait for him to EOD, however, he stated that he has to complete the orders he has received.  If approved, he will work to EOD either early September or mid-October, whichever is approved.
>
> Thank you,
>
> Holly R. Pryor
> Executive Office for Immigration Review (EOIR) Human Resources
> Specialist
> 703-305-1171 (Work)
>
>
> -----Original Message-----
> From: Sheehey, Kate (EOIR)
> Sent: Thursday, June 14, 2018 6:31 AM
> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
> Cc: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Dalton, Kay
> (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette (EOIR)
> <Bridgette.Hill@EOIR.USDOJ.GOV>
> Subject: Re: IJ candidate Vance Spath
>
> He told us earlier that he was coming in July, is that no longer possible?  We've been counting on July for some time and already have a docket waiting for him.
>
>> On Jun 13, 2018, at 4:54 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>>
>> Hi Kate,
>>
>> I was able to connect with Mr. Spath.  He is still very interested in the job offer as an IJ with Arlington.  He has put in his retirement papers with the military and is hopeful with that being done he can EOD either early September or mid-October.  Please advise if this is agreeable and I will follow-up with Mr. Spath.
>>
>> Thank you,
>>
>> Holly R. Pryor
>> Executive Office for Immigration Review (EOIR) Human Resources
>> Specialist
>> 703-305-1171 (Work)
>>
>>
>> -----Original Message-----
>> From: Sheehey, Kate (EOIR)
>> Sent: Tuesday, June 12, 2018 5:10 PM
>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>> Subject: Re: IJ candidate Vance Spath
>>
>> Thank you!
>>
>>> On Jun 12, 2018, at 5:06 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>>>
>>> Hi Kate,
>>>
>>> I placed a call to Mr. Spath.  Waiting for him to return my call.  I also sent him an email to reach out and ask that he give me a call to discuss his EOD with EOIR as an Immigration Judge.
>>>

>>> I'll keep everyone posted.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:28 PM
>>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Thanks Holly.  It's probably nothing... (b)(5) DP
.
>>>
>>> -----Original Message-----
>>> From: Pryor, Holly (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:26 PM
>>> To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Hi Kate,
>>>
>>> I can reach out to Mr. Spath as a follow-up; however, when we last spoke in April he was confirmed to EOD in
July.  I'll follow-up and provide an update.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:24 PM
>>> To: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly
>>> (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: IJ candidate Vance Spath
>>>
>>> Have we spoken with him recently to confirm he's really coming in July?

| | |
|---|---|
| **From:** | Santoro, Christopher A (EOIR) |
| **To:** | Sheehey, Kate (EOIR) |
| **Subject:** | Spath |
| **Date:** | Friday, June 15, 2018 2:52:34 PM |

Have add'l info on Spath. I recommend we go with Sep 2 vs July 8. I have stuff I can show you when you return if you need additional information for the boss.

Christopher A. Santoro

Deputy Chief Immigration Judge

| | |
|---|---|
| **From:** | Adams, Amanda (EOIR) |
| **To:** | Sheehey, Kate (EOIR) |
| **Cc:** | Pease, Jeffrey (EOIR); Macri, Andrea (EOIR) |
| **Subject:** | Re: IJ EOD list |
| **Date:** | Friday, June 22, 2018 11:11:47 AM |

Thanks Kate!

Sent from my iPhone

On Jun 22, 2018, at 11:04 AM, Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV
<mailto:Kate.Sheehey@EOIR.USDOJ.GOV> > wrote:

Updated list from what I sent yesterday, and looping in a few more people – this list includes our three newest July EOD's.  This gives us a July class of ▮ new IJs with a possibility of one more.

Kate

July EOD - certain

Fellrath, Robert

Los Angeles

French, Kathlen

Otero

Gilbert, Daniel

Harlingen

Golovnin, Lena

NYC

Gordon, Cynthia

NYC

Herbert, Nathan

El Paso

Hom, Howard

NYC

Huddleston, Natalie

Los Angeles

Koelsch, David

Baltimore

Laragy, William

Oakdale

Mahasa, Zakia

Baltimore

McFarland, Michael

NYC


Miller, Nancy

Los Angeles


Munson, Angela

LaSalle (but Atlanta for EOD)


Salovaara, Kaarina

Chicago


Thogersen, Cassie

LaSalle (but Oakdale for EOD)


Tijerina, Eric

San Antonio


Walleisa, Michael

Miami


Ward, George

Falls Church


Waterloo, Jason

Los Angeles

July EOD - possible

Vargas-Padilla, Nelson

Ulster

likely, although hasn't rec'd official offer yet

Sept EOD - certain



Carr, Audrey

Bloomington

Jasso, Jaime

Imperial

Nance, Jeffrey

Stewart

Perry, Anne

Los Angeles

Spath, Vance

Arlington

EOD needs to be set

(b)(6)

| From: | Lee-Sullivan, Marcia L. (EOIR) |
|---|---|
| To: | Giles, Naomi (EOIR) |
| Cc: | Ortiz-Ang, Susana (EOIR); Barbee, Judy (EOIR); Roldan, Martin (EOIR); Pryor, Holly (EOIR); Coleman, Briana (EOIR); Himsey, Vanessa (EOIR); Sheehey, Kate (EOIR); Ward, Lisa (EOIR) |
| Subject: | RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18 |
| Date: | Monday, June 25, 2018 5:05:15 PM |

Good Evening Naomi,

The SF-52 was updated and is in route to HR.

Marcia

---

**From:** Giles, Naomi (EOIR)
**Sent:** Monday, June 25, 2018 10:11 AM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan, Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Coleman, Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>; Himsey, Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18

Good morning,

HR has not received an updated 52 for Spath.

Naomi Giles
Human Resources Specialist (Staffing/Classification)
Executive Office for Immigration Review
Tele 703 305-0526/Fax 703 305-1456



---

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Thursday, June 14, 2018 1:23 PM

**To:** Himsey, Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV>; Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; McHenry, James (EOIR) <James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>; McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR) <Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR) <Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>; Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR) <Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan, Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Coleman, Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18

Hi Vanessa,

Your summary regarding the lengthy history of Mr. Spath is extremely helpful !

OCIJ will submit a new updated SF-52 (unless HR directs us otherwise).

Marcia

---

**From:** Himsey, Vanessa (EOIR)
**Sent:** Thursday, June 14, 2018 1:03 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; McHenry, James (EOIR) <James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>; McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR) <Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR) <Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>; Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR) <Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan, Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR)

<Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Coleman, Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>

**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18

Hi Marcia,

The Temp Order that was signed in March 2017 is no longer accurate.  Mr. Spath never EOD with the agency.  During the last year his BI was completed so it was determined his initial appointment would be a permanent appointment versus a temp appointment.

Since Mr. Spath never EOD and it has been over a year, OARM requested an updated DOJ-54 and proof of bar membership along with the corrected SF52 for his initial permanent appointment before signing off on the order.  I was in the process of trying to gather this information for OARM.

After speaking with Vicki, it looks like the Perm Order was sent directly to OARM (which in normal cases would be correct) without coming through security to forward on with the other documents.

Jamila Frone, OARM Director, assumed the documents were received when she received the AG Order for signature and signed.

OARM does still need the additional documents.  I was able to speak with Mr. Spath and he is going to complete the new DOJ-54 and provide me bar proof this afternoon when he gets back to his office and I will forward to OARM.

I will still need the new updated SF-52 showing the initial appointment as a permanent appointment, with an estimated EOD date.  I am not sure who needs to provide this but I'm sure it will be someone included in this email. ☺

Thanks again, everyone.

**Vanessa H. Himsey**
Security Specialist
Executive Office for Immigration Review
Office of Security
Ph: 703-305-1258
Fax: 703-605-0762
Vanessa.himsey@usdoj.gov



---

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Thursday, June 14, 2018 12:37 PM

**To:** Himsey, Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV>; Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; McHenry, James (EOIR) <James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>; McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR) <Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR) <Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>; Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR) <Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan, Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Coleman, Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18

Vanessa,

The AG signed and approved Temporary Appointment Orders as an Immigration Judge dated 03/20/17

- WF 154743.3796084 – Vance H. Spath (Arlington).

Marcia

---

**From:** Himsey, Vanessa (EOIR)
**Sent:** Thursday, June 14, 2018 12:10 PM
**To:** Caldwell, Rhonda (EOIR) <Rhonda.Caldwell@EOIR.USDOJ.GOV>; McHenry, James (EOIR) <James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>; McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR) <Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR) <Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>; Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR) <Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan,

Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR)
<Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Coleman,
Briana (EOIR) <Briana.Coleman@EOIR.USDOJ.GOV>
**Subject:** RE: AG signed and approved 1 Permanent Appointment Order regarding an Immigration
Judge position dated 06/06/18

Good afternoon All,

I have been waiting on a new SF52 that is current, a current DOJ-54 and proof of active bar
membership (which I requested Mr. Spath on 2 occasions to provide). Once received, his new AG
Order, SF-52, DOJ-54 and bar proof would have been forwarded to OARM. I have not received the
documents from Mr. Spath or the SF-52.

OARM needs these documents before they will approve Mr. Spath to EOD. As of this morning, June
14, 2018, I was told by OARM that Mr. Spath is not approved by OARM and they are not sure how
his Order was sent to the AG for signature without OARM seeing it.

I am going to try to reach Mr. Spath by phone again today regarding the DOJ-54 and Bar Proof as he
is not responding to emails.

Any other information any one can provide regarding Mr. Spath would be greatly appreciated.

Thank you.

**Vanessa H. Himsey**
Security Specialist
Executive Office for Immigration Review
Office of Security
Ph: 703-305-1258
Fax: 703-605-0762
Vanessa.himsey@usdoj.gov



---

**From:** Caldwell, Rhonda (EOIR)
**Sent:** Monday, June 11, 2018 9:11 AM
**To:** McHenry, James (EOIR) <James.McHenry@EOIR.USDOJ.GOV>; Reilly, Katherine (EOIR)
<Katherine.Reilly@EOIR.USDOJ.GOV>; Santoro, Christopher A (EOIR)
<Christopher.Santoro@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR)
<Kate.Sheehey@EOIR.USDOJ.GOV>; Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>;
Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR)
<Mary.Cheng@EOIR.USDOJ.GOV>; Murry, Anthony (EOIR) <Anthony.Murry@EOIR.USDOJ.GOV>;
McDaniel, James P. (EOIR) <James.McDaniel@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR)

<Lisa.Ward@EOIR.USDOJ.GOV>; Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Butler, Vicki A. (EOIR) <Vicki.Butler@EOIR.USDOJ.GOV>; Moutinho, Deborah (EOIR)
<Deborah.Moutinho@EOIR.USDOJ.GOV>; Taylor, Charlotte (EOIR)
<Charlotte.Taylor@EOIR.USDOJ.GOV>; Brown, George (EOIR) <George.Brown@EOIR.USDOJ.GOV>;
Ortiz-Ang, Susana (EOIR) <Susana.Ortiz-Ang@EOIR.USDOJ.GOV>; Lee-Sullivan, Marcia L. (EOIR)
<Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Yaseen, Rabbia (EOIR)
<Rabbia.Yaseen@EOIR.USDOJ.GOV>; Barbee, Judy (EOIR) <Judy.Barbee@EOIR.USDOJ.GOV>; Roldan,
Martin (EOIR) <Martin.Roldan@EOIR.USDOJ.GOV>; Giles, Naomi (EOIR)
<Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Himsey,
Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV>; Coleman, Briana (EOIR)
<Briana.Coleman@EOIR.USDOJ.GOV>
**Subject:** AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge
position dated 06/06/18

**AG signed and approved 1 Permanent Appointment Order regarding an Immigration**
**Judge position (dated 06/06/18)**:
WF 165981.4036925 – Vance H. Spath (Arlington).

Please see the attached pdf copy of the signed/approved Permanent Appointment Order.  Also,
a copy will be available to ADMIN and OCIJ via the IQ4 database.  Please pass this
information on to any of your staff you deem appropriate.

Thanks, RC

*R. Caldwell*

Executive Secretariat
Executive Office for Immigration Review, USDOJ
Administrative Resource Center (ARC)
5107 Leesburg Pike, Suite 1800
Falls Church, VA  22554
Direct – (703) 605-0590

| | |
|---|---|
| **From:** | Giles, Naomi (EOIR) |
| **To:** | Santoro, Christopher A (EOIR) |
| **Cc:** | Pryor, Holly (EOIR); Sheehey, Kate (EOIR) |
| **Subject:** | RE: NEW IMMIGRATION JUDGES EOD 9/2/2018 |
| **Date:** | Wednesday, July 11, 2018 11:02:11 AM |

Hi,

You are correct; however until we have his Terminal Leave paperwork I do not feel comfortable putting him on the list.

He should be on the next ALCON email which goes out.

Naomi Giles

---

**From:** Santoro, Christopher A (EOIR)
**Sent:** Wednesday, July 11, 2018 10:32 AM
**To:** Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
**Subject:** RE: NEW IMMIGRATION JUDGES EOD 9/2/2018

+ Vance Spath

**Christopher A. Santoro**
Deputy Chief Immigration Judge

Not a responsive record

**VANCE H. SPATH**                                                                                           (b)(6)

(b)(6)

## PROFESSIONAL SUMMARY

Twenty-three years of complex litigation and judicial experience. Trial judge for 4+ years, handling over 240 trials, including three death penalty cases. Prosecutor and defense counsel for 12 years, trying over 300 cases, to include a death penalty trial, and many homicide, sexual assault, felony, and complex fraud trials. Complex civil litigation experience. Multiple leadership positions, responsible for managing high volume criminal dockets, and large numbers of office staff/personnel. Responsible for multi-million dollar budgets.

## PROFESSIONAL EXPERIENCE

**Chief Trial Judge**                                                     U. S. Air Force, Joint Base Andrews, MD
**Of the Air Force**                                                                                 (April 2014 – present)

Responsible for operation of Air Force (AF) Trial Judiciary to include its 26 trial judges. AF's senior jurist for tribunals and criminal trials worldwide. Vested with independent authority to issue final, binding decisions on criminal, evidentiary, and procedural issues. Managed annual criminal court docket of 500+ federal criminal trials. Presided over 30+ felony federal criminal trials each year, to include capital litigation. Overseas travel and operational budget of $1.8 million per year. Handpicked to preside over Cole bombing case at Guantanamo Bay, Cuba.

**Director, Training &**                                                   U. S. Air Force, Joint Base Andrews, MD
**Readiness**                                                                                  (July 2013 – April 2014)

Selected by AF's top lawyer to inspect all legal operations across the service. Guaranteed uniform delivery of legal services AF-wide. Provided maximum efficiency to legal operations annual $6M budget. Ensured criminal prosecutions conducted in professional, just, competent, civil manner. Ensured administrative processing of federal convictions appropriately processed. Provided critical training to all trial participants, to include prosecutors, defense counsel, and paralegals.

**Staff Judge Advocate**                                                   U. S. Air Force, Joint Base Andrews, MD
                                                                                              (July 2012 – July 2013)

Led 48 person office providing legal support to AF's premier base, provided advice and guidance across spectrum of legal practice. Responsible for prosecution of over 40 felony trials, including allegations of rape, murder, robbery, and assault. Supervised complex and high-profile criminal investigations involving federal and local investigative agencies. Guided $55M in contract action and successfully defeated a $1M claim against AF.

**Chief Regional Military Judge**                                        U.S. Air Force, Kadena Air Base, Japan
**Pacific Judicial Region**                                                                      (July 2010 – July 2012)

Led AF's largest geographic judicial region. Responsible for all criminal trials conducted throughout region; to include docketing, case management orders, training, and discovery oversight. Personally presided over 65 felony trials, to include a capital murder case, numerous sexual assault and child pornography cases. Instructed juries, issued rulings, ruled on objections, and adjudged federal convictions and imposed federal sentences. Federal judicial duties extended to all uniformed DoD personnel.

| | |
|---|---|
| **Regional Military Judge** | U. S. Air Force, Travis Air Force Base, CA |
| **Western Judicial Region** | (July 2009 – July 2010) |

Presided over 85 felony and misdemeanor federal criminal trials. Applied and interpreted the Federal Rules of Evidence, the United States Code, and all applicable laws and regulations. Instructed juries on the law. Ruled on motions and objections. Adjudged federal convictions and imposed federal sentences.

| | |
|---|---|
| **Staff Judge Advocate** | U. S. Air Force, F. E. Warren Air Force Base, WY |
| | (July 2006 – July 2009) |

Led 25 person legal office providing legal services to 4,800 people. Responsible for prosecution of 78 felony and misdemeanor courts. Worked directly with Internet Crimes Against Children, WY, the U.S. Attorney Office for the District of Wyoming, and other federal and local investigative agencies investigating and prosecuting internet and physical crimes against children. Recipient of Federal Child Defender Award.

| | |
|---|---|
| **Chief Circuit Trial Counsel (Prosecutor)** | U.S. Air Force, Bolling Air Force Base, MD |
| **Eastern Judicial Region** | (July 2004 – July 2006) |

Chief Prosecutor for high-visibility and complex felony trials across 23 Air Force Bases located along the Eastern seaboard. Oversaw 400+ trials, provided guidance, developed trial strategy, detailed prosecutors, managed travel budget, developed and provided litigation training for prosecutors throughout circuit, First chair on capital murder prosecution leading to death penalty sentence. First chair on 128 felony trials conducting motion practice, voir dire, opening statements, direct exams, cross-exams, closing argument, and sentencing proceedings.

| | |
|---|---|
| **Deputy Staff Judge Advocate,** | U.S. Air Force, Shriever Air Force Base, CO |
| **And Prosecutor** | (July 2001 – July 2004) |

Lead prosecutor for 15 felony trials. Responsible for all aspects of criminal prosecution for a base with a total population of approximately 4,000 people. Responsible for reviewing over one billion dollars in contract actions and resolving bid protests in excess of $400M.

| | |
|---|---|
| **Contract Trial Attorney** | U.S. Air Force, Wright-Patterson Air Force Base, OH |
| | (July 1998 – July 2000) |

Represented the Air Force in complex civil litigation hearings before the Armed Services Board of Contract Appeals (ASBCA). Personally handled a caseload of 30-40 multi-million dollar defense contractor claims asserted against the Air Force. Prepared submissions to the ASBCA, to include pleadings, motions, and complex multi-issue post-trial briefs, engaged in full range pre-trial discovery practice, conducted direct and cross-examination during trial, and resolved cases using a variety of alternative dispute resolution techniques.

| | |
|---|---|
| **Circuit Trial Counsel (Prosecutor)** | U.S. Air Force, Randolph Air Force Base, TX |
| **Central Judicial Region** | (July 1995 – July 1998) |

Prosecuted 75 criminal felonies and misdemeanors in trials before either a jury or judge. Responsible for all aspects of trial practice, to include pre-trial discovery, charging decisions, pre-trial hearings, direct and cross-examinations, voir dire, opening statements, and closing arguments. First chair on trials involving murder, sexual assault, child exploitation, and fraud. Trial region covered 25 Air Force bases throughout the central United States.

| | |
|---|---|
| **Area Defense Counsel** | U.S. Air Force, Ramstein Air Force Base, Germany |
| | (April 1994 – July 1995) |

Provided military defense services to a base population exceeding 9,600 people. Represented accused in criminal trials, interrogation situations, pretrial confinement hearings, and all other adverse proceedings they faced. Defended criminal defendants in 25 jury or bench trials.

| | |
|---|---|
| **Base Prosecutor** | U.S. Air Force, Ramstein Air Force Base, Germany |
| | (July 1993 – April 1995) |

Served as lead and second chair prosecutor on 80 criminal trials, conducting all aspects of pre-trial and trial practice.  Handled multiple child sexual abuse, sexual abuse, assault, and fraud trials.

## EDUCATION

LL.M., The Army Judge Advocate General's School  (2001)
Juris Doctor, Quinnipiac University  (1991)
Bachelor of Arts, Political Science, Virginia Wesleyan College  (1987)

## BAR ADMISSIONS

Supreme Court of the United States
New York, All Court Levels
United States Court of Appeals for the Armed Forces
United States Air Force Court of Criminal Appeals

**Lee-Sullivan, Marcia L. (EOIR)**

| | |
|---|---|
| **From:** | Nadkarni, Deepali (EOIR) |
| **Sent:** | Wednesday, August 22, 2018 5:59 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Cc:** | Canales, Michelle I. (EOIR); Prakobkul, Panita (EOIR); Castro, Deborah (EOIR) |
| **Subject:** | RE: Seeking Mentor Judges |

Hi, Marcia.  Please see below===

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Wednesday, August 22, 2018 5:51 PM
**To:** Nadkarni, Deepali (EOIR) <Deepali.Nadkarni@EOIR.USDOJ.GOV>
**Cc:** Canales, Michelle I. (EOIR) <Michelle.Canales@EOIR.USDOJ.GOV>
**Subject:** Seeking Mentor Judges

Friendly Reminder,

Please provide the mentor judges for the following new Arlington judges:

Francis Mendez        Need Home Court Mentor Judge   John Bryant
                      Need Training Court Mentor Judge  still TBD!

Vance Spath           Need Home Court Mentor Judge  Karen Donoso Stevens
                      Need Training Court Mentor Judge NEW Elise Manuel

Thank you !

Marcia

1

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Thursday, May 31, 2018 3:44 PM |
| **To:** | Nadkarni, Deepali (EOIR) |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | Vance H. Spath - Seeking Mentor Judges |

Judge Nadkarni,

Please provide the Home Court Mentor Judge and Training Court Mentor Judge for Vance H. Spath.

Please note the following dates from the Office of Policy for the New Immigration Judge Training Program:

Home Court Orientation
7/9/2018 – 7/13/2018

Falls Church Training
7/16/2018 – 8/10/2018

Investiture
8/10/2018

Training Court Training
8/13/2018 – 8/24/2018

Vance H. Spath
(b)(6)
(b)(6)

Thank you.

Marcia Lee-Sullivan

## Teerawatkasem, Yada (EOIR)

| From: | Teerawatkasem, Yada (EOIR) |
|---|---|
| Sent: | Friday, June 08, 2018 3:54 PM |
| To: | Castro, Deborah (EOIR) |
| Cc: | Boone-Fisher, Sabina (EOIR); Lee-Sullivan, Marcia L. (EOIR); Prakobkul, Panita (EOIR); Teerawatkasem, Yada (EOIR) |
| Subject: | Arrival of new Immigration Judge - Vance H. Spath (Arlington) |
| Attachments: | Travel Card - Guidance.docx |

Good Afternoon,

On **July 9, 2018**, new Immigration Judges will EOD as new Immigration Judge at the **Arlington Immigration Court**. I want to bring a few items to your attention as we prepare for their arrival.

### Enter on Duty (EOD) Paperwork
The Court Administrator or designee will ensure the new immigration judge completes the required EOD paperwork. The Checklist for Permanent Employees Checklist and the Benefits Checklist are on the intranet (see links below).

You can also find the forms by selecting the following options on the EOIR's Intranet:

- EOIR Intranet
- Components
- Administration
- Human Resources
- Forms

On July 9, 2018, the following forms **MUST** be complete and submitted to Human Resources:

- Appointment Affidavit
- Declaration for Federal Employment Form
- New Employee Identity Proofing Form

Contact your Human Resource Specialist, should you have any questions regarding the EOD Paperwork.

### New Immigration Judge Training Program - Office of Policy, Legal Education and Research Services Division (LERS):

Home Court Orientation
7/9/2018 – 7/13/2018

Falls Church Training
7/16/2018 – 8/10/2018

Investiture
8/10/2018

1

### Home Court Mentor Packet

The Home Court Mentor Packet will be mail (via Federal Express) to your attention.
Upon receipt, please forward the packet to the Home Court Mentor Judge - TBD.

### Training Court Mentor Packet – TBD

The Training Court Mentor Packet will be mail (via Federal Express) to the Court Administrator.
Upon receipt, the Court Administrator will forward the packet to the Training Court Mentor Judge - TBD.

### Hotel Arrangements – Training Court Location

The new judge will be responsible for making their hotel arrangements for their two weeks of training at their assigned training court. Typically, we recommend contacting the Training Court Mentor Judge or Court Administrator to obtain hotel recommendations. The judge should have their government credit card before arriving at the training court – however, if they have not received their government credit card, they will need to use their personal credit card and follow the normal reimbursement process with the Court Administrator.

### Credit Card Application

The Court Administrator is responsible for coordinating the credit card application process. Please refer to the attached "Travel Card – Guidance" and follow the procedures. If the new immigration judge is coming from another federal government agency or a different agency within DOJ - they must cancel their credit card before JP Morgan Chase will issue them a new card. Failing to do so will delay the credit card application process. Please contact Budget at (703) 605-1731 if you have any questions.

### Travel Arrangements

The Court Administrator or designee should assist the new judge with making their travel arrangements through the E-2 Travel System. The new judge **CANNOT** use their personal credit card to make their travel arrangements – it is important to note that they **WILL NOT** be reimbursed. The Court Administrator should contact Susana Ortiz-Ang, Executive Officer for guidance on making travel arrangements using the GTA.

### Special Leave Request

If the new judge has prearranged travel plans during any part of the training program, a personal obligation that requires leave, or request additional time to relocate, refer the new judge to their Assistant Chief Immigration Judge.

### Investiture Ceremony

The new judge is responsible for bringing their own robe for the Investiture Ceremony at Washington, DC. Typically, we recommend contacting the Court Administrator, an Immigration Judge or Assistant Chief Immigration Judge regarding a robe vendor that is in proximity to the home court. The new judge should contact Marcia Lee-Sullivan, Executive Programs Manager for information regarding the Investiture Ceremony.

### New Immigration Judge Contact Information

Vance H. Spath
(b)(6)
(b)(6)

Please contact me should you have any additional questions.

Sincerely,

Yada Teerawatkasem
Management Assistant

Office of Chief Immigration Judge
Falls Church, VA - Headquarter
Yada.Teerawatkasem@usdoj.gov
(703) 605-1701

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Sheehey, Kate (EOIR) |
| **Sent:** | Thursday, June 14, 2018 12:15 PM |
| **To:** | Himsey, Vanessa (EOIR) |
| **Cc:** | Caldwell, Rhonda (EOIR); McHenry, James (EOIR); Reilly, Katherine (EOIR); Santoro, Christopher A (EOIR); Keller, Mary Beth (EOIR); Maggard, Print (EOIR); Cheng, Mary (EOIR); Murry, Anthony (EOIR); McDaniel, James P. (EOIR); Ward, Lisa (EOIR); Butler, Vicki A. (EOIR); Moutinho, Deborah (EOIR); Taylor, Charlotte (EOIR); Brown, George (EOIR); Ortiz-Ang, Susana (EOIR); Lee-Sullivan, Marcia L. (EOIR); Yaseen, Rabbia (EOIR); Barbee, Judy (EOIR); Roldan, Martin (EOIR); Giles, Naomi (EOIR); Pryor, Holly (EOIR); Coleman, Briana (EOIR) |
| **Subject:** | Re: AG signed and approved 1 Permanent Appointment Order regarding an Immigration Judge position dated 06/06/18 |

Mr. Spath has recently received some updates military orders and it sounds likely that he won't be able to EOD until September, so we do have some time to address this.

On Jun 14, 2018, at 11:10 AM, Himsey, Vanessa (EOIR) <Vanessa.Himsey@EOIR.USDOJ.GOV> wrote:

Good afternoon All,



Thank you.

**Vanessa H. Himsey**
Security Specialist
Executive Office for Immigration Review
Office of Security
Ph: 703-305-1258
Fax: 703-605-0762
Vanessa.himsey@usdoj.gov

<image001.jpg>

**From:** Caldwell, Rhonda (EOIR)
**Sent:** Monday, June 11, 2018 9:11 AM

1

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Pryor, Holly (EOIR) |
| **Sent:** | Tuesday, April 10, 2018 2:35 PM |
| **To:** | 'V. Spath' |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | RE: Immigration Judge - Appointment EOD Confirmation |

Thank you so much sir!

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)



**From:** V. Spath [mailto:(b)(6)                    ]
**Sent:** Friday, April 06, 2018 11:00 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Received, and info to follow!

Thank you,

R/

Vance

On Thu, Apr 5, 2018 at 4:47 PM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Hello Mr. Spath,


I am able to confirm that you are all set to start on July 9th with the Arlington Immigration Court. The only thing I will need for you to provide is the following:


- Current HR point of contact if you are employed by Federal government;

1

• Home address for sending job related correspondence (you can provide this through email);

• And an updated leave and earning statement or SF-50 so that we can ensure that the pay offered is set accurately for your promotion.

You will receive an official congratulatory welcome letter along with information related to your entrance on duty with our agency, such as training dates, court address, mentor judge, etc., as we get closer to the official entrance on duty. Usually this information goes out at least 2-3 weeks before you are expected to arrive for duty.

Unless you have any specific questions related to your upcoming employment you are all set to go for July 9th and again you will be provided with correspondence during the process for your situational awareness.

Please do not hesitate to contact me should you have any questions.

Thank you,

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)



**From:** Vance Spath [mailto:(b)(6)
**Sent:** Monday, March 26, 2018 12:30 PM

**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina

2

(EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>

**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Ms Pryor, I believe we are still supposed to chat? What do I owe you for the 9 July start? I am around by phone all this week and next. Phone remains (b)(6) .

Hope all is well. Thank you. Regards. Vance.

Sent from my iPhone

On Feb 26, 2018, at 10:34, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

> Hello Mr. Spath,

> I totally understand. I will be out of the office attending a meeting off-site tomorrow morning and will return in the afternoon. Please feel free to call me anytime tomorrow after 2:00 pm EST.

> Thank you,

> Holly R. Pryor

> Executive Office for Immigration Review (EOIR)

> Human Resources Specialist

> 703-305-1171 (Work)

> <image003.jpg>

> **From:** V. Spath [mailto:(b)(6)
> **Sent:** Friday, February 23, 2018 7:25 AM
> **To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
> **Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
> **Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Ms. Pryor,

Finally getting back tonight, after some delays and difficulties in that case.

Are you around Tuesday, 27 Feb 18? If so, I will give you a call then if it is convienient..

Regards,

Vance

On Fri, Feb 16, 2018 at 7:42 AM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Thank you for the update Mr. Spath. I will await your call upon your return. My direct line is 703-305-1171

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

<image002.jpg>

**From:** Vance Spath [mailto:(b)(6)                    ]
**Sent:** Thursday, February 15, 2018 8:02 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Ms Pryor. Thank you. I get back over the weekend. I will give you a call on Tuesday. Look forward to talking soon. Vr. Vance

4

Sent from my iPhone

On Feb 15, 2018, at 14:01, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Good afternoon Mr. Spath,


I wanted to send an email to let you know that I have received the notification that you are able to EOD with our agency (Executive Office for Immigration Review (EOIR), on July 8, 2018.  When you have returned to the states please let me know so we can arrange a time to call you and go over the Immigration Judge appointment information.


Please do not hesitate to let me know if you have any additional questions.


Thank you,


Holly R. Pryor

Department of Justice

Executive Office for Immigration Review (EOIR)

Human Resources Specialist (Staffing/Classification)

703-305-1171 (Work)

703-305-1456 (Fax)

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Monday, February 05, 2018 6:07 PM |
| **To:** | Keller, Mary Beth (EOIR) |
| **Cc:** | Cheng, Mary (EOIR); Maggard, Print (EOIR) |
| **Subject:** | Arlington - Mr. Vance Spath |

Judge Keller,

Now that the Office of Policy will determine the EOD date of new judges and coordinate the Training Program – they should be aware of Mr. Vance A. Spath (Arlington).

**The AG approved his temporary appointment order on 3-20-17. The official offer was made by HR on 6-21-17 with a tentative EOD date of 9-17-17, but Mr. Spath did not accept, instead he requested an EOD of 5-15-18 or later, official offer still pending until management selects a new EOD and Mr. Spath accepts; management will revisit the issue in January/February.**

I was reviewing the IJ Report from Martin and realize this information should be given to Judge Santoro and or Amanda Adams. It may help as they move forward with bringing on new Immigration Judges.

If you concur, I will provide Mr. Spath's contact information to the Office of Policy.

Marcia

**Lee-Sullivan, Marcia L. (EOIR)**

| | |
|---|---|
| **From:** | Pryor, Holly (EOIR) |
| **Sent:** | Monday, August 14, 2017 4:34 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | RE: Status - Mr. Spath |

Thank you for the clarification Marcia. I have reached out to Mr. Spath to clarify my message to him. Once I receive his reply I will let you know.

Thank you,

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Wednesday, August 09, 2017 5:56 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Subject:** RE: Status - Mr. Spath

Hi Holly,

Management did not agree to his terms, all they said was HR will contact him in January/February 2018 and that no EOD date has been established this time.

The terms of May 1?, 201? or later are "his" words not Managements.

Marcia

**From:** Pryor, Holly (EOIR)
**Sent:** Wednesday, August 09, 2017 5:39 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** FW: Status - Mr. Spath

Hi Marcia,

Just to provide you with an update – I did give Mr. Spath a call yesterday and I sent him an email this evening. hopefully he will respond to either my voicemail message or email to let me know that he is in receipt of management's agreeing to have him EOD on or after May 2018, depending on when OCIJ sets the EOD.

I am out of the office tomorrow and Friday and will return on Monday if you have any questions or need me to do any additional follow-up ☺

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

1

**From:** Pryor, Holly (EOIR)
**Sent:** Tuesday, August 08, 2017 10:49 AM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** RE: Status - Mr. Spath

Hi Marcia,

I have to apologize – with some of the specialist being out the past few days each time I was preparing to call him I would get interrupted. I will stop now and see if I can reach him. Thank you for checking in with me because it slipped my mind.

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Tuesday, August 08, 2017 10:42 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Subject:** Status - Mr. Spath

Hi Holly,

Were you able to reach Mr. Spath?

Marcia

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Thursday, August 03, 2017 10:27 AM |
| **To:** | Pryor, Holly (EOIR) |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | FW: Arlington Immigration Judge Candidate Request for an EOD Date in 2018 |

Holly,

Per our conversation, please contact Mr. Spath and update him on Management's decision.

"Management is aware of his request to EOD in 2018, however, at this time, we will hold his paperwork and contact him again in January/February, 2018".

Please note Holly, no EOD date has been establish for Mr. Spath.

Thanks !

Marcia Lee-Sullivan


**From:** Keller, Mary Beth (EOIR)
**Sent:** Wednesday, August 02, 2017 9:57 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>
**Subject:** Fwd: Arlington Immigration Judge Candidate Request for an EOD Date in 2018

Marcia -
Please see the below on candidate Spath.
Thanks.
Mtk


Sent from my iPhone

Begin forwarded message:

> **From:** "McHenry, James (EOIR)" <James.McHenry@EOIR.USDOJ.GOV>
> **Date:** August 2, 2017 at 8:33:00 PM EDT
> **To:** "Keller, Mary Beth (EOIR)" <MaryBeth.Keller@EOIR.USDOJ.GOV>
> **Cc:** "Reilly, Katherine - OGC (EOIR)" <Katherine.Reilly@EOIR.USDOJ.GOV>, "Ward, Lisa (EOIR)" <Lisa.Ward@EOIR.USDOJ.GOV>
> **Subject: Re: Arlington Immigration Judge Candidate Request for an EOD Date in 2018**

Duplicate

> On Aug 2, 2017, at 7:53 PM, Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV> wrote:
>
> James,

1

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Keller, Mary Beth (EOIR) |
| **Sent:** | Friday, August 04, 2017 8:53 AM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Cc:** | Maggard, Print (EOIR); Cheng, Mary (EOIR); Burghard, Christina (EOIR) |
| **Subject:** | FW: Arlington Immigration Judge Candidate Request for an EOD Date in 2018 |

fyi

*Mary Beth Keller*

**From:** McHenry, James (EOIR)
**Sent:** Wednesday, August 02, 2017 8:33 PM
**To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
**Cc:** Reilly, Katherine - OGC (EOIR) <Katherine.Reilly@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR)
<Lisa.Ward@EOIR.USDOJ.GOV>
**Subject:** Re: Arlington Immigration Judge Candidate Request for an EOD Date in 2018

Duplicate

On Aug 2, 2017, at 7:53 PM, Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV> wrote:

> James,

Duplicate

> Thanks.
> Mtk

> *Mary Beth Keller*

>> **From:** Lee-Sullivan, Marcia L. (EOIR)
>> **Sent:** Wednesday, August 02, 2017 4:01 PM
>> **To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
>> **Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
>> **Subject:** Arlington Immigration Judge Candidate Request for an EOD Date in 2018
>> **Importance:** High

>> Judge Keller,

Duplicate

1

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Wednesday, July 12, 2017 9:55 AM |
| **To:** | Keller, Mary Beth (EOIR); Cheng, Mary (EOIR); Maggard, Print (EOIR); Roldan, Martin (EOIR); Ortiz-Ang, Susana (EOIR) |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | Response from IJ Candidate Spath: Immigration Judge Position - DOJ Arlington Court- Start Date |
| **Importance:** | High |

Good Morning,

Please see detailed email below from IJ Candidate Vance Spath (Arlington) regarding the tentative EOD date of September 17, 2017.

Please advise.

Thank you.

Marcia Lee-Sullivan

**From:** Boone-Fisher, Sabina (EOIR)
**Sent:** Wednesday, July 12, 2017 8:09 AM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Subject:** FW: Immigration Judge Position - DOJ Arlington Court- Start Date
**Importance:** High

Good Morning Marcia,

FYI...

**From:** V. Spath [mailto (b)(6)            ]
**Sent:** Wednesday, July 12, 2017 7:12 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date

Ms. Pryor,

Duplicate

Duplicate

Vhs

//SIGNED//
VANCE H. SPATH, Colonel, USAF
Chief Trial Judge

On Mon, Jul 3, 2017 at 8:48 AM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Good morning Mr. Spath,

Thank you for the update. I will let our management know that you are awaiting on confirmation from Air Force before committing to the start date that has been offered. Please let me know any updates once you receive them.

Thank you sir and have a great day,

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

**From:** V. Spath [mailto (b)(6)
**Sent:** Thursday, June 29, 2017 2:27 PM

**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date

Ms. Pryor,

I wanted to give you an update. I am waiting on confirmation from the Air Force or their proposal. I had hoped to have it this week. However, it may be after the hololiday. I will engage with you all next week on way or the other.

Look forward to talking,

Vance

//signed//

Vance H. Spath, Colonel, USAF

Chief Trial Judge

Air Force

Phone (b)(6)

On Tuesday, June 27, 2017, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Hello Mr. Spath,

No worries. I will await to hear back from you on your acceptance or non-acceptance of the September 18, 2017, start date for your appointment to the Immigration Judge position.


Thank you,


Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)


**From:** V. Spath [mailto:(b)(6)
**Sent:** Tuesday, June 27, 2017 12:30 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date


Sorry, I did not mean email, I meant voicemail? I went back and checked. No idea other than the travel. But again, my apologies - and more very soon,


Vance


On Tue, Jun 27, 2017 at 12:28 PM, V. Spath (b)(6)                        wrote:

Thank you for the note - I did not get the email. However, I was traveling to California. I will get you the required information later today or tomorrow. I should have an answer back reasonably soon from the AF. Thanks for the email and sorry for the missed call.


V/r


Vance

4

On Mon, Jun 26, 2017 at 11:28 AM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Good morning Mr. Spath,


Just wanted to follow-up with you regarding the voicemail message I left on your phone on Wednesday, June 21, 2017. The Department of Justice, Executive Office for Immigration Review (EOIR), have set an entrance on duty date for you. The date that has been established is September 18, 2017. Please let me know if you are able to begin employment on this date so that I can notify our Office of the Chief Immigration Judge.


Thank you in advance and please do not hesitate to contact me if you have any questions.


Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

---

**From:** Pryor, Holly (EOIR)
**Sent:** Friday, May 12, 2017 9:37 AM

(b)(6)

**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** FW: Immigration Judge Salary Offer - Department of Justice Executive Office for Immigration Review - Vance Spath


Good morning Mr. Spath,


I wanted to follow-up our phone conversation with an email of your acceptance of the reconsidered Immigration Judge salary for our Arlington Immigration Court. You are in agreement with the IJ-2 salary which is set at $164,620 for the Arlington area and this salary includes locality pay.

As discussed, I will be in contact with you once our Office of the Chief Immigration Judge (OCIJ) sets a start date.

Should you have any questions or concerns that arise please do not hesitate to contact me.

Thank you,

Holly R. Pryor, HR Specialist

DOJ/EOIR

---

**From:** Pryor, Holly (EOIR)
**Sent:** Wednesday, May 10, 2017 11:49 AM

(b)(6)

**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** Immigration Judge Salary Offer - Department of Justice Executive Office for Immigration Review

Good morning Mr. Spath,

The Executive Office for Immigration Review (EOIR) has reconsidered the salary offer initially extended to you, and we would like to extend the IJ-2 salary offer at $164,620 per year; this amount includes the locality pay. While we do not count "add-ons" like the BAH and BAS (housing and subsistence allowances) your military time counts as federal service, so management looked at your base military pay and awarded you the next higher base pay (not figuring in locality pay). The next higher base pay is the IJ-2 level (base of $129,520). We then adjust that for locality pay at the IJ-2 level, Arlington locality rate ($164,620).

Please let me know if you are in acceptance of the IJ-2 salary offer and your appointment as an Immigration Judge for the Arlington Immigration Court. Once I receive your reply we can discuss further the Entrance on Duty (EOD) date for the position.

Thank you and please do not hesitate to contact me if you have any additional questions.

Holly R. Pryor

Department of Justice

Executive Office for Immigration Review (EOIR)

5107 Leesburg Pike, Suite 2300

Falls Church, VA 22041

Human Resources Specialist (Staffing/Classification)

703-305-1171 (Work)

703-305-1456 (Fax)

**Lee-Sullivan, Marcia L. (EOIR)**

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Tuesday, June 20, 2017 4:48 PM |
| **To:** | Maggard, Print (EOIR) |
| **Cc:** | Cheng, Mary (EOIR); Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | RE: Vance Spath - Arlington |

Will do !

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, June 20, 2017 4:12 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>
**Subject:** RE: Vance Spath - Arlington

## Can someone circle back to him and offer the September date?

Print Maggard

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Tuesday, June 20, 2017 1:09 PM
**To:** Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>
**Cc:** Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>
**Subject:** RE: Vance Spath - Arlington

Judge Maggard,

Yes, that is correct – per our last communication with Mr. Spath, August was the target EOD month.

Yes, the EOD date is September 17.

Marcia

*[handwritten notes:]*
Training Dates
Home Court - 2 wks    9/18 - 9/29
HDQ Training - 2 wks    10/2 - 10/13*    9 day holiday 10/9
Investiture    10/13
Training Court - 2 wks    10/16 - 10/27
return to home court    10/30 - 11/1

**From:** Maggard, Print (EOIR)
**Sent:** Tuesday, June 20, 2017 3:48 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>
**Subject:** Vance Spath - Arlington

Marcia,

According to Vance he has not been asked about a start date, if that is correct then I would suggest we offer him a start date in September or somewhere along that timeframe. The USAF does not want to let him retire until they select a new Chief Judge. Do we have class dates set to September?

PRINT MAGGARD

1

## Boone-Fisher, Sabina (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Monday, July 03, 2017 10:20 AM |
| **To:** | Keller, Mary Beth (EOIR); Maggard, Print (EOIR); Cheng, Mary (EOIR) |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | FW: Immigration Judge Position - DOJ Arlington Court- Start Date |

**Importance:**     High

Judges,

As of today, the status of the Immigration Judge offer to Mr. Vance Spath (Arlington) is pending (see email traffic below).
Human Resources made the offer on June 21, 2017 and we are waiting for his acceptance or non-acceptance of the September 18, 2017 EOD date.

Marcia Lee-Sullivan

**From:** Pryor, Holly (EOIR)
**Sent:** Monday, July 03, 2017 8:48 AM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** FW: Immigration Judge Position - DOJ Arlington Court- Start Date

Hi Marcia,

Duplicate

Thank you ☺

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

**From:** V. Spath [mailto:spathvance@gmail.com]
**Sent:** Thursday, June 29, 2017 2:27 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date

Ms. Pryor,

Duplicate

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Dalton, Kay (EOIR) |
| **Sent:** | Wednesday, May 03, 2017 4:19 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Cc:** | Ward, Lisa (EOIR) |
| **Subject:** | RE: Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages |

Marcia,

When you get a moment I would like to discuss with you pay setting for Mr. Spath.

Regards,

*L. Kay Dalton*

*Human Resources Officer*

*DOJ / Executive Office for Immigration Review*

*Office of Administration / Human Resources Services*

*Phone (703) - 756 - 8061*



**From:** Sheehey, Kate (EOIR)
**Sent:** Thursday, April 27, 2017 1:17 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Rosen, Scott (EOIR)
<Scott.Rosen@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Kocur, Ana (EOIR)
<Ana.Kocur@EOIR.USDOJ.GOV>; Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>
**Subject:** RE: Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages

Thanks Marcia!

Duplicate

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Sheehey, Kate (EOIR) |
| **Sent:** | Thursday, April 27, 2017 1:17 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Cc:** | Keller, Mary Beth (EOIR); Rosen, Scott (EOIR); Ward, Lisa (EOIR); Kocur, Ana (EOIR); Dalton, Kay (EOIR) |
| **Subject:** | RE: Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages |

Thanks Marcia!

Kay – can you or someone in HR take a look at the leave and earnings statement just to make sure there is nothing else that we can count towards Mr. Spath's base salary?

Thanks!
Kate

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Thursday, April 27, 2017 12:59 PM
**To:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Cc:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>; Rosen, Scott (EOIR)
<Scott.Rosen@EOIR.USDOJ.GOV>; Ward, Lisa (EOIR) <Lisa.Ward@EOIR.USDOJ.GOV>; Lee-Sullivan, Marcia L. (EOIR)
<Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Kocur, Ana (EOIR) <Ana.Kocur@EOIR.USDOJ.GOV>; Dalton, Kay (EOIR)
<Kay.Dalton@EOIR.USDOJ.GOV>
**Subject:** FW: Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages

Kate,

Attached is Mr. Spath's Leave and Earning Statement that he submitted to me on March 27, 2017.

Marcia Lee-Sullivan

**From:** vance spath [mailto:(b)(6)
**Sent:** Monday, March 27, 2017 9:02 AM
**To:** Lee-Sullivan, Marcia L. (EOIR)
**Subject:** Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages

Ms. Lee-Sullivan,

I have attached the requested documents. I am traveling today, but will have intermittent telephone access. While the Air Force can require a full 180 days notice, I believe they will approve and earlier retirement date. I believe they will approve something around 1 Aug?

Talk soon,

Vhs

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Maggard, Print (EOIR) |
| **Sent:** | Tuesday, April 25, 2017 5:03 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR); Keller, Mary Beth (EOIR) |
| **Cc:** | McGoings, Michael (EOIR); Cheng, Mary (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | RE: IJ Hiring Update as of April 25, 2017 |

Thank you Marcia,

Concerning candidate Spath, we are not changing the way we hire military candidates at this time (not considering BAH in calculating the offer), this is consistent within DOJ and other agencies. Thank you. Please let me know if you have any questions.

Print Maggard

---

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Tuesday, April 25, 2017 1:47 PM
**To:** Keller, Mary Beth (EOIR)
**Cc:** McGoings, Michael (EOIR); Maggard, Print (EOIR); Cheng, Mary (EOIR); Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR)
**Subject:** IJ Hiring Update as of April 25, 2017
**Importance:** High

Good Evening Judge Keller,

**Immigration Judge Hiring Process**

(b)(5) DP candidates are pending in the IJ Hiring Process
- (b)(5) nding in Phase I
- DP nding in Phase II (OARM, OLC, ODAG, OAG)

**PHASE I**

**Voucher and Vetting Process**

(b)(6)
-

**EOIR Recommendations** - Update
New DAG/AAG review process on hold for 9 pending candidates until further notice:
- Mindy Hoeppner (Los Angeles)
- (b)(6)
- Jacqueline Jackson (San Francisco)
- Cory Picton (San Francisco)
- Nathaniel Walker (Adelanto)
- Zakia Mahasa (Arlington/2016 ad)
- Raphael Choi (Arlington/2014 ad)
- (b)(6)
- John Gillies (Atlanta)

**PHASE II**

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Maggard, Print (EOIR) |
| **Sent:** | Thursday, April 13, 2017 3:48 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | RE: Arlington IJ Candidate |

Let's hold off until Monday so I can make sure we are all in agreement. Thank you Marcia.

Print Maggard

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Thursday, April 13, 2017 12:47 PM
**To:** Maggard, Print (EOIR)
**Subject:** Arlington IJ Candidate

Hello Judge Maggard,

Did Management discuss the issue surrounding the IJ-1 salary level for IJ candidate Vance Spath? I was hoping to contact him before the end of the month. Last week I left a message indicating that Management was aware of the issue and that I would get back to him soon.

#### Pending IJ Offer - **Update**

Vance Spath      Arlington (unable to EOD until late-Summer)
                 Did not "accept" yet – concerns regarding salary
                 OCIJ Management will provide guidance on salary and next steps

Marcia

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Tuesday, April 11, 2017 5:02 PM
**To:** Keller, Mary Beth (EOIR)
**Cc:** McGoings, Michael (EOIR); Maggard, Print (EOIR); Cheng, Mary (EOIR); Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR)
**Subject:** IJ Hiring Update as of April 11, 2017

Judge Keller,

**Immigration Judge Hiring Process**
(b)(5) DP candidates are pending in the IJ Hiring Process
(b)(5) DP        ending in Phase I
                 pending in Phase II (OARM, OLC, ODAG, OAG)

**Supervisory Immigration Judge (ACIJ) Hiring Process**
(b)(6)

-

**Voucher and Vetting Process**
Waiting for vetting documentation for (b)(5)DP ndidate 

1

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Monday, April 17, 2017 10:35 AM |
| **To:** | Kocur, Ana (EOIR) |
| **Subject:** | RE: Hiring info for director |

Will do !

-----Original Message-----
From: Kocur, Ana (EOIR)
Sent: Monday, April 17, 2017 10:17 AM
To: Lee-Sullivan, Marcia L. (EOIR)
Subject: RE: Hiring info for director

Thanks!  Let me know the end result with Spath when you have it.

-----Original Message-----
From: Lee-Sullivan, Marcia L. (EOIR)
Sent: Monday, April 17, 2017 9:45 AM
To: Kocur, Ana (EOIR) <Ana.Kocur@EOIR.USDOJ.GOV>
Subject: RE: Hiring info for director

Good Morning Ana,

Yes, Mr. Pimentel accepted on April 4th - he will EOD on May 28th.

Mr. Spath had some concerns regarding his salary. Management was informed, additional research was conducted and I am waiting for Management to provide me with their position on the issue. I believe that will occur this week. Once I have an official response, I will coordinate the call with HR to make the final IJ Offer to Mr. Spath.

Marcia

-----Original Message-----
From: Kocur, Ana (EOIR)
Sent: Monday, April 17, 2017 9:41 AM
To: Lee-Sullivan, Marcia L. (EOIR)
Subject: FW: Hiring info for director

Marcia,  Did Pimentel accept the May date?  And what happened to Spath?  Thanks!  Ana

-----Original Message-----
From: Maggard, Print (EOIR)
Sent: Tuesday, April 4, 2017 11:30 AM
To: Kocur, Ana (EOIR) <Ana.Kocur@EOIR.USDOJ.GOV>
Subject: FW: Hiring info for director


-----Original Message-----

1

## **Lee-Sullivan, Marcia L. (EOIR)**

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Thursday, March 30, 2017 10:59 AM |
| **To:** | Keller, Mary Beth (EOIR); Maggard, Print (EOIR); Cheng, Mary (EOIR); McGoings, Michael (EOIR) |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | Seeking Guidance - Arlington IJ Candidate |

**Importance:** High

Judges,

Vance Spath is currently in the Air Force and was offered an Immigration Judge position at the Arlington Immigration Court. Although he is unable to EOD on April 16, 2017, he expressed concerns regarding the salary that was offered at the IJ-1 level ($144,042). I asked Mr. Spath to send me his most recent statement of earnings and told him we would review the documents and get back to him.

Following the Policy on Pay and Employment of Immigration Judges in the Executive Office for Immigration Review *(revised January, 2008),* the IJ salary is determine according to base pay. Military benefits such as the Basic Allowance for Housing (BAH) and the value of meals furnished or Basic Allowance for Subsistence (BAS) is not factored into calculating the IJ salary. In addition, there is no reference in the policy specifically addressing military benefits. Under Human Resources guidance, I have used this approach consistently to calculate the IJ salary for military candidates for years.

Per Human Resources, this is an EOIR Policy (see below) and any amendments must be approved by the Office of the Director. If OCIJ Management determines that the policy must be amended to include military benefits in the calculation of the IJ salary, the amendment must have an effective date and apply to new judges moving forward.

EOIR's policy: (b)(5) DP

Mr. Spath's base pay is $10,587.00 per month – multiplied by 12 equals $127,044. This amount will bring him to the IJ-1 level of $144, 042. Looking at his Air Force salary – including BAH and BAS his salary is currently $171,343. This difference (loss) in pay may impact his decision to accept the immigration judge position.

If the IJ Pay Policy is amended, his salary will be at the IJ-3 level at $172,100.

Mr. Spath indicated that while the Air Force can require a full 180 day notice, he believes they will approve an earlier retirement date. He believes they will approve something around August 1st.

Once his salary is confirmed, I will coordinate the call with Human Resource. Your prompt reply will be greatly appreciated.

Marcia Lee-Sullivan

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Monday, March 27, 2017 4:00 PM |
| **To:** | Hill, Bridgette (EOIR) |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | FW: Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages |
| **Attachments:** | myPayPDF.pdf; leave and earnings statement.pdf |

**Importance:**    High

Bridgette,

Mr. Spath is currently in the Airforce and was offered an Immigration Judge position at the Arlington Immigration Court. He expressed concerns regarding the salary that was offered at the IJ-1 level ($144,042). I asked Mr. Spath to send me his most recent statement of earnings (see attachments) and told him we would review the documents and get back to him. Under the HR guidance I received the Basic Allowance for Housing (BAH) and the value of meals furnished or Basic Allowance for Subsistence (BAS) is not factored into calculating the IJ salary – only the base pay. I have used this approach consistently for military candidates for years.

Currently, Mr. Spath's base pay is $10,587.00 per month when you times that by 12 months it equals $127,044. This amount will bring him to the IJ-1 level of $144, 042. Let me know HR's position on this issue. Once his salary is confirmed, I need to inform management before contacting him. Your prompt reply will be greatly appreciated. Thanks !

Marcia Lee-Sullivan
(703) 305-1725

**From:** vance spath [mailto:(b)(6)
**Sent:** Monday, March 27, 2017 9:02 AM
**To:** Lee-Sullivan, Marcia L. (EOIR)
**Subject:** Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages

$171,343 w/ BAH
BAS

Ms. Lee-Sullivan,

I have attached the requested documents. I am traveling today, but will have intermittent telephone access. While the Air Force can require a full 180 days notice, I believe they will approve and earlier retirement date. I believe they will approve something around 1 Aug?

Talk soon,

Vhs

$3,691 × 12 = 44,292$
(BAH)(BAS)

OPM Agreed to EOIR creating policy on Pay; OUJ Mgmt
Emplr of IJ   80 up of DOD
EOIR's policy on IJ's pay, Jan 2008   for Approval to
Amend policy
Note change on policy if we decide to include (BAH) (BAS)

1

*Arlington*

**Lee-Sullivan, Marcia L. (EOIR)**

| | |
|---|---|
| **From:** | vance spath (b)(6) |
| **Sent:** | Monday, March 27, 2017 9:02 AM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | Most Recent Leave and Earnings Statement and Last Years Statement of Salary/Wages |
| **Attachments:** | myPayPDF.pdf; leave and earnings statement.pdf |

*1J-1  $144,042*

Ms. Lee-Sullivan,

I have attached the requested documents.  I am traveling today, but will have intermittent telephone access.  While the Air Force can require a full 180 days notice, I believe they will approve and earlier retirement date.  I believe they will approve something around 1 Aug?

Talk soon,

Vhs

*1J-1  $144,042*
*1J-2  $144,420*
*1J-3  $172,100*

*Base Pay Rates*

| *1J-1* | *1J-2* | *1J-3* | *1J-4* |
|---|---|---|---|
| *$113,330* | *$129,520* | *$145,710* | *$148,948* |

1



## DEFENSE FINANCE AND ACCOUNTING SERVICE MILITARY LEAVE AND EARNINGS STATEMENT

| ID | NAME (Last, First,MI) | | SOC. SEC. NO. | GRADE | PAY DATE | YRS SVC | ETS | BRANCH | ADSN/DSSN | PERIOD COVERED |
|---|---|---|---|---|---|---|---|---|---|---|
| | SPATH VANCE HUDSON | | (b)(6) | O6 | 920115 | 25 | 888888 | AF | 4012 | 1-31 MAR 17 |

| ENTITLEMENTS | | DEDUCTIONS | | ALLOTMENTS | | SUMMARY | |
|---|---|---|---|---|---|---|---|

| | Type | Amount | Type | Amount | Type | Amount | +Amt Fwd | .00 |
|---|---|---|---|---|---|---|---|---|
| A | BASE PAY | 10587.00 | FEDERAL TAXES | 1250.05 | (b)(6) | | | |
| B | BAS | 253.63 | FICA-SOC SECURITY | 656.39 | | | | |
| C | BAH | 3438.00 | FICA-MEDICARE | 153.51 | | | | |
| D | | | (b)(6) | | | | | |
| E | | | | | | | | |
| F | | | | | | | | |
| G | | | | | | | | |
| H | | | | | | | | |
| I | | | | | | | | |
| J | | | | | | | | |
| K | | | | | | | | |
| L | | | | | | | | |
| M | | | | | | | | |
| N | | | | | | | | |
| O | | | | (b)(6) | | | | |
| | TOTAL | 14278.63 | | | | | | |

(b)(6)

**REMARKS:**    **YTD ENTITLE**   42835.89      **YTD DEDUCT**   6341.85

IF TSP ELECTION AMT EXCEEDS NET AMT
DUE, TSP WILL NOT BE DEDUCTED.
-THE BLENDED RETIREMENT SYSTEM OPT-IN COURSE
(2 HRS) (COURSE #J3OP-US1332) IS NOW
AVAILABLE VIA JKO AT
HTTPS://JKODIRECT.JTEN.MIL/ THE COURSE IS
DESIGNED TO PROVIDE ELIGIBLE SERVICE MEMBERS
INFORMATION FOR MAKING A DECISION ABOUT WHICH
DOD RETIREMENT SYSTEM BEST MEETS THEIR NEEDS.
THIS IS MANDATORY FOR ALL OPT-IN ELIGIBLE

SERVICE MEMBERS.
-TRICARE DENTAL PROGRAM CONTRACTOR CHANGE
FROM METLIFE TO UCCI APRIL 2017. NO ACTION IS
REQUIRED BY YOU. FOR INFORMATION VISIT
WWW.UCCITDP.COM
MEMBER'S SGLI COVERAGE AMOUNT IS   $400,000
FAM/SPOUSE SGLI COVERAGE AMOUNT IS   $100,000
BAH BASED ON W/DEP, ZIP 20762
BANK USAA FEDERAL SAVINGS BANK

WWW.DFAS.MIL

DFAS Form 702, Jan 02

## PERSONAL STATEMENT OF MILITARY COMPENSATION

This statement outlines the total value of your military pay, allowances and benefits. By making your compensation more "visible," this statement can be useful when applying for credit or loans (including home loans). Another way this summary can be used is to help determine whether specific civilian employment offers would allow you to maintain the same standard of living as serving in the military. Start with the Total Direct Compensation on page 1, add the Federal Tax advantage from page 2, and then add any additional expense a civilian employer would expect you to pay for, such as health and life insurance, retirement contributions, etc. This will tell you the approximate level of civilian salary you must earn in order to maintain a similar standard of living as that provided by your military take home pay. Each section of this statement contains an explanation. However, if you have any questions, please contact your local finance office.

| SUMMARY: | | | |
|---|---|---|---|
| | A. Basic Military Compensation as of March 2016........................................................................ | $ | 168,729.96 |
| | B. Special Pay and Bonuses....................................................................................................... | $ | |
| | C. Expense Allowances............................................................................................................. | $ | |
| | TOTAL DIRECT COMPENSATION........................................................................... | $ | 168,729.96 |
| | Added value of Service-estimated indirect compensation........................................................... | $ | 14,176.44 |
| | Added considerations/programs (Your estimate) ....................................................................... | $ | |
| | YOUR TOTAL COMPENSATION ............................................................................... | $ | |

The following information provides details on the value of your personal compensation. Adding the indirect compensation and additional considerations to your direct compensation provides a clearer picture of your total military compensation package.

### DIRECT COMPENSATION AS OF MARCH 2016 (NOTE 1)

**A. BASIC COMPENSATION.** Describes the basic elements of compensation paid to all military members. This includes Basic Pay, the value of living in government quarters or receiving Basic Allowance for Housing (BAH), and the value of meals furnished or Basic Allowance for Subsistence (BAS). Your basic compensation is:

| | | Monthly | | Annual |
|---|---|---|---|---|
| Basic Pay ....................................................................................................................... | $ | 10,369.20 | $ | 124,430.40 |
| BAH or quarters valued at actual BAH for your location, rank and dependency status (see Note 2) ............... | $ | 3,438.00 | $ | 41,256.00 |
| BAS ................................................................................................................................ | $ | 253.63 | $ | 3,043.56 |
| TOTAL BASIC COMPENSATION.......................................................................... | $ | 14,060.83 | $ | 168,729.96 |

**B. SPECIAL PAY AND BONUSES.** Describes pay in addition to Basic Compensation for personnel with certain skills or in specific assignments. As an example, Special Duty Assignment Pay is a monetary allowance to compensate personnel who serve in designated duties involving the performance of extremely difficult duties or duties demanding an unusual degree of responsibility. Another example is Foreign Language Proficiency Bonus (FLPB); it is a monetary incentive paid to eligible and qualified military personnel possessing foreign language proficiency. The objective of FLPB is to encourage the acquisition, maintenance, and enhancement of foreign language skills vital to national defense.

| | |
|---|---|
| Special and Incentive Pays ................................................................................................ | $ |
| Bonuses ......................................................................................................................... | $ |
| TOTAL SPECIAL PAY AND BONUSES................................................................ | $ |



**C. EXPENSE ALLOWANCE.** Some personnel receive allowances to help compensate for additional expenses they incur based on the location of their duty assignment. These include Overseas Housing Allowance (OHA), Cost Of Living Allowance (COLA) (Note 1) only payable in certain areas, Family Separation Allowance (FSA), and Clothing Replacement Allowance (CRA). Your total expense allowances are:

TOTAL EXPENSE ALLOWANCES................................................................................ $

Note 1:  Pay items on your March 2016 LES; marital status and number of dependents are taken from your personnel records. Annual rates for COLA are for 365 days, not 12 times the March rate.

Note 2:  If you were not receiving BAH in March 2016, we assumed you were assigned the equivalent in government housing. If you received partial BAH, we assumed that the partial BAH and value of quarters together roughly equal full BAH.

### SERVICE-ESTIMATED INDIRECT COMPENSATION

Other programs supplement your direct compensation. These have value to you in terms of total income. They are an important part of your compensation and should be considered in adding up the real value of your compensation.

**A. MEDICAL CARE.** As an active duty uniformed member, the military provides you and your eligible family members with comprehensive medical care. TRICARE is the Defense Department's regional health care program. TRICARE has three health plan options: TRICARE Prime (all active duty are automatically in Prime, but eligible family members may also choose to enroll in this HMO-type plan); TRICARE Standard (an indemnity plan, formerly called CHAMPUS); TRICARE Extra (a Preferred Provider Organization plan). Under TRICARE Prime, you will have an assigned military or civilian primary care manager who will manage all aspects of your care, including referrals to specialists. Prime has no deductibles, cost-shares, or co-payments (unless the Point of Service option is used) except for a nominal co-payment for prescriptions filled at a retail pharmacy or through the National Mail Order Pharmacy program. TRICARE Standard offers more choice of providers, but requires an annual $150 deductible/person or $300/family (E-1 to E-4: $50/person, $100/family) plus a 20% cost-share for outpatient care and a $18.00/day ($25 minimum) charge for inpatient care. TRICARE Extra offers the same benefit as Standard, but when you elect to use a network provider, the outpatient visit cost-share is only 15%. Please contact the Beneficiary Counseling and Assistance Coordinator at the nearest military treatment facility for additional information. The personal costs experienced by you or your eligible family members will vary depending on the TRICARE option you select. For more information, visit www.tricare.mil.

**B. FEDERAL TAX ADVANTAGE.** This represents the amount of additional Federal tax you would have to pay if your quarters (BAH), and meals (BAS) allowances were taxed. Your tax advantage is based on (b)(6)



Monthly Rate $ (b)(6)     Annual Rate $ (b)(6)

SERVICE-ESTIMATED INDIRECT COMPENSATION (A + B)     Monthly Rate $     Annual Rate $

## ADDITIONAL CONSIDERATIONS (AS YOU ESTIMATE)

When adding up the total value of your compensation package, you should also consider the value to you of many other programs and privileges. Their value will be different for each individual depending on use. This page is presented for you to determine the yearly value/savings you estimate each of these programs has been worth to you.

**A. YOUR RETIREMENT BENEFIT** is a combination of your military pension and the Thrift Savings Plan (TSP).

**1) MILITARY PENSION:** One of the most attractive incentives of a military career is the retirement system that provides a monthly retirement income for those who serve a minimum of twenty years. There are currently three retirement plans in effect -- Final Basic Pay, High-3, and Choice of High-3 or Redux with $30K Career Status Bonus (CSB). A description of each follows. Information on all three plans is available at: http://militarypay.defense.gov/Pay/Retirement.aspx.

| Plan | Eligible (as determined by DIEUS) (Note 1) | Retired Pay Formula (Notes 2, 3 & 4) | Cost-of-Living Adjustment (COLA) (Note 5) |
|---|---|---|---|
| Final Basic Pay | Entered service prior to 8 Sep 80 | 2.5% times the years of service times basic pay (see Note 5) | Full inflation protection; COLA based on Consumer Price Index (CPI) |
| High-3 | Entered service between 8 Sep 80 and 31 Jul 86 | 2.5% times the years of service times the *average* of the highest 36 months of base pay (see Notes 6, 7 and 8) | Full inflation protection; COLA based on Consumer Price Index (CPI) |
| **High-3 or $30K Career Status Bonus (CSB)/ REDUX***<br><br>*Instead of retiring under High-3, these members may choose to receive a $30K Service Bonus at 15 years of service in exchange for agreeing to serve a minimum of another 5 years and then retiring under the less generous REDUX plan | Entered service after 31 Jul 86 | High-3: 2.5% times the years of service times the *average* of the highest 36 months of base pay CSB/REDUX option: Each of the first 20 years of service is worth 2% toward the retirement multiplier. Each year after the 20th is worth 3.5%. A 30-year career is computed by 2% times 20 years and add 3.5% times the years beyond 20, resulting in a maximum of 75%. The multiplier is applied to the average of the member's highest 36 months of basic pay (see Notes 6, 7 and 8) | High-3: Full inflation protection based on CPI. CSB/REDUX option: Annual COLAs of CPI minus 1% are given based upon the CPI of the High-3. Retired pay is recomputed at age 62 so that REDUX and High-3 retirement salaries are equal but REDUX COLAs for later years will continue to be CPI minus 1% |

Source: AFI 36-3203, Service Retirements, 18 Sep 15

Note 1: "Date entered service" means the date the person is enlisted, inducted, or appointed with the Armed Forces. This includes persons in the Delayed Entry Program (DEP), cadets at Service Academies, officer candidates in Officer Training School (OTS), students enrolled in a Reserve component in senior Reserve Officer Training Corps (ROTC) programs or other financial assistance programs, students in the Uniformed Services University of the Health Sciences, and persons in the Armed Forces Health Professions Scholarship program. By using "date entered service," active component members have been "grandfathered" under the plan in effect at the time when they initially entered the service.
Note 2: The maximum multiplier for 30 years Total Active Federal Military Service is 75% times the retired base pay; however, members who serve beyond 30 years earn an additional 2.5% each additional year and can max out at 100%.
Note 3: The Uniformed Services Former Spouses Protection Act allows state courts to consider retired pay as divisible property in divorce settlements. The law does not direct state courts to divide retired pay; it simply permits them to do so.
Note 4: Retired pay stops upon the death of the retiree.
Note 5: Officers who retire and do not meet the requirements to retire in their highest grade (10 USC §1370) will be paid based on the retired grade (10 USC 1407f). Officers retiring in an enlisted grade will have their pay calculated as determined by DFAS.
Note 6: Officers who retire and do not meet the requirements to retire in their highest grade (10 USC §1370) will be paid based on the last 36-month average of the time served in the higher grade and the time served in the lower grade. *EXCEPTION:* Does not apply to officers who did not serve satisfactorily in the highest grade and such determination is the result of conduct occurring after October 30, 2000 (See Note 5).
Note 7: Enlisted members demoted to a lower grade within 3 years and retired in that grade will not be paid based on high 36-month average in the higher grades. Their retired pay will be based on "final basic pay" instead of either the high 36-month average or REDUX formulas. When an enlisted member's active service period is added to retired list service totals 30 years, the member may be advanced (on the retired list) and receive retired pay in the highest grade satisfactorily held on active duty, as determined by the Secretaries of the Air Force or Army or designee (10 USC §8964) and (10 USC §3964).
Note 8: Officers who resigned their commissions and retire in enlisted status will have their retired pay calculated IAW 10 USC §1407c. DFAS will calculate the High-36 month average as if the member held the retired grade the last 36 months of active service.

For Retirement-Eligible Personnel: If you were to retire in your present grade, your initial gross monthly retired pay would be $6,221.00 increased annually for inflation. For each year you continue to stay on active duty, you will receive an additional 2.5% of 10 USC §1405 creditable service. Your retirement represents a considerable value over your life expectancy. While retired pay stops upon death, you can ensure your survivors receive a portion of it by enrolling in the Survivor Benefit Plan when you retire (see below). Retired pay calculation is for illustration only. It does not consider any active duty service commitment or time-in-grade requirement, which may preclude your retiring immediately in your present grade. Further, the date used to determine years of service for your multiplier in your actual retired pay computation (the 10 USC §1405 date) will be determined by OMPF (Army), or AFPC Service Verification Branch (Air Force), from your military records.

**2) UNIFORMED SERVICES THRIFT SAVINGS PLAN (TSP):** You can gain additional tax deferred advantages through participation in the TSP. You are authorized to contribute up to 100% of your base pay, special and incentive pays, and bonuses, up to the annual contribution limits identified below. Due to mandatory FICA & Medicare deductions, Base Pay is limited to 92% for 2016. The combination of your tax-exempt and tax-deferred contributions is limited by the Internal Revenue Service to $53,000 for 2016. Aged 50 and over may participate in the TSP Catch-Up program for an additional $6,000 for 2016. More information can be found at: www.tsp.gov/index.html. You can also start Roth TSP contributions by using myPay or completing TSP U-1 form and submitting it to your local finance office. Additional information for Roth TSP can be found on www.dfas.mil/.

**B. DEATH AND SURVIVOR PROGRAMS.** If you die on active duty, your survivors are eligible for life insurance and other payments.

**1) SERVICEMEMBERS' GROUP LIFE INSURANCE:** You may buy life insurance in $50,000 increments up to $400,000 at a very low cost. You are currently paying premiums for SGLI coverage of $400,000 on yourself and $100,000 on your spouse.

**2) DEATH GRATUITY, VA DEPENDENCY AND INDEMNITY COMPENSATION (DIC), HOUSING:** In the event of your death, your family members (or designated beneficiary) would receive a death gratuity payment of $100,000. Additionally, monthly non-taxable Dependency and Indemnity Compensation (DIC) payments of at least $1,254.19 for the surviving spouse and an additional $310.71 for each surviving child are payable. DIC is generally adjusted annually for inflation. More information can be found at www.vba.va.gov/. Also, a Basic Allowance for Housing (at the rate that is payable for members of the same grade and dependency status as the deceased member for the area where the family members are residing) may be paid to family members of a member of the uniformed services who dies while on active duty and shall terminate 365 days after the date of the member's death.

**3) SURVIVOR BENEFIT PLAN (SBP):** All pay stops when a member dies. However, if you die on active duty, in the line of duty, your surviving spouse and children are automatically protected by the SBP--at no cost to you. The surviving spouse receives an annuity equal to the difference between the dependency and indemnity compensation DIC payment, paid by the Department of Veterans Affairs, and the SBP payment that would be paid if you had been retired on the date of your death. In some cases, if it would be beneficial to the family, the Secretary of the Service concerned may authorize payment of the SBP to the children instead of the surviving spouse. To determine the amount of the SBP, the maximum applicable rate of retired pay that would be due you will be used. The only way retirees can guarantee their survivors receive a share of their retired pay is to enroll in SBP before they retire. The maximum annuity is equal to 55% of retired pay. The SBP annuity for your survivor is adjusted each year by the same percentage increase given to military retired pay. Additional information can be found at www.soldierforlife.army.mil/retirement/sbp (Army) or www.retirees.af.mil/sbp (Air Force).

**C. PAY GROWTH:** Pay raises each year, longevity increases, and competitive promotion opportunities.

**D. STATE/LOCAL TAX ADVANTAGE:** Besides being exempt from Federal taxes, your BAH, BAS, and overseas allowances and in-kind housing may be exempt from State and Local taxes, depending upon the state you claim as a legal residence. Relative to the tax laws of your legal residence, this advantage can save you hundreds of dollars each year.

**E. DISCOUNTED SERVICES AND BENEFITS:**

**1) COMMISSARY:** Studies have found that commissary shoppers save an average of 30% or more on their grocery purchases, amounting to about $4,430 annually for a family of four. If you spend the following, your savings will be approximately:

Monthly Grocery Purchases

| Savings Percent | Supermarket | Commissary | $ Savings |
|---|---|---|---|
| 30% | $ 200.00 | $ 140.00 | $ 60.00 |
| 30% | $ 300.00 | $ 210.00 | $ 90.00 |
| 30% | $ 400.00 | $ 280.00 | $ 120.00 |

**Discover your benefit. Find your nearest commissary through the locations link at www.commissaries.com.**

**2) THE ALL SERVICES EXCHANGE (aka ARMY AND AIR FORCE EXCHANGE SERVICE):** Now in our second century of service, the Exchange remains committed to serving you, the "best customer in the world." Your exchange provides products and services to authorized customers worldwide and generates reasonable earnings to supplement appropriated funds for Army and Air Force morale, welfare, and recreation (MWR) programs. Earnings fund new and improved stores with most of the profits going to MWR programs – about $224 million in 2014 and $2.4 billion over the past 10 years. The Exchange's shelf prices provide you an average of 20 percent overall savings compared to off post/base retail operations. While you and your family members can enjoy your exchange benefit at your home station, in many ways the Exchange's greatest value is our pledge to "Go Where You Go." Your Exchange currently operates 180 stores and over 2,000 fast food outlets, including locations in Iraq, Afghanistan and other contingency locations, all run by Exchange Associate volunteers. And remember, the Exchange offers 24/7 convenience through its website www.shopmyexchange.com.

**3) FEDERAL LONG-TERM CARE INSURANCE PROGRAM (FLTCIP):** The FLTCIP is the only long term care insurance program sponsored by the Federal Government. It is managed by the Office of Personnel Management and offered by the John Hancock Life and Health Insurance Company. It provides comprehensive benefits to include home care, informal care, and inflation options at competitive group premiums. The FLTCIP helps preserve your retirement savings should a long-term care need arise. Those eligible for the FLTCIP include all Federal Employees (Uniformed Service members), their spouses, adult children (including natural, adopted & step), parents, parents-in-law, and stepparents. Call 1-800-LTC-FEDS (1-800-582-3337) or visit the web site at: www.LTCFEDS.COM.

**4) EDUCATION PROGRAMS:** Members in accredited schools pursuing degree programs receive up to 100 percent of tuition costs, up to a maximum of $250 per semester hour, $4,500 per fiscal year, paid by the Government through the Military Tuition Assistance Program. Search tools to find military-friendly colleges are on the Air Force Virtual Education Center (AFVEC) through the AF Portal (Air Force) or at www.GoArmyED.com (Army). Members who had established an account in the Veterans Educational Assistance Program (VEAP) by contributing $25-$100 each month or by lump sum payment (up to $2,700), have a Government $2 for $1 matching contribution for a total of up to $8,100. Members must serve on active duty for at least 181 continuous days, and enlisted for the first time between 1 Jan 1977 and 30 Jun 1985 inclusive, and signed up prior to 1 Apr 1987 to make contributions. Members who

elected to participate in the Montgomery GI Bill upon entering active duty (after 30 Jun 1985), and agreed to payroll reduction of $100 per month for a total of 12 months, can receive a benefit of $51,336 with yearly increases as determined by the consumer price index. Personnel with at least 90 days of aggregate active duty service and honorable separation on or after September 11, 2001 qualify for the Post-9/11 GI Bill that became effective 1 Aug 09. The Post-9/11 GI Bill pays tuition based upon the highest in-state tuition charged by an educational institution in the state where the educational institution is located. The opportunity to transfer Post-9/11 benefits to a family member is also an option provided an individual meets service requirement. For additional information, go to: http://www.gibill.va.gov.



**5) SERVICES ACTIVITIES:** Provide conveniently located, low-cost, professionally managed activities and entertainment. You and your family members receive significant savings when you participate in Services programs such as fitness, libraries, child development and youth programs, arts and crafts, auto skills, outdoor recreation activities, golf, bowling, clubs, equipment checkout, aero clubs, etc.



**6) COUNSELING AND ASSISTANCE PROGRAMS:** Military members and their eligible family members can receive free personal financial management counseling, relocation services assistance, transition counseling, spouse employment consultation, and assistance from a wide range of services available from their services' community centers. Below are some estimated costs if the government provided services were procured in the civilian sector:

| | |
|---|---|
| Personal Financial Counseling/Education | $ 250.00-375.00 |
| Spouse Employment Counseling | $ 585.00-990.00 |
| Transition Assistance Services | $ 5096.00 |
| Non-Medical Counseling | $ 30.00-100.00 |



**7) LEGAL COUNSELING:** Military members and family members can get free legal assistance in a wide range of areas, including consumer law, landlord-tenant law, family law, estate planning, and tax assistance services. Below are some estimated costs if services were procured in the civilian sector:

| | |
|---|---|
| Consultations with an Attorney | $ 150.00 -175.00 |
| Wills | $ 250.00-3,000.00 |
| Notary | $ 10.00-20.00 |
| Advance Medical Directives | $ 100.00-250.00 |
| Client Correspondence | $ 125.00 |
| Powers of Attorney | $ 60.00-250.00 |
| Tax Return Preparation | $ 143.00-246.00 |



**8) SPACE AVAILABLE TRAVEL:** Space available travel for Uniformed Services members can provide substantial savings over commercial airline fares. Space available travel is defined by DoD policy as a privilege (not an entitlement), which accrues to Uniformed Services members as an avenue of respite from the rigors of Uniformed Services duty. Under one of the categories of space available travel, members on leave can travel with one eligible family member on permissive TDY house hunting trips. For additional information on this special privilege, consult the AMC Space Available web page at www.amc.af.mil/amctravel/index.asp.



**9) TRICARE DENTAL PROGRAM (TDP):** The TDP is available to eligible family members of all active duty service members and to National Guard or Reserve members and/or their families. Enrollees may be treated in both CONUS and OCONUS locations. TDP monthly premiums and costs for services rendered for Selected Reserve members and eligible family members of active duty are cost-shared by the Department of Defense (DoD). The sponsor's monthly premium payment is $11.68 for a single enrolled family member and $34.68 for eligible families with two or more members enrolled. Basic preventive, diagnostic and emergency services are covered at 100%; the plan pays 20%-50% of the cost for certain specialized services such as restorations, orthodontics, and prosthodontics. Moreover, DoD cost-shares other specialty care (periodontics, endodontic, and oral surgery) at a higher percentage for E-1s to E-4s. For additional information, go to www.metlife.com/tricare.

(Add this amount to Summary Total on page 1)                                                        TOTAL

Revised January, 2008

## POLICY ON PAY AND EMPLOYMENT
## OF IMMIGRATION JUDGES IN THE
## EXECUTIVE OFFICE FOR IMMIGRATION REVIEW

**PURPOSE:**

This establishes Department of Justice, Executive Office for Immigration Review (EOIR), policy and procedures relating to pay and employment of immigration judges (IJ).

**AUTHORITY:**

The pay system for immigration judges was established under Section 371, Public Law 104-208, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. These procedures implement this pay system under PL 104-208, Section 371 and certain sections of Title 5 U.S. Code.

**COVERAGE:**

This pay policy covers immigration judges, defined in Sec. 371 of PL 104-208 and 8 U.S.C. 1101(b)(4) [IJ] as one who is "an attorney whom the Attorney General appoints as an administrative judge within the Executive Office for Immigration Review, qualified to conduct specified classes of proceedings, including a hearing under section 240, T 8 U.S.C."

**EFFECTIVE DATE:**

Pay provisions of Sec. 371, Public Law 104-208 took effect December 29, 1996. Changes to this pay policy based on Public Law 108-136, Sec 1125(c)(4) took effect in January, 2004.[1]

**DEFINITIONS:**

*Rate of Basic Pay* means one of the four annual rates of pay identified as IJ-1, IJ-2, IJ-3, or IJ-4, exclusive of locality pay or any other adjustment. These rates are established as percentages of Level IV of the Executive Schedule.[2]

---

[1]Public Law 108-136, known as the National Defense Authorization Act for 2004, eliminated the Senior Executive Service pay rates to which the Immigration Judge Pay System had been linked since 1996. Instead, Immigration Judge pay rates are established as percentages of Level IV of the Executive Schedule. The pertinent section of the law, PL 108-136, Sec. 1125(c)(4) reads, "...any reference in a provision of law to a rate of basic pay that is above the minimum payable and below the maximum payable to a member of the Senior Executive Service shall be considered a reference to the rate of basic pay payable for Level IV of the Executive Schedule."

[2]See footnote 1.

2

*Locality Pay* means the basic annual rate of pay increased by the percentage authorized by the President for the locality pay area in which the employee's official duty station is located. Locality pay is considered part of an IJ's basic pay for the same purposes for which it is considered part of a General Schedule employee's basic pay.

*Cost of Living Allowance* (COLA) means an allowance paid to employees in non-foreign areas outside the continental United States (e.g., Puerto Rico, Hawaii) where living costs are substantially higher than those in the Washington, D.C. area, as described in 5 C.F.R., Part 591.

*Time as an immigration judge* means cumulative service in a position(s) both as an immigration judge under the Executive Office for Immigration Review, and as an Immigration Judge or special inquiry officer under the Immigration and Naturalization Service prior to January 9, 1983. (The immigration judge function was transferred to EOIR in January 1983 during a reorganization.) If there has been a break in service, or if the immigration judge has excess leave without pay, the time as an immigration judge will be a constructed date which includes all service as set forth above.

**Immigration Judge Pay Rates:**

The following pay levels are established for the Executive Office for Immigration Review, Department of Justice:

|      |                |
|------|----------------|
| IJ-1 | 70% of EX-IV   |
| IJ-2 | 80% of EX-IV   |
| IJ-3 | 90% of EX-IV   |
| IJ-4 | 92% of EX-IV   |

**Pay Rate Determination**:

EOIR will place each immigration Judge in one of the four levels of basic pay as set forth below. Locality pay, where applicable, will be added to the basic pay rate. Cost of Living Allowances will apply for non-foreign areas outside of the continental United States. (i.e., Hawaii and Puerto Rico)[3]

---

[3] Under 5 U.S.C. 5941 and 5 C.F.R. 591.203, immigration judges had previously received Cost of Living Allowances as General Schedule employees. No longer under the General Schedule, they are not specifically covered by these provisions. The Assistant Attorney General for Administration for the U.S. Department of Justice sought a regulatory change from the Office of Personnel Management to extend Cost of Living Allowances to immigration judges in non-foreign geographic areas outside the continental United States. By letter dated December 26, 1996, OPM stated that immigration judges may be covered without specific regulatory change.

3

**Conversion Provisions**:

Pay rates for immigration judges employed as of the effective date of December 29, 1996, were adjusted to the IJ rate corresponding to the amount of time as an immigration judge. If the rate of basic pay corresponding to the amount of time as an immigration judge was less than the employee's existing rate of basic pay, pay was set at the IJ rate closest to the existing rate which was not below the existing rate of basic pay (e.g., judges at GS-15/6 or above with less than 104 weeks of service were converted to IJ-2).

**New Appointments**:

With the following exceptions, new immigration judges will be appointed at the IJ-1 rate. The appointing officer may set pay above the IJ-1 on new appointments for candidates who have:

1) Prior federal service at a pay rate in excess of the IJ-1 rate: The candidate may be offered the lowest rate of basic pay in the IJ pay scale which equals or exceeds his or her rate of pay in a branch of the Federal service immediately prior to appointment. The degree of relevant experience, the duration of the prior Federal service, and the voluntary nature of the appointment will be considered when setting pay at rates above IJ-1.

2) Superior qualifications: When necessary to match or exceed to a limited degree the candidate's existing pay, and when the candidate possesses superior qualifications for the position of immigration judge, based on such factors as:
      a) legal practice before the immigration courts;
      b) practice in another forum with legal issues of concern to the immigration courts; or
      c) an outstanding reputation among practitioners in the field of immigration law.

**Advancement after appointment**:

Immigration judges will be advanced to the next IJ pay rate effective on the first day of the pay period beginning on or after completion of: 104 weeks of service as an immigration judge for advancement to IJ-2; 208 weeks of service as an immigration judge, or upon completion of 104 weeks of service at the IJ-2 level, whichever occurs earlier, for advancement to IJ-3; and upon completion of 260 weeks of service as an immigration judge, or upon completion of 52 weeks of service at the IJ-3 level, whichever occurs earlier, for advancement to IJ-4.

Time in a non-pay status exceeding an aggregate of 2 weeks for each year of the waiting period will delay the effective dates of advancement.[4]

---

[4] Time in non-pay status similarly affects advancement of other categories of employees (e.g., within-grade increases for General Schedule employees are affected (See 5 C.F.R. Part 531, Subpart D.) and advancement through the steps of the Administrative Law Judge pay system (5 C.F.R. 930.210(f)) is delayed by time in a non-pay status exceeding an aggregate of two weeks for each year of the waiting period).

4

Example: On December 29, 1996, under the conversion provisions above, an immigration judge with 206 weeks of service was placed at the IJ-2 level. Upon serving two more weeks as an Immigration Judge (on January 12, 1997), he or she would have been eligible to advance to the IJ-3 pay level. This advancement would occur at the beginning of the next pay period, January 19, 1997. If this same judge had six weeks of leave without pay during the two years just prior to eligibility for the IJ-3 level, the eligibility date would change to January 26, 1997 (delayed by the two weeks which are in excess of the allowable 4 weeks (2 weeks for each year of the waiting period) of time in a non-pay status). Advancement to IJ-3 would take effect the beginning of the next pay period (on February 2, 1997).

**Annual Adjustment in Pay:**

On the effective date of an annual adjustment to Level IV of the Executive Schedule under 5 U.S.C. 5318, each rate of basic pay established for employees serving in immigration judge positions will be adjusted to maintain the relationship to the EX-IV pay rate.

**Pay Caps:**

For locality pay purposes, the limit on basic pay plus locality pay for immigration judges is Level III of the Executive Schedule.[5]

For employees in non-foreign COLA areas (i.e., Puerto Rico and Hawaii), limits described in 5 U.S.C. 5941 apply.[6]

**Automatic Processing of Pay Increases:**

The Executive Office for Immigration Review's Human Resources Staff works with the National Finance Center to ensure that the annual base pay and locality pay increases, and the increases from one IJ pay level to the next are programmed into the personnel/payroll database for automated processing.

**OTHER EMPLOYMENT AND PAY MATTERS:**

---

[5] When immigration judges were previously under the General Schedule pay system (prior to PL 104-208), their locality pay had been capped at Level IV of the Executive Schedule (5 USC 5304). Under the IJ pay system, as established by PL 104-208 in 1996, pay rates were linked to a Senior Executive Service pay rate, and the Level IV cap was no longer appropriate. (The locality pay cap for SES employees at that time was Executive Level III.) NOTE: In 2004, when SES pay rates were abolished, IJ base pay rates were linked to Level IV of the Executive Schedule. Along with SES, 5 U.S.C. 5304 provided for locality pay caps of Executive Level III for Federal employees in other pay categories to whom locality pay was granted administratively; however, locality pay for those employees needed annual re-authorization by the President's pay agent. Immigration judges' locality pay was granted statutorily by PL 104-208, Sec. 371. The Attorney General sought clarification on this matter from the Office of Personnel Management, and OPM responded that locality pay for immigration judges would be capped at Executive Level III, the same cap as applies to other non-General Schedule employees to whom locality pay is extended by administrative action under section 5304(h), with no requirement for annual re-authorization by the Pay Agent. The Executive Level III locality pay limit thus applies to immigration judges under the IJ pay system.

[6] See footnote 3. Under 5 U.S.C. 5941, these cost of living allowances may not exceed 25% of the rate of basic pay.

5

**Recruitment and Relocation Bonuses and Retention Allowances:**

At the discretion of agency management, immigration judges may receive such payments.[7]

**Leave:**

Immigration judges continue to be covered by 5 U.S.C. 6301(2)(B).

**Reduction in Force***:*

Immigration judges continue to be covered by reduction in force regulations at 5 C.F.R., Part 351.

**Performance Appraisal***:*

Immigration judges are covered by the regulations at 5 C.F.R., Part 430.[8]

---

[7] The Assistant Attorney General for Administration, U.S. Department of Justice, sought authority from the Office of Personnel Management to pay recruitment and relocation bonuses to immigration judges under 5 U.S.C. 5753(e) and retention allowances under 5 U.S.C. 5754(e).  By letter dated December 26, 1996, OPM granted that authority.

[8] From 1991 until 2007, immigration judges had been administratively excluded from performance appraisal by approval of the Office of Personnel Management. This exclusion was rescinded in 2007.



# Executive Office for Immigration Review
## 2017 Immigration Judge Pay Rates
Effective January 8, 2017

### Base Pay Rates

|  | IJ-1 | IJ-2 | IJ-3 | IJ-4 |
|---|---|---|---|---|
|  | $113,330 | $129,520 | $145,710 | $148,948 |

### Locality Pay Rates

| Locality Pay Area | Locality % | IJ-1 | IJ-2 | IJ-3 | IJ-4 |
|---|---|---|---|---|---|
| Adelanto, CA | 29.65 | $146,932 | $167,923 | $172,100* | $172,100* |
| Arlington, VA | 27.10 | $144,042 | $164,620 | $172,100* | $172,100* |
| Atlanta, GA | 20.70 | $136,789 | $156,331 | $172,100* | $172,100* |
| Aurora, CO | 24.65 | $141,266 | $161,447 | $172,100* | $172,100* |
| Baltimore, MD | 27.10 | $144,042 | $164,620 | $172,100* | $172,100* |
| Batavia, NY (*Buffalo SPC*) | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Bloomington, MN (*St. Paul*) | 22.72 | $139,079 | $158,947 | $172,100* | $172,100* |
| Boston, MA | 26.73 | $143,623 | $164,141 | $172,100* | $172,100* |
| Buffalo, NY | 18.66 | $134,477 | $153,688 | $172,100* | $172,100* |
| Charlotte, NC | 15.65 | $131,066 | $149,790 | $168,514 | $172,100* |
| Chicago, IL | 26.85 | $143,759 | $164,296 | $172,100* | $172,100* |
| Cleveland, OH | 19.71 | $135,667 | $155,048 | $172,100* | $172,100* |
| Dallas, TX | 22.61 | $138,954 | $158,804 | $172,100* | $172,100* |
| Denver, CO | 24.65 | $141,266 | $161,447 | $172,100* | $172,100* |
| Detroit, MI | 25.68 | $142,433 | $162,781 | $172,100* | $172,100* |
| East Mesa CCA (*Otay, CA*) | 26.98 | $143,906 | $164,464 | $172,100* | $172,100* |
| El Paso, TX | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Elizabeth, NJ | 31.22 | $148,712 | $169,956 | $172,100* | $172,100* |
| Eloy, AZ | 18.57 | $134,375 | $153,572 | $172,100* | $172,100* |
| Falls Church, VA | 27.10 | $144,042 | $164,620 | $172,100* | $172,100* |
| Fishkill, NY | 31.22 | $148,712 | $169,956 | $172,100* | $172,100* |
| Florence, AZ | 18.57 | $134,375 | $153,572 | $172,100* | $172,100* |
| Harlingen, TX | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Hartford, CT | 27.57 | $144,575 | $165,229 | $172,100* | $172,100* |
| Honolulu, HI | 17.92 | $133,639 | $152,730 | $171,821 | $172,100* |
| Houston, TX | 30.97 | $148,428 | $169,632 | $172,100* | $172,100* |
| Imperial, CA | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Kansas City, MO | 15.59 | $130,998 | $149,712 | $168,426 | $172,100* |
| Las Vegas, NV | 15.93 | $131,383 | $150,153 | $168,922 | $172,100* |
| Los Angeles, CA | 29.65 | $146,932 | $167,923 | $172,100* | $172,100* |
| Memphis, TN | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Miami, FL (*& Krome Bldg.*) | 22.13 | $138,410 | $158,183 | $172,100* | $172,100* |
| New Orleans, LA | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| New York, NY (*& Varick St.*) | 31.22 | $148,712 | $169,956 | $172,100* | $172,100* |
| Newark, NJ | 31.22 | $148,712 | $169,956 | $172,100* | $172,100* |
| Oakdale, LA | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Omaha, NE | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Orlando, FL | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Pearsall, TX | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Philadelphia, PA | 23.87 | $140,382 | $160,436 | $172,100* | $172,100* |
| Phoenix, AZ | 18.57 | $134,375 | $153,572 | $172,100* | $172,100* |
| Port Isabel, TX | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Portland, OR | 21.95 | $138,206 | $157,950 | $172,100* | $172,100* |
| Salt Lake City, UT | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| San Antonio, TX | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| San Diego, CA | 26.98 | $143,906 | $164,464 | $172,100* | $172,100* |
| San Francisco, CA | 38.17 | $156,588 | $172,100* | $172,100* | $172,100* |
| San Juan, PR | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Seattle, WA | 24.24 | $140,801 | $160,916 | $172,100* | $172,100* |
| Stewart County, GA | 15.06 | $130,397 | $149,026 | $167,654 | $171,380 |
| Tacoma, WA | 24.24 | $140,801 | $160,916 | $172,100* | $172,100* |
| Tucson, AZ | 15.66 | $131,077 | $149,803 | $168,528 | $172,100* |
| Ulster, NY | 31.22 | $148,712 | $169,956 | $172,100* | $172,100* |
| York, PA | 27.10 | $144,042 | $164,620 | $172,100* | $172,100* |

*Adjusted salary is capped at Level III of the Executive Schedule. In 2017, that rate is: **$172,100**.

**U.S. Department of Justice**                    **Attorney Applicant Data / Above Minimum Request**

MEMORANDUM TO:    Director, Office of Attorney Recruitment and Management

From: Executive Office for Immigration Review / Arlington                    Date:

    (Hiring Organization - include Section or Branch, if applicable)

Name: Vance  Hudson Spath

Address: (b)(6)

College: Virginia Wesleyan College                    Year of Graduation: 1987

Law School: Quinnipiac University School of Law                    Year of Graduation: 1991

Current Employer:  United States Air Force

Current Salary (GS grade and step if Government): $124,428

Proposed Grade Level, Step and Salary    IJ-1  $140,016  144,042

Highest Previous Rate:  Grade/Step                    (Applicable for Current/Former Federal Government

employee/District of Columbia Government employee **appointed prior to 10/1/87**).  Salary
verification must be an SF-50 or copy of current/last official salary stub)
Jurisdiction(s) of Bar Admission/Year(s) Admitted:  New York, 1992

Proposed EOD Date: ASAP

Requesting Waiver of Background investigation?    ☒ Yes  ☐ No

Is the Requested Security Form Attached?    SF86 _____ SF85P _____ SF85P/SF85PS _____

Remarks (other pertinent information):

Signed - see reverse, if an above minimum:                    Approved/Disapproved

                                                  Grade/Step

*M. Keller*

[Hiring Component]                    Director, Office of Attorney Recruitment
                                             Management

**For OARM Use Only -** Date Received:

Date Initiated - (1) BI _____        (2) NAC _____        (3) Fingerprint Check _____

**NOTE:**  If requesting an above minimum, you must also complete the other side of this form.  Applicants
must submit a law school transcript if: (1) the hiring organization is requesting an above minimum salary
or  (2) it has been three years or less since the attorney's graduation from law school.

                                                                 Form DOJ-487
                                                                 (Rev. Nov 05)

REQUEST FOR APPOINTMENT ABOVE THE MINIMUM

DOJ will consider only those candidates for an appointment above the minimum rate who possess unusually high or unique qualifications which are markedly superior to those expected of a well-qualified candidate for the position to be filled.  Please highlight the aspects of the applicant's background (education, experience) that make him/her markedly superior for the position.  (Attach additional sheets if necessary.):

Does the applicant have another current bona fide offer of employment?  ☐ Yes  ☐ No
If yes, attach a copy of the offer.  Offer must be in writing on competing organization's letterhead stationery.

Will a one-time recruitment bonus be offered?        ☐ Yes  ☐ No        If not, why?

☐ One-time bonus would not adequately compensate for reduction in income.

☐ Other reason(s):

_____

If proposed salary level is more than the applicant's current salary, state exceptional or unusual circumstances beyond those described above warranting increase.

**Certification:**  I have reviewed the basis for the recommended appointment above the minimum rate and have assured myself that (1) no current employee will be adversely affected by the proposed action, (2) the candidate possesses high or unique qualifications which are markedly superior to those expected of a well-qualified candidate for the position to be filled, and (3) this authority is not being used to circumvent any other salary restriction of law, rule, or  regulation.

_____     _____     _____
Signature of Requesting Official)            (Title)                      (Date)

Rationale for OARM action (including basis for existing pay determination and evidence of how the candidate's qualifications are superior to those expected of a well-qualified candidate for the position.)

# Declaration for Federal Employment*

(*This form may also be used to assess fitness for federal contract employment)

Form Approved:
OMB No. 3206-0182

## GENERAL INFORMATION

1. **FULL NAME** (Provide your full name. If you have only initials in your name, provide them and indicate "Initial only". If you do not have a middle name, indicate "No Middle Name". If you are a "Jr.," "Sr.," etc. enter this under Suffix. First, Middle, Last, Suffix)

    ♦  SPATH  VANCE    Hudson

**(b)(6)**

2. **SOCIAL SECURITY NUMBER**    3a. **PLACE OF BIRTH** (Include city and state or country)

| | |
|---|---|
| **3b. ARE YOU A U.S. CITIZEN?** | **4. DATE OF BIRTH** (MM / DD / YYYY) |
| ☒ YES  ☐ NO (If "NO", provide country of citizenship)  ♦ | ♦  (b)(6) |
| **5. OTHER NAMES EVER USED** (For example, maiden name, nickname, etc) | **6. PHONE NUMBERS** (Include area codes) |
| ♦  N/A | (b)(6)  Day ___  Night ___ |

## Selective Service Registration

If you are a male born after December 31, 1959, and are at least 18 years of age, civil service employment law (5 U.S.C. 3328) requires that you must register with the Selective Service System, unless you meet certain exemptions.

7a. Are you a male born after December 31, 1959?  ☒ YES    ☐ NO (If "NO", proceed to 8.)

7b. Have you registered with the Selective Service System?  ☒ YES (If "YES", proceed to 8.)  ☐ NO (If "NO", proceed to 7c.)

7c. If "NO," describe your reason(s) in item 16.

## Military Service

8. Have you ever served in the United States military?    ☐ YES (If "YES", provide information below)  ☐ NO

    *If you answered "YES," list the branch, dates, and type of discharge for all active duty.*
    *If your only active duty was training in the Reserves or National Guard, answer "NO."*

| Branch | From (MM/DD/YYYY) | To (MM/DD/YYYY) | Type of Discharge |
|---|---|---|---|
| USAF | 01/30/1992 | PRESENT | N/A - Still Serving |
| | | | |
| | | | |

## Background Information

**For all questions, provide all additional requested information under item 16 or on attached sheets.** The circumstances of each event you list will be considered. However, in most cases you can still be considered for Federal jobs.

For questions 9,10, and 11, your answers should include convictions resulting from a plea of *nolo contendere* (no contest), but omit (1) traffic fines of $300 or less, (2) any violation of law committed before your 16th birthday, (3) any violation of law committed before your 18th birthday if finally decided in juvenile court or under a Youth Offender law, (4) any conviction set aside under the Federal Youth Corrections Act or similar state law, and (5) any conviction for which the record was expunged under Federal or state law .

| | | |
|---|---|---|
| 9. During the last 7 years, have you been convicted, been imprisoned, been on probation, or been on parole? (Includes felonies, firearms or explosives violations, misdemeanors, and all other offenses.) If "YES," use item 16 to provide the date, explanation of the violation, place of occurrence, and the name and address of the police department or court involved. | ☐ YES | ☒ NO |
| 10. Have you been convicted by a military court-martial in the past 7 years? (If no military service, answer "NO.") If "YES," use item 16 to provide the date, explanation of the violation, place of occurrence, and the name and address of the military authority or court involved. | ☐ YES | ☒ NO |
| 11. Are you currently under charges for any violation of law? If "YES," use item 16 to provide the date, explanation of the violation, place of occurrence, and the name and address of the police department or court involved. | ☐ YES | ☒ NO |
| 12. During the last 5 years, have you been fired from any job for any reason, did you quit after being told that you would be fired, did you leave any job by mutual agreement because of specific problems, or were you debarred from Federal employment by the Office of Personnel Management or any other Federal agency? If "YES," use item 16 to provide the date, an explanation of the problem, reason for leaving, and the employer's name and address. | ☐ YES | ☒ NO |
| 13. Are you delinquent on any Federal debt? (Includes delinquencies arising from Federal taxes, loans, overpayment of benefits, and other debts to the U.S. Government, plus defaults of Federally guaranteed or insured loans such as student and home mortgage loans.) If "YES," use item 16 to provide the type, length, and amount of the delinquency or default, and steps that you are taking to correct the error or repay the debt. | ☐ YES | ☒ NO |

# Declaration for Federal Employment*

Form Approved:
OMB No. 3206-0182

(*This form may also be used to assess fitness for federal contract employment)

## Additional Questions

14. Do any of your relatives work for the agency or government organization to which you are submitting this form? (Include: father, mother, husband, wife, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, and half sister.) *If "YES," use item 16 to provide the relative's name, relationship, and the department, agency, or branch of the Armed Forces for which your relative works.*    ☐ YES  ☒ NO

15. Do you receive, or have you ever applied for, retirement pay, pension, or other retired pay based on military, Federal civilian, or District of Columbia Government service?    ☐ YES  ☒ NO

## Continuation Space / Agency Optional Questions

16. Provide details requested in items 7 through 15 and 18c in the space below or on attached sheets. Be sure to identify attached sheets with your name, Social Security Number, and item number, and to include ZIP Codes in all addresses. If any questions are printed below, please answer as instructed *(these questions are specific to your position and your agency is authorized to ask them).*

## Certifications / Additional Questions

**APPLICANT: If you are applying for a position and have not yet been selected,** carefully review your answers on this form and any attached sheets. When this form and all attached materials are accurate, read item 17, and complete 17a.

**APPOINTEE: If you are being appointed,** carefully review your answers on this form and any attached sheets, including any other application materials that your agency has attached to this form. If any information requires correction to be accurate as of the date you are signing, make changes on this form or the attachments and/or provide updated information on additional sheets, initialing and dating all changes and additions. When this form and all attached materials are accurate, read item 17, complete 17b, read 18, and answer 18a, 18b, and 18c as appropriate.

17. **I certify** that, to the best of my knowledge and belief, all of the information on and attached to this Declaration for Federal Employment, including any attached application materials, is true, correct, complete, and made in good faith . **I understand that a false or fraudulent answer to any question or item on any part of this declaration or its attachments may be grounds for not hiring me, or for firing me after I begin work, and may be punishable by fine or imprisonment. I understand** that any information I give may be investigated for purposes of determining eligibility for Federal employment as allowed by law or Presidential order. **I consent** to the release of information about my ability and fitness for Federal employment by employers, schools, law enforcement agencies, and other individuals and organizations to investigators, personnel specialists, and other authorized employees or representatives of the Federal Government. I understand that for financial or lending institutions, medical institutions, hospitals, health care professionals, and some other sources of information, a separate specific release may be needed, and I may be contacted for such a release at a later date.

17a. Applicant's Signature: _____ (Sign in ink)    Date 10/06/2016

**Appointing Officer:**
Enter Date of Appointment or Conversion
MM / DD / YYYY

17b. Appointee's Signature: _____ (Sign in ink)    Date _____

18 Appointee (Only respond if you have been employed by the Federal Government before): Your elections of life insurance during previous Federal employment may affect your eligibility for life insurance during your new appointment. These questions are asked to help your personnel office make a correct determination.

| | |
|---|---|
| 18a. When did you leave your last Federal job? | DATE: ____ MM / DD / YYYY |
| 18b. When you worked for the Federal Government the last time, did you waive Basic Life Insurance or any type of optional life insurance? | ☐ YES  ☐ NO  ☐ DO NOT KNOW |
| 18c. If you answered "YES" to item 18b, did you later cancel the waiver(s)? If your answer to item 18c is "NO," use item 16 to identify the type(s) of insurance for which waivers were not canceled. | ☐ YES  ☐ NO  ☐ DO NOT KNOW |

U.S. Office of Personnel Management
5 U.S.C. 1302, 3301, 3304, 3328 & 8716

Optional Form 306
Revised October 2011
Previous editions obsolete and unusable

## Applicant / Employee Disclosure Form

*APPLICANTS: Thank you for your interest in the Department of Justice (DOJ). Having a relative already employed at DOJ does not affect our consideration of you for employment; however, the information requested below is necessary to help DOJ assure that all hiring decisions are free of inappropriate influence by relatives employed in the Department and otherwise are consistent with applicable laws and policies.*

*EMPLOYEES: You must submit this certification in connection with a personnel action by which you will move to a different position than the one you currently encumber.*

Merit System Principles set forth in Section 2301(b) of title 5, U.S.C. provide guidance on federal personnel management. 5 U.S.0 §§ 2302(b) and 3110(b) contain provisions identifying as a prohibited personnel practice engaging in nepotism (i.e., to appoint, employ, promote, or advance relatives; or advocate for the same) by public officials. It is also a prohibited personnel practice to grant a preference or advantage not authorized by law, rule or regulation to an employee or applicant for the purpose of improving or injuring any individual's prospects for employment. Consistent with these laws and applicable ethics requirements, you are asked to identify relatives or other covered individuals (defined below) who work anywhere in the Department. For purposes of this form, the term "relative" includes a DOJ employee's or applicant's spouse, parent, guardian, grandparent, sister/brother (including step/half relationships), child/grandchild (including biological, adopted, foster, or step child, legal ward, or child for whom the employee/applicant stands *in loco parentis)*, in-law, aunt, uncle, nephew, niece, or first cousin. "Other covered individuals" include a domestic partner, more distant relatives than those listed above with whom the employee/applicant has a close personal relationship, or anyone currently residing in the employee's/applicant's household, even temporarily.

- I do___ / do not___ have a relative or other covered individual who works for the Department. Relevant details are provided below and on an attached page if necessary.

- Additional information is ___ / is not____ attached.

| Name | Relationship | DOJ Organization |
|------|--------------|------------------|
|      |              |                  |

### SIGNATURE, CERTIFICATION, AND RELEASE OF INFORMATION

**YOU MUST SIGN THIS DOCUMENT. Read the following carefully before you sign.**

- A false statement on any part of your application may be grounds for not hiring you, or for firing you after you begin work. Also, you may be punished by fine or imprisonment (U.S. Code, title 18, section 1001).

- I certify that, to the best of my knowledge and belief, all of my statements are true, correct, complete, and made in good faith.

| SPATH, VANCE H | |
|----------------|---|
| Applicant / Employee Name (Please Print) | Oct. 6, 2016 |
| Applicant / Employee Signature | Date Signed (Month, day, year) |
| | |
| Reviewing Official Signature | Date Signed (Month, day, year) |

**Please submit this form to: Administration Division, Human Resources Office, Suite 2300**

*Privacy Act Notice: The information provided on this form is covered by and will be used and maintained in accordance with the Privacy Act of 1974, as amended*

HR Initial: _____                                                    November 2014

**Selecting Official / Requesting Official**
**Acknowledgment and Disclosure Form**

| Selecting / Requesting Official Name: MARYBETH KELLER | Applicant / Employee Name: VANCE H. SPATH |
|---|---|
| Organization/Component: EOIR / OCIJ | Position: IMMIGRATION JUDGE |

I am familiar with the Merit System Principles found in Section 2301(b) of title 5, U.S.C. which provide guidance on federal personnel management, including 5 U.S.O §§ 2302(b) and 3110(b), which contain provisions identifying nepotism as a prohibited personnel practice. Nepotism is engaging in action to appoint, employ, promote, or advance relatives, or advocate for any of these actions, by a public official.

I understand that:

- It is a prohibited personnel practice to grant a preference or advantage not authorized by law, rule or regulation to an employee or applicant for the purpose of improving or injuring any individual's prospects for employment.

- The applicable ethics rules prohibit me from taking official action to affect my own financial interest, or misusing my official position to promote a private interest, for example, by recommending my domestic partner or a member of my household for a position at DOJ.

- For purposes of this form, the term "relative" includes a Department of Justice (DOJ) applicant's or employee's spouse, parent, guardian, grandparent, sister/brother (including step/half relationships), child/grandchild (including biological, adopted, foster, or step child, legal ward, or child for whom the employee stands in loco parentis), in-law, aunt, uncle, nephew, niece, or first cousin. "Other covered individual's" includes a domestic partner, a more distant relative not included above with whom the employee has a close personal relationship, or anyone currently residing in the employee's or applicant's household, even temporarily.

I understand that before I select a candidate for employment with DOJ or other personnel action (transfer, reassignment, competitive promotion, or similar action), I must disclose on this form my knowledge of a relative or other covered individual of an employee of DOJ, by responding to each of the following:

1. I certify that to the best of my knowledge:
The individual I am selecting / requesting does not have a relative or other covered individual employed at DOJ;
MK (Initial Here)

OR

The individual I am selecting / requesting has a relative or other covered individual employed at DOJ. _____ (Initial Here)

2. If the individual I am selecting / requesting has a relative or other covered individual employed at DOJ, I certify that my selection decision has not been influenced by either the selectee's relationship with the DOJ employee or any communication by the DOJ employee relating to the personnel action. _____ (Initial Here)  MK Not Applicable (i.e., I have no awareness of a relative or other covered individual)

3. I am aware that individuals in the hiring process, including myself, may have had contact with a relative or other covered individual of the selectee. If "yes," I am satisfied it did not affect the personnel action and have attached a brief explanation of the circumstances of which I am aware.
_____ Yes  MK No. If Yes, I have attached an explanation.

Names of relatives or other covered individuals known to work for DOJ:

| Relative's/Individual's Name | Relationship to Employee | DOJ Organization |
|---|---|---|
| | | |

As the selecting/requesting official, I certify that the selection was made, or other personnel action was taken, in compliance with Merit System Principles, and the applicable ethics rules.

M. Keller  11·3·16 _____

| Selecting / Requesting Official Signature & Date | Reviewing Official Signature & Date |
|---|---|

Please submit this form to: Administration Division, Human Resources Office, Suite 2300
Privacy Act Notice: The information provided on this form is covered by and must be used and maintained in accordance with the Privacy Act of 1974, as amended.

HR Initial: _____                                                                                                    November 2014

# IMMIGRATION JUDGE APPLICANT

## EMPLOYMENT CONTACTS

Please provide the names, relationship, and contact information for your immediate supervisor for the last 7 years.

| name & title | contact information | may we contact? |
|---|---|---|
| Col Rebecca Vernon<br>Executive Officer to the Judge Advocate General | (b)(6)<br>(b)(6) | Yes |
| Col Charles C. Killion<br>Chief of the AF Judiciary | (b)(6)<br>(b)(6)<br>(b)(6) | Yes |
| Brig Gen William Knight<br>Deputy Director for Operations | (b)(6)<br>(b)(6)<br>(b)(6) | Yes |
| Col Mark Allred<br>Chief Judge<br>AF Court of Appeals | (b)(6)<br>(b)(6)<br>(b)(6) | Yes |
|  |  |  |

VANCE H. SMITH
Name (printed)

Signature

25 MARCH 2016
Date

PLACE OF EMPLOYMENT: JAG colleagues

DATES OF EMPLOYMENT: Click here to enter text.

NAME OF INDIVIDUAL QUESTIONED: Robert Kenny

RELATIONSHIP TO APPLICANT: ☐ Employer          ☒ Supervisor          ☒ Co-Worker

YEARS OF RELATION TO APPLICANT: From 1995 To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes          ☐ No (If no, explain)
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes          ☒ No (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes          ☒ No (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes          ☐ No (If no, explain) highest recommendation

5. Please furnish any other information you may wish to offer.

   ☒ Yes          ☐ No (If no, explain) He is the best trial advocate Mr. Kenny has ever seen.
   Highest recommendation. Superb temperament and demeanor. Smart judge, lets lawyers do job.

6. Reason applicant left (or is leaving) this position?

   ☐ Yes          ☒ No (If no, explain) currently in job

7. Is this person eligible for rehire?   ☒ Yes   ☐ No (If no, explain)

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job
   after being notified that he/she would be fired?          ☐ Yes          ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released. Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

*Madleann*

Deepali Nadkarni                                    6/23/2016                    (b)(6)
Printed name and signature of employee              Date                         Telephone
conducting this inquiry

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: Staff Judge Advocate

DATES OF EMPLOYMENT: July 2012-July 2013

NAME OF INDIVIDUAL QUESTIONED: Brig.Gen. William Knight

RELATIONSHIP TO APPLICANT: ☐ Employer          ☒ Supervisor          ☐ Co-Worker

YEARS OF RELATION TO APPLICANT: From 2012To: 2013

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes          ☐ No (If no, explain) absolutely
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes          ☒ No (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes          ☒ No (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes          ☐ No (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☒ Yes          ☐ No (If no, explain) Was Installation Commander at Joint Base Andrews where candidate was primary legal counsel (supervising about 50 lawyers, PLs, support staff). Brought in to fix the office. Unusually broad UCMJ spectrum, difficult, unusual mission. Handled phenomenally. Very well organized, passionate about individual cases. Always objective, hugely important to do. Terrific to work with. Great reputation. Friendly, mentored younger attorneys. Hard-working. Professional, strong people skills. No problems getting along with people.

6. Reason applicant left (or is leaving) this position?

   ☒ Yes          ☐ No (If no, explain) completed mission; promotion to another job

7. Is this person eligible for rehire?     ☒ Yes     ☐ No (If no, explain)

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job after being notified that he/she would be fired?          ☐ Yes          ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released. Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

*DNadkarni*

Deepali Nadkarni          6/22/2016          (b)(6)

Printed name and signature of employee          Date          Telephone
conducting this inquiry

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Caldwell, Rhonda (EOIR) |
| **Sent:** | Thursday, March 23, 2017 10:00 AM |
| **To:** | Osuna, Juan (EOIR); Kocur, Ana (EOIR); Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); Maggard, Print (EOIR); Ward, Lisa (EOIR); Sheehey, Kate (EOIR); McDaniel, James P. (EOIR); Brown, Kenneth (EOIR) |
| **Cc:** | Butler, Vicki A. (EOIR); Moutinho, Deborah (EOIR); Boone-Fisher, Sabina (EOIR); Lee-Sullivan, Marcia L. (EOIR); Roldan, Martin (EOIR); Brown, Angela (EOIR); Davis, Cheryl E. (EOIR); Giles, Naomi (EOIR); Taylor, Charlotte (EOIR); OS Personnel Security Operations Staff (EOIR); Hill, Bridgette (EOIR); Pryor, Holly (EOIR) |
| **Subject:** | RE: AG signed and approved Temporary Appointment Orders as an Immigration Judge dated 03/20/17 |

**AG signed and approved Temporary Appointment Orders as an Immigration Judge dated 03/20/17:**

WF 154743.3796084 - Vance H. Spath (Arlington);

WF 154744.3796090 – Donald Thompson (New York);

WF 154745.3796106 - David C. Whipple (Cleveland); and

WF 154761.3796125 - Ryan R. Wood (Bloomington).

A copy of the signed/approved temporary appointment order will be available to ADMIN and OCIJ via the IQ4 database and a hard copy will be e-mailed to Naomi Giles and OS Personnel Operations Staff when they become available.

Thanks, RC

*R. Caldwell*

Executive Secretariat
Executive Office for Immigration Review (EOIR)
Office of the Director
5107 Leesburg Pike, Suite 2600
Falls Church, VA 20530
(703) 305-0169 (Main)
(703) 605-0590 (Direct)

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Wednesday, November 30, 2016 10:32 AM |
| **To:** | Nadkarni, Deepali (EOIR) |
| **Cc:** | Boone-Fisher, Sabina (EOIR); Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | Additional Vouchering Requested - IJ Candidate Vance Spath |
| **Attachments:** | Voucher Fillable Form Aug 2015.docx; Voucher Form.pdf; Vouchering and Reference Checks.doc |

Good Morning Judge Nadkarni,

The Office of Security is requesting additional vouchering for IJ candidate Vance Spath (Arlington).

**Employer:** US Air Force
**Dates of Employment:** 4/2014 to Present
**Position Title:** Chief Trial Judge of the Air Force
**Supervisor:** Julie Rutherford, Colonel
**Phone:** (b)(6)
**E-mail:** (b)(6)

Thank you !

Marcia

1

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Coleman, Briana (EOIR) |
| **Sent:** | Wednesday, November 30, 2016 9:16 AM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | Additional Vouchering - IJ Candidate Vance Spath |

Hi Marcia,

It has been requested that we provide additional vouchering for IJ candidate Vance Spath.

**Employer:** US Air Force
**Dates of Employment:** 4/2014 to Present
**Position Title:** Chief Trial Judge of the Air Force
**Supervisor:** Julie Rutherford, Colonel
**Phone:** (b)(6)
**E-mail:** (b)(6)

**Employer:** US Air Force
**Dates of Employment:** 7/2013 to 4/2014
**Position Title:** Director, Training and Readiness
**Supervisor:** Charles Killion, Colonel
**Phone:** (b)(6)
**E-mail:** (b)(6)

Please feel free to contact me if additional information is needed.

Respectfully,
*Briana Coleman*
*Personnel Security Specialist*
EOIR Office of Security
Desk: (703) 756-8039
Main: (703) 605-0348
Briana.Coleman@usdoj.gov

FOR OFFICIAL USE ONLY.
This email is privileged and sensitive. In compliance with the Privacy Act of 1974 (5 U.S.C. § 552a As Amended), this information may contain personal data and must be protected from public disclosure. DO NOT disclose or forward this message to others without prior permission. If the reader of this communication is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please immediately delete all copies of the communication and notify the author immediately via email.

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: Bolling AFB

DATES OF EMPLOYMENT: Click here to enter text.

NAME OF INDIVIDUAL QUESTIONED: Col. Patrick Franzese

RELATIONSHIP TO APPLICANT: ☐ Employer          ☐ Supervisor              ☒ Co-Worker

YEARS OF RELATION TO APPLICANT:  From 2004To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes        ☐ No  (If no, explain)
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes        ☒ No  (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes        ☒ No  (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes        ☐ No  (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☐ Yes        ☐ No (If no, explain) One of most unique individuals Col. Franzese has ever met. Phenomenal litigator. Has been involved in USAF's most important cases in last 12 years. Substantive law knowledge first-rate. Energy and effort to improve the practice of law. People skills incredible. Reputation for being fair-minded and treating people with dignity and respect. Hard to find someone better. Exceptional.

6. Reason applicant left (or is leaving) this position?

   ☒ Yes        ☐ No (If no, explain) currently in position

7. Is this person eligible for rehire?   ☒ Yes     ☐ No (If no, explain)

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job after being notified that he/she would be fired?        ☐ Yes     ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released. Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

*Deepali Nadkarni*
Deepali Nadkarni                              6/22/2016

Printed name and signature of employee        Date              Telephone
conducting this inquiry

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: Circuit Trial Counsel

DATES OF EMPLOYMENT: 1995-1998

NAME OF INDIVIDUAL QUESTIONED: Col. Mark Allred, paths cross often through career

RELATIONSHIP TO APPLICANT: ☐ Employer        ☒ Supervisor        ☐ Co-Worker

YEARS OF RELATION TO APPLICANT:  From 1996To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes        ☐ No  (If no, explain) impeccable rep
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes        ☒ No  (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes        ☒ No  (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes        ☐ No  (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☒ Yes        ☐ No (If no, explain)  Very highly regarded by the US Air Force judiciary. Known throughout JAG corps as one of the best litigators in the corps.  Firm, tough, fair. Demands professionalism, holds high standard.  Firm but fair.  Top-notch.

6. Reason applicant left (or is leaving) this position?

   ☒ Yes        ☐ No (If no, explain) currently in position

7. Is this person eligible for rehire?    ☒ Yes        ☐ No (If no, explain)

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job after being notified that he/she would be fired?        ☐ Yes        ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released. Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

Deepali Nadkarni                                          6/22/2016

Printed name and signature of employee        Date            Telephone
conducting this inquiry

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: Staff Judge Advocates, working together

DATES OF EMPLOYMENT: 2000-pres

NAME OF INDIVIDUAL QUESTIONED: Col. Rebecca Vernon

RELATIONSHIP TO APPLICANT: ☐ Employer          ☐ Supervisor          ☒ Co-Worker

YEARS OF RELATION TO APPLICANT:  From 2000 To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes          ☐ No  (If no, explain)
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes          ☒ No  (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes          ☒ No  (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes          ☐ No  (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☒ Yes          ☐ No (If no, explain) One of the most trustworthy Col. Vernon has met in her career. Knows law very well, articulates it well, and great teacher to others. Good leader. Phenomenal leader. Even-keeled. Passionate about the law. Has done some of the AF's toughest cases. Creates educational tools to help others. Helped train some trial judges. Forward thinker, finding ways to improve processes.

6. Reason applicant left (or is leaving) this position?

   ☒ Yes          ☐ No (If no, explain)  still in position

7. Is this person eligible for rehire?    ☒ Yes      ☐ No (If no, explain) Click here to enter text.

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job after being notified that he/she would be fired?          ☐ Yes          ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released. Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

*Nadkarni*

Deepali Nadkarni                              6/22/2016                    (b)(6)
Printed name and signature of employee        Date                        Telephone
conducting this inquiry

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: Office of the Chief Judge, US Air Force

DATES OF EMPLOYMENT: 2014-present

NAME OF INDIVIDUAL QUESTIONED: Fred Taylor, Staff Director/Office of Military Commissions

RELATIONSHIP TO APPLICANT: ☐ Employer          ☐ Supervisor          ☐ Co-Worker

YEARS OF RELATION TO APPLICANT:  From 2014 To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes          ☐ No  (If no, explain)
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes          ☒ No  (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes          ☒ No  (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes          ☐ No  (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☒ Yes          ☐ No (If no, explain) Very good judge.  Runs a good courtroom.  He treats all
   parties with dignity and respect.  Doesn't get mad at anyone despite buffoonery.  Rolls with
   technical problems in courtroom without ado.  Measured, systematic, thoughtful in decision-
   making.  Considers, weighs all evidence and comes to a decision in a timely manner.  Pushes
   cases forward without at expense of parties' rights.  Doesn't cut corners.  Very personable, works
   well with others.  Pleasure to work with and for him.

6. Reason applicant left (or is leaving) this position?

   ☑ Yes          ☐ No (If no, explain) currently in position

7. Is this person eligible for rehire?     ☑ Yes    ☐ No (If no, explain) Click here to enter text.

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job
   after being notified that he/she would be fired?          ☐ Yes     ☒ No

---

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed
concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information
that you provide can be released to the applicant unless you specifically indicate that you do not
want the information released.  Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

*DNadurri*

Deepali Nadkarni                          6/22/2016          (b)(6)
Printed name and signature of employee    Date               Telephone
conducting this inquiry

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: US Air Force

DATES OF EMPLOYMENT: 4/2014 to Present

NAME OF INDIVIDUAL QUESTIONED: Julie Rutherford, Colonel; Chief Trial Judge of the Air Force

RELATIONSHIP TO APPLICANT: ☐ Employer          ☐ Supervisor          ☒ Co-Worker

YEARS OF RELATION TO APPLICANT: From 2014 To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes          ☐ No (If no, explain)
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes          ☒ No (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes          ☒ No (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes          ☐ No (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☒ Yes          ☐ No (If no, explain) Col. Rutherford has been in JAG corps 18 years, crossed paths w/candidate often. Candidate has done amazing things in JAG corps, both as judge and mentoring young JAG officers. Will be a shame when he retires.

6. Reason applicant left (or is leaving) this position?

   ☒ Yes          ☐ No (If no, explain) would retire/take IJ job.

7. Is this person eligible for rehire?    ☒ Yes    ☐ No (If no, explain)

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job after being notified that he/she would be fired?    ☐ Yes    ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released. Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

Deepali Nadkarni
Printed name and signature of employee
conducting this inquiry

11/30/2016
Date

(b)(6)
Telephone

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Sent:** | Wednesday, July 13, 2016 4:54 PM |
| **To:** | Lee-Sullivan, Marcia L. (EOIR) |
| **Subject:** | FW: IJ Vetting Results: Thomas A. Dukes Jr, Vance H. Spath, Adam Berg, Paula Donnolo, John M. Gillies |

**From:** Covarrubias, Evelyn (EOIR)
**Sent:** Wednesday, July 13, 2016 4:20 PM
**To:** Lee-Sullivan, Marcia L. (EOIR)
**Subject:** IJ Vetting Results: Thomas A. Dukes Jr, Vance H. Spath, Adam Berg, Paula Donnolo, John M. Gillies

Please see the list below regarding IJ candidate vetting results. If you have any questions, feel free to contact me.

Thanks
Evelyn

(b)(6)

| Vance H. Spath | Arlington | Evelyn | | | |
|---|---|---|---|---|---|
| Air Force/IG | | | 6/14/2016 | 7/1/2016 | No record |

(b)(6)

1

APPLICANT'S NAME: Vance H. Spath

PLACE OF EMPLOYMENT: worked together as JAG officers

DATES OF EMPLOYMENT: Click here to enter text.

NAME OF INDIVIDUAL QUESTIONED: Col. Charles Killion

RELATIONSHIP TO APPLICANT: ☐ Employer          ☐ Supervisor          ☒ Co-Worker

YEARS OF RELATION TO APPLICANT:  From 1992To: present

1. To your knowledge, is this person reliable, honest, trustworthy and of good character?
   ☒ Yes          ☐ No  (If no, explain)
2. Do you have any reason to question this person's loyalty to the U.S.?
   ☐ Yes          ☒ No  (If no, explain)
3. Do you know of anything questionable in the applicant's background?
   ☐ Yes          ☒ No  (If no, explain)
4. Would you recommend this person for a position of national security in the U.S. Govt.?
   ☒ Yes          ☐ No  (If no, explain)

5. Please furnish any other information you may wish to offer.

   ☒ Yes          ☐ No (If no, explain) Paths have crossed repeatedly, professionally and
   personally. No hesitation in recommending him.

6. Reason applicant left (or is leaving) this position?

   ☒ Yes          ☐ No (If no, explain) not leaving position

7. Is this person eligible for rehire?    ☒ Yes      ☐ No (If no, explain)

8. To your knowledge, has this person ever been fired from any job for any reason, or quit a job
   after being notified that he/she would be fired?          ☐ Yes          ☒ No

Inquiry conducted by: Deepali Nadkarni

PRIVACY ACT (The following information should be provided to the person being interviewed concerning this questionnaire.) Under the provisions of the Privacy Act of 1974, the information that you provide can be released to the applicant unless you specifically indicate that you do not want the information released.  Please indicate your preference.

This information ☒ CAN or ☐ CANNOT be released to the applicant.

Deepali Nadkarni                                    6/22/2016                      (b)(6)

Printed name and signature of employee          Date                Telephone
conducting this inquiry



**U.S. Department of Justice**
Executive Office for Immigration Review

*Office of the Chief Immigration Judge*

*5107 Leesburg Pike, Suite 2500*
*Falls Church, Virginia 22041*

September 29, 2016

Vance H. Spath
(b)(6)

Dear Vance H. Spath,

On Thursday, September 29, 2016, Assistant Chief Immigration Judge Deepali Nadkarni informed me that you accepted an appointment as an Immigration Judge. Your appointment is subject to the satisfactory completion of a full-field background investigation. In addition, this appointment is subject to a two-year trial period.

To assist me with the hiring process, please provide me the following documents. Please complete the enclosed Applicant/Employee Disclosure Form and the SF-306 Declaration for Federal Employment Form. On the SF-306 form, sign the form as *"applicant"* on line (17a) and submit a copy of your most recent earnings statement. If you are a current government employee, please submit your most recent SF-50 Notification of Personnel Action Form.

Send the documents to my attention by Wednesday, October 12, 2016.

Marcia Lee-Sullivan
Executive Programs Manager
Office of the Chief Immigration Judge
5107 Leesburg Pike, Suite 2500
Falls Church, VA 22041

Should you wish to contact me, I may be reached at (703) 305-1247.

Sincerely,

Marcia Lee-Sullivan
Executive Programs Manager

## Summary Paragraph

## (IJ Interview Question SET C)

---

NAME OF INTERVIEWEE:     Vance Spath

NAME OF INTERVIEWER:     ACIJ Mary Cheng

DATE OF INTERVIEW:     March 29, 2016

---

(b)(5) DP



## Summary Paragraph

## (IJ Interview Question SET C)

NAME OF INTERVIEWEE:     Vance Spath

NAME OF INTERVIEWER:     Amy Hoogasian, ACIJ

DATE OF INTERVIEW:       March 30, 2016

(b)(5) DP



## Summary Paragraph

## (IJ Interview Question SET C)

NAME OF INTERVIEWEE:      Vance Spath

NAME OF INTERVIEWER:      Rico J. Bartolomei

DATE OF INTERVIEW:       March 29, 2016, 2:00 p.m.



(b)(5) DP



**DEPARTMENT OF THE AIR FORCE**
**HEADQUARTERS UNITED STATES AIR FORCE**
**WASHINGTON DC 20330**

MS. MARCIA LEE-SULLIVAN
Executive Programs Manager
Office of the Chief Immigration Judge
5107 Leesburg Pike, Suite 2500
Falls Church, VA 22041

Dear Ms. Lee-Sullivan

Attached are the requested documents.

Please do not hesitate to contact me at (b)(6)

Sincerely,

VANCE H. SPATH, Colonel, USAF
Chief Trial Judge of the Air Force

## Lee-Sullivan, Marcia L. (EOIR)

| From: | Nadkarni, Deepali (EOIR) |
|---|---|
| Sent: | Thursday, September 29, 2016 12:46 PM |
| To: | Lee-Sullivan, Marcia L. (EOIR) |
| Cc: | McGoings, Michael (EOIR); Maggard, Print (EOIR); Kelly, Ed (EOIR); Roldan, Martin (EOIR); Ortiz-Ang, Susana (EOIR); Boone-Fisher, Sabina (EOIR); Keller, Mary Beth (EOIR) |
| Subject: | RE: IJ Appointment Offer - Spath |

Mr. Spath has accepted the offer.

Dee Nadkarni
Assistant Chief Immigration Judge
703.305.1247

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Tuesday, September 27, 2016 4:57 PM
**To:** Nadkarni, Deepali (EOIR)
**Cc:** McGoings, Michael (EOIR); Maggard, Print (EOIR); Kelly, Ed (EOIR); Roldan, Martin (EOIR); Ortiz-Ang, Susana (EOIR); Boone-Fisher, Sabina (EOIR); Lee-Sullivan, Marcia L. (EOIR)
**Subject:** IJ Appointment Offer - Spath

Good Afternoon Judge Nadkarni,

The Office of the Chief Immigration Judge received notification to make an appointment offer to the following individual:

Arlington

**Vance H. Spath**



Maryland

Please use the attached "Basic Scrip – Immigration Judge Offer" as a guide when you contact the applicant.

Please reply to "all" regarding the response so that we may proceed with the next steps of the Immigration Judge Hiring Process.

Thank you !

Marcia Lee-Sullivan
Executive Programs Manager

## Lee-Sullivan, Marcia L. (EOIR)

| | |
|---|---|
| **From:** | Caldwell, Rhonda (EOIR) |
| **Sent:** | Monday, September 26, 2016 2:23 PM |
| **To:** | Osuna, Juan (EOIR); Kocur, Ana (EOIR); Keller, Mary Beth (EOIR); McGoings, Michael (EOIR); Maggard, Print (EOIR); Kelly, Ed (EOIR); Sheehey, Kate (EOIR); McDaniel, James P. (EOIR) |
| **Cc:** | Butler, Vicki A. (EOIR); Boone-Fisher, Sabina (EOIR); Miller, Gregory (EOIR); Lee-Sullivan, Marcia L. (EOIR); Roldan, Martin (EOIR); Brown, Angela (EOIR); Davis, Cheryl E. (EOIR); Taylor, Charlotte (EOIR); OS Personnel Security Operations Staff (EOIR) |
| **Subject:** | AG signed and approved Recommendation Memo as an Immigration Judge dated 09/23/16 |

## AG signed and approved Recommendation Appointments as an Immigration Judge dated 09/23/16:
(b)(6)                                                 ;

WF 151460.3694616 – Vance H. Spath;

WF 151200.3666111 – Donald Thompson; and

(b)(6)                                                 .

A copy of the signed/approved recommendation memoranda will be available to ADMIN and OCIJ via the IQ4 database and a hard copy will be e-mailed to Naomi Giles and OS Personnel Security Operations Staff when they become available.

Thanks, RC

*R. Caldwell*

Executive Secretariat
Executive Office for Immigration Review (EOIR)
Office of the Director
5107 Leesburg Pike, Suite 2600
Falls Church, VA 20530
(703) 305-0169 (Main)
(703) 605-0590 (Direct)

## IMMIGRATION JUDGE VACANCY INTERVIEW LIST

### January 2016

The Executive Office for Immigration Review is interviewing for immigration judge positions. You have been chosen for an opportunity to interview.

Should you be selected for an immigration judge position, we would like to know your geographical preferences. If you have applied to only one location, please stop here and sign below. If you have applied to multiple locations, please rank those locations on the list below, from your most preferred to your least preferred. To indicate your preference, place a number on the space corresponding to the court location. For example: 1 New York, 2 Denver, etc.

Please also remember to sign the two Immigration Judge Applicant Notice Statements included with this packet.

Note: The number of applications you filed neither improves nor harms your chances of being selected for a position in any particular location. The ranking merely assists us in meeting your preference, if possible, should you be selected to serve as an immigration judge.

| | | | | | |
|---|---|---|---|---|---|
| | Adelanto | | Eloy | 7 | Orlando |
| 1 | Arlington | | Florence | | Pearsall |
| 5 | Atlanta | | Harlingen | 3 | Philadelphia |
| 2 | Baltimore | | Hartford | | Phoenix |
| | Batavia | | Honolulu | | Port Isabel |
| | Bloomington | | Houston | · | Portland |
| | Boston | | Imperials | | Salt Lake City |
| | Buffalo | | Kansas City | | San Antonio |
| 6 | Charlotte | | Las Vegas | | San Diego |
| | Chicago | | Los Angeles | | San Francisco |
| | Cleveland | | Memphis | 10 | San Juan |
| | Dallas | 8 | Miami | | Seattle |
| | Denver | | New Orleans | | Stewart |
| | Detroit | | New York | | Tacoma |
| | El Paso | | Newark | | Tucson |
| 9 | Elizabeth | | Oakdale | 4 | York |
| | | | Omaha | | |

28 MARCH 2016
Date

VANCE H. SPATH
Name (print)

Signature

7

## IMMIGRATION JUDGE APPLICANT

## REFERENCES

Please submit the names and contact information for three references.  (Additional references are not required, but may be submitted.)

| name & title | contact information (phone no. required) |
|---|---|
| Mr. Robert Kenny<br>Senior Partner<br>Hoagland, Longo, Moran, Dunst & Doukas, LLP | 40 Paterson Street<br>New Brunswick, NJ   08901<br>rkenny@hoaglandlongo.com<br>(732) 545-4717 |
| Mr. Fred Taylor<br>Staff Director for Trial Judiciary<br>Office of the Military Commissions | 4800 Mark Center Drive, Suite 11F09-02<br>Alexandria, VA   22350<br>(b)(6)<br>(b)(6) |
| Col Patrick Franzese<br>Staff Judge Advocate<br>Joint Base Lackland | 1701 Kenly Ave, Ste 106<br>Lackland AFB, TX   78236<br>(b)(6)<br>(b)(6)<br>(b)(6) |

28 March 2016
_____
Date

VANCE SPATH
_____
Name (printed)

_____
Signature

4

# IMMIGRATION JUDGE APPLICANT

## EMPLOYMENT CONTACTS

Please provide the names, relationship, and contact information for your immediate supervisor for the last 7 years.

| name & title | contact information | may we contact? |
|---|---|---|
| Col Rebecca Vernon<br>Executive Officer to the Judge Advocate General | (b)(6)<br>(b)(6) | Yes |
| Col Charles C. Killion<br>Chief of the AF Judiciary | (b)(6)<br>(b)(6)<br>(b)(6) | Yes |
| Brig Gen William Knight<br>Deputy Director for Operations | (b)(6)<br>(b)(6)<br>(b)(6) | Yes |
| Col Mark Allred<br>Chief Judge<br>AF Court of Appeals | (b)(6)<br>(b)(6)<br>(b)(6) | Yes |
|  |  |  |

5

VANCE H. SMITH

Name (printed)

Signature

28 MARCH 2016

Date

# AUTHORIZATION FOR RELEASE OF INFORMATION

Carefully read this authorization to release information about you, then sign and date it in ink.

I authorize custodians of records and sources of information pertaining to my Federal employment to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency examining my fitness for the position of immigration judge, regardless of any previous agreement to the contrary.

I understand that in this instance, the information released by records custodians and sources of information is for official use by the Federal Government for the specific purpose of consideration for the position of immigration judge with the United States Department of Justice, Executive Office for Immigration Review.

Copies of this authorization that show my signature are as valid as the original release signed by me.

28 MARCH 2016

Date

VANCE N. SPATH

Name (printed)

Signature

**6**

## IMMIGRATION JUDGE APPLICANT NOTICE STATEMENT: CLEARANCES

I understand that all applicants selected for an Immigration Judge position must undergo a thorough background investigation by the Federal Bureau of Investigation (FBI). I understand that this investigation will include, but is not limited to, name checks, fingerprint checks, tax record checks, and credit record checks. I also understand that I must submit annually a public financial disclosure statement and that I will be subject to periodic re-investigation by the FBI.

To the best of my knowledge, there is no information in my background such as tax delinquencies, poor credit record, convictions, or other matters that may be problematic during the course of this background investigation, except as explained in the space below (or on an attached sheet). Also, I do not have a drug, alcohol, or other substance abuse problem.

---

N/A

I do have an active TS/SCI security clearance.

---

I acknowledge receipt of this notice and attest to the accuracy of the statement above (and supplementary explanation to the statement above).

25 MARCH 2016
Date

VANCE SPATH.
Name (printed)

Signature

3

## IMMIGRATION JUDGE APPLICANT NOTICE STATEMENT: CONDITIONS OF WORK, TRANSFER, AND TRAVEL

**1.** *Travel.* Immigration Judges are required to travel as a condition of employment. This travel may be frequent or sporadic, depending on the circumstances and managerial need. Travel assignments can last for periods of two to three weeks at a time. An immigration court docket usually runs from early on Monday mornings to the close of business on Fridays and, consequently, travel may be required before or after normal working hours or on weekends.

**2.** *Transfer requests.* Once offered a position in a given location, an Immigration Judge must be prepared to stay at that location. There is no express or implied guarantee of future transfer, nor is the agency under any obligation to transfer an Immigration Judge to any other location at any time.

**3.** *Moving expenses.* If an Immigration Judge accepts a position at a location that requires him or her to relocate a personal residence, relocation expenses will not be provided or authorized. Similarly, relocation expenses to accommodate a voluntary transfer will not be provided or authorized.

**4.** *Detained locations.* Many immigration proceedings are conducted in penal institutions, detention centers, and other confinement settings. Immigration Judges may be permanently assigned or temporarily detailed to such a location.

**5.** *Specialized dockets.* Immigration Judges sometimes hold specialized dockets. Dockets in some locations might be exclusively asylum cases or handled through video-teleconferencing. Specialized dockets can last for an indefinite period of time.

**6.** *Temporary facilities.* Occasionally, adequate courtroom facilities are not completed and available at the time an Immigration Judge enters on duty. In that instance, the Immigration Judge may be called upon to conduct hearings in temporary courtroom space or temporary court facilities.

I certify that I have read this notice statement.

28 March 2016
Date

VANCE H. SPATH
Name (printed)

Signature

2

# IMMIGRATION JUDGE APPLICANT

# SUPPLEMENTAL INFORMATION CHECKLIST

Your submission must contain all of the following items:



☑ IMMIGRATION JUDGE APPLICANT NOTICE STATEMENT: CONDITIONS OF WORK, TRANSFER, AND TRAVEL - Form #2

☑ IMMIGRATION JUDGE APPLICANT NOTICE STATEMENT: CLEARANCES - Form # 3

☑ REFERENCES - Form #4

☑ EMPLOYMENT CONTACTS (last 7 years) - Form #5

☑ AUTHORIZATION FOR RELEASE OF INFORMATION - Form #6

☑ IMMIGRATION JUDGE VACANCY INTERVIEW LIST - Form #7

Your supplemental information should be mailed to:

Office of the Chief Immigration Judge
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2500
Falls Church, VA 22041

And it must be received by EOIR by: **April 8, 2016**

Do not scan, email or fax your submission. You may deliver your supplemental information on the day of your interview.

Questions can be directed to: (703) 305-1247

1



**U.S. Department of Justice**
Executive Office for Immigration Review
Office of the Chief Immigration Judge
*5107 Leesburg Pike, Suite 2500*
*Falls Church, Virginia 22041*

| | |
|---|---|
| To: | Immigration Judge Applicant |
| Re: | Supplemental Information Required |
| Date: | March 1, 2016 |

You have been scheduled to interview for an Immigration Judge position in response to our posted advertisement.

As part of the interview process, we request that you print, review and complete the materials enclosed in this attachment. Please note that this attachment contains a *"Supplemental Information Checklist,"* identifying each item that you must return to this office. Also please note that there is a deadline of **April 8, 2016** for submitting the additional materials, or the alternative, you may bring them with you to the interview. If you have questions about the materials or the deadline, please call the contact person on the enclosed checklist.

The enclosed forms may be typed or *legibly* handwritten. Do not submit the information in any other document or format. Do not scan, email or fax your submission.

Additionally, if you have had any change in employment or would like to supplement your application, please submit that information at this time.

Thank you for your interest and your prompt response.

To be filed on the left side of the OPF

## NEW EMPLOYEE IDENTITY PROOFING

In accordance with the Executive Office for Immigration Review,s (EOIR), Homeland Security Presidential Directive #12, Operations Plan, all new appointees must provide two forms of identification as part of the identity proofing and registration process, of which one must be a valid State or Federal government-issued picture identification. A list of acceptable identification is detailed in the Form I-9, OMB No. 1115-0136, Employment Eligibility Verification.

--------------------------------------------------------------------------

**Employee Information**

Name: _Vance  Spath_
(Please print full name)

Social Security Number: _____      DOB: _____

--------------------------------------------------------------------------

**Employer Review and Verification.** To be completed and signed by the hiring official at time of interview.

|                  | *Document 1*       | *Document 2*   |
|------------------|--------------------|----------------|
| Document Title:  | Drivers License    | Military ID    |
| Issuing Authority: | Texas            | Air Force      |

(b)(6)

Expiration Date (if any): _9|12|2018_      _7|14|2017_

--------------------------------------------------------------------------

**Certification** - I attest, under penalty of perjury, that I have examined the documents presented by the above-named employee and that the above-listed documents appear to be genuine and relate to the employee named.

_Felicia Wesley_
Hiring Official Name (Please Print)

_Receptionist_
Title

_Felicia Wesley_
Signature

_3|29|2016_
Date

**Re-Certification at time of Orientation** - must be performed by other than hiring official above

_____
Delegated Authority Name (Please Print)

_____
Title

_____
Signature

_____
Date

*Please provide the following information to ensure HSPD-12 PIV ID card sponsorship:*

*DOJ email address:* _____



## VANCE H. SPATH



19 November 2015

U. S. Department of Justice
Executive Office for Immigration Review
Human Resources Staff, Administration Division
ATTN: Mr. Josh Chapman
5107 Leesburg Pike, Suite 2300
Falls Church, Virginia  22041

Dear Mr. Chapman,

Attached please find my application materials for the vacancy announcement for an Immigration Judge position.  As the Chief Trial Judge of the Air Force, I have presided over bench and jury trial in cases ranging from capital murder, to violent assaults, to sexual assault.  I am currently presiding over two active capital cases.  I have five years of experience as a trial judge, and another 15 years of extensive experience as either a prosecutor or a criminal defense counsel.

In addition to my significant judicial and litigation experience, I have a significant degree of experience in managing high volume litigation, managing large offices of legal personnel, and handling complex civil litigation.

I would welcome the opportunity to discuss whether my judicial, litigation, and management background would be of interest to EOIR.

Sincerely,

SPATH.VANCE.HU
DSON.1013673990

Digitally signed by
SPATH.VANCE.HUDSON.1013673990
DN: c=US, o=U.S. Government, ou=DoD,
ou=PKI, ou=USAF,
cn=SPATH.VANCE.HUDSON.1013673990
Date: 2015.11.20 07:38:34 -05'00'

VANCE H. SPATH

## QUALITY RANKING FACTORS

I have addressed all five of the Quality Ranking Factors.

### 1. Ability to demonstrate the appropriate temperament to serve as a judge.

I have four years' experience as a trial judge. I have demonstrated the appropriate temperament to serve as a judge throughout my time on the bench.

As the Chief Trial Judge of the Air Force (AF), prior Chief Regional Military Judge for the AF's Pacific Judicial Region, and a Regional Trial Judge in the AF's Western Judicial Region, I have presided over more than 240 felony and misdemeanor trials throughout the world. This has included approximately 120 jury trials. The remainder of the trials were judge alone (bench) trials. Throughout these three assignments, my supervisors, who are either judges senior to me, or in my current job, The Judge Advocate General of the Air Force (the top ranking lawyer in the Air Force); have all recognized and commented on my temperament as a trial judge.

Specifically, my judicial performance evaluations include the following comments from them:

- #1/8 O-6 (Colonel) judges.
- Meticulously crafted rulings in 48 pretrial motions; 300+ pages of wisely written decisions protecting both Airmen and the Air Force
- Esteemed jurist in complete control of his courtroom.
- Conscientiously guarded accused's rights and the needs of the Air Force
- Won Major General William Suter Distinguished Judicial Service Award

Needless to say, every decision a trial judge makes requires the exercise of a high degree of discretion. Discretion meaning both a wise interpretation of the law and the actual language used in issuing the ruling. The language and conduct of any judge is always critical. A judge needs to have the perfectly balanced temperament, actual impartiality, and the appearance of complete impartiality. I have a significant record of demonstrating that temperament throughout my time as a judge. I believe all of the letters of recommendation provide significant information regarding my temperament. It is a record of which I am not only proud but diligently work to ensure continues.

During my time as a trial judge, I have presided over a capital murder trial, with significant media interest. The trial was held in Japan, ultimately resulting in a plea bargain, and judge alone sentencing proceeding. My conduct in that trial, in an international environment, required the demonstration of perfect judicial temperament. My supervisor, commenting specifically on that trial in my performance review stated, "Vance's leadership and wisdom protected trial process."

Currently, I am the presiding judge for both a current capital murder trial for an AF member and the military commissions proceedings for the alleged "Cole bombing" mastermind at Guantanamo Bay, Cuba. For both cases, I was handpicked by the top lawyer of the Air Force to be the trial judge. The case at Guantanamo Bay, Cuba, has significant media and federal

1

government interest, and it again requires the constant demonstration of the appropriate judicial temperament. Hopefully, the recommendation letter submitted by the attorney-advisor who works with me on that case provides the evidence of my temperament.

I have also presided over close to 100 sexual assault trials, and another 50+ trials involving other violent crimes. These highly emotional events require a trial judge who has the demeanor and temperament required to ensure the proceeding is conducted with the appropriate decorum, while at the same time maintaining control of the courtroom. Again, the recommendation letters submitted by people who have seen me in and around the courtroom show my long history of demonstrating the appropriate and required temperament of a judge.

**2. Knowledge of immigration laws and procedures**

I am familiar with the Immigration and Nationality Act, the policies and procedures of EOIR and the immigration courts, and the conduct of master calendar and individual calendar hearings before immigration judges. I have attended a few immigration hearings in the Alexandria, VA area.

Currently I am presiding over the military commission case involving the alleged mastermind behind the Cole bombing. While this does not necessarily relate to immigration law and procedures directly, it does require a mastery of complex international law and procedure. It also has required me to issue rulings related to a host of constitutional issues, including the application of the constitution at Guantanamo Bay, Cuba, and the protections an illegal combatant enjoys under US law.

Additionally, the Air Force has a small population of non-citizens on active duty. They are all first term Airmen. When they are brought to trial, the trial judge is required to engage in a colloquy with them regarding potential adverse impacts on their immigration status a conviction will have on them. I am responsible for ensuring the trial judges who work for me understand and provide this required advice, and I have to ensure I do as well in my courtroom.

3

**3. Substantial litigation experience, preferably in a high volume context.**

I have the following substantial litigation experience, including experience in a high-volume context:

Currently, I am the Chief Trial Judge of the Air Force (AF). I have been in this position for over one and a half years. In this position, I am responsible for docketing and detailing 26 trial judges to approximately 500 trials annually across the AF, the day to day management of the entire AF judiciary, the supervision of 26 trial judges and 4 support personnel, and the oversight of a travel budget in excess of $1M dollars annually. At the same time, I manage my own substantial trial docket; this typically includes approximately 15 - 20 active felony level trials, and currently, two active capital cases. I am currently the presiding trial judge for the Air Force's only current capital murder case, while at the same time presiding over the Cole bombing case at Guantanamo Bay, Cuba.

As a trial judge, I am continually required to make factual determinations, interpret the law and regulations, draft and issue rulings, instruct juries, determine the guilt or innocence of criminal defendants, and issue sentences for convicted criminal defendants. At the same time, I handle all of the administrative and management responsibilities required to lead the AF Trial Judiciary.

For two years I was the Chief Regional Trial Judge for the AF's Pacific Judicial Circuit. In that position, I was responsible for management, oversight, and ultimately the trial of all courts within that circuit. Although there is only one judge assigned to this circuit, it is the largest geographic circuit in the AF. During those two years, I presided over 86 felony and misdemeanor trials, issued 126 rulings comprised of over 720 pages of legal writing, reviewed 11,000 pages of records of trial, and traveled over 470,000 miles to try criminal cases.

For one year, I was a Regional Trial Judge for the Air Force's Western Judicial Circuit. In that year, I presided over 42 trials, reviewed 2,000 pages of records of trial, and issued 48 pretrial rulings which were comprised of 300 pages of written decisions.

For three years I was the Chief Prosecutor for the Eastern Circuit of the Air Force Judiciary. Geographically, this circuit covered 18 states and 26 Air Force bases. Each year, that circuit tried approximately 240 cases. I was responsible for supervising five senior prosecutors, personally trying 4-6 cases per month, and detailing the senior prosecutors to their trials. My responsibilities also included the training of all prosecutors, approximately 75, within that region.

**4. Experience handling complex legal issues.**

Throughout my career I have significant experience handling complex legal issues.

Hopefully, a few examples will demonstrate this ability.

As a trial judge, I am routinely confronted with complex and/or novel legal theories requiring that I become fully knowledgeable about those issues before rendering judgment. The cases over which I presided frequently involved factual scenarios that required application of Fourth and Fifth Amendment Constitutional analysis, an area of the law that is both complex and evolving. I have successfully dealt with complex legal issues – both on the bench and as a litigant – including psychology, psychiatry, false confessions and suggestibility, computer forensics, pathology, rape trauma syndrome, post-traumatic stress syndrome, and victimization, and have successfully applied that knowledge to my judicial rulings or my jury presentations.

As the presiding judge over the alleged Cole bombing mastermind at Guantanamo Bay, Cuba, I have had to demonstrate the ability to handle a complicated trial involving international terrorism. I have had to learn and master appropriate international law, the law of war, and the law related to military commissions. I have also had to review and comprehend over 450,000 pages of discovery, evidence, and motions. I have already issued over 300 rulings in the case, on issues ranging from residual hearsay, torture, interrogation, classified evidence, treatment of illegal noncombatants, and international agreements. The reference letter submitted by Fred Taylor, the attorney-advisor on this case, highlights the complexity of this case. A quote from that letter provides context: "In my opinion this is the second most complex capital case in U.S. history, only the ongoing five accused, joint, capital charged Military Commission case involving the alleged planners of the September 11, 2001 attack is more complicated."

As a contract trial attorney, I defended the Air Force against multi-million dollar claims filed by various defense contractors. These lawsuits involved complex legal issues related to procurement law and the intricate Defense Federal Acquisition Regulation Supplement. These claims against the Air Force were document intensive, sometimes in excess of 100,000 pages of evidence and submissions to the Armed Services Board of Contract Appeals. I had to analyze the issues presented, assimilate the thousands of pages of information, present evidence at an administrative hearing, and then write and file a lengthy post-hearing brief addressing the issues.

**5. Experience conducting administrative hearings.**

I have significant experience both in conducting administrative hearings and practicing before an administrative law judge.

During my career, I have conducted approximately 25 adversarial administrative hearings related to the removal of Air Force members, administratively, from the Air Force. These hearings required that I made findings of fact and conclusions of law; ruled on evidence admissibility; apply and interpret Air Force Instructions and statutes; document production and discovery; schedule hearings; and order production of witnesses.

When handling these hearings, understanding and applying the applicable administrative procedure was critical. Conducting these administrative hearings also required me to deal with administrative panels, panel selection, and demonstrate control of and provide decorum for the administrative hearing room.

I served as a contract trial attorney for two years. In this role, I represented the Air Force in all facets of complex civil litigation before the Armed Services Board of Contract Appeals (ASBCA). I was responsible for a caseload of between 15-20 multi-million dollar claims against the Air Force by contractors or vice versa. I prepared all submissions to the ASBCA including, pleadings, motions, and complex and lengthy post-trial briefs. In the two years as a contract trial attorney, I appeared before an administrative law judge on approximately 25 different occasions in either full blown ASBCA hearings or some form of alternative dispute resolution forum.

**6. Knowledge of judicial practices and procedures.**

As the Chief Trial Judge of the Air Force, former Chief Regional Military Judge, Regional Military Judge, chief and senior prosecutor and defense counsel, I have a strong knowledge of judicial practices and procedures. My criminal practice has been in the military which gives me an excellent understanding of the Federal Rules of Evidence, evidentiary foundation requirements, criminal procedure, and courtroom practice.

As a trial judge, I have presided over 240 felony- and misdemeanor-equivalent bench and jury trials throughout the world. In presiding over those trials, I have: conducted motion and evidentiary hearings; made findings of fact and conclusions of law; ruled on motions concerning admissibility of evidence, constitutionality of statutes, constitutionality of rules of evidence, document production and discovery, witness production and depositions, protective orders, trial scheduling, venue, continuances, pretrial confinement, and search and seizure; interpreted and applied the rules of evidence; conducted jury selection; instructed juries on the law; exercised control over the courtroom, to include control over the parties and the order and manner of the presentation of evidence; determined whether a defendant was guilty or not guilty; and imposed sentences on those found guilty.

In addition to both presiding over and trying criminal cases over the last 23 years, I have been hand-selected to teach at a variety of courses on a variety of topics related to judicial practice and procedure. I have taught at the Air Force JAG School as an adjunct faculty member over 100 different times, covering subject matter such as impeachment, closing argument, opening statement, voir dire, cross-examination, direct examination, application of the rules of evidence, trial procedure, view from the bench, and evidentiary foundations.

As a prosecutor and defense counsel, I tried over 300 cases. The vast majority of these were felony trials. I have tried over 100 sexual assault cases, a capital case, seven other murder or attempted murder cases, and approximately 11 complex fraud cases. A few comments from my supervisors will demonstrate my knowledge of judicial practices and procedures: "1/34 JAGs," One of AF's premier trial advocates," "Finest litigator I have ever served with," and "Tremendous combination of leadership/litigation skills—the best of any JAG observed in my 17+ year career!"



**DEPARTMENT OF VETERANS AFFAIRS**
Medical Center
508 Fulton Street
Durham, NC 27705
Tel. (919) 286-0411

5 November 2015

US Department of Justice Executive Office for Immigration Review
Office of Human Resources
5107 Leesburg Pike, Suite 2300
Falls Church, VA, 22041

Dr. Brian Hayes
Durham VAMC
508 Fulton Street
Rm B5003
Durham, NC, 27705-3897

Dear Selection Committee,

Before I tell you a bit about how I know Vance Spath, it is vital to first tell you that I cannot think of a better candidate for Immigration Judge than Vance. You will find no one with more integrity, a better attitude, and the perfect demeanor for any judicial position. I cannot speak highly enough about his character, devotion to duty, and dedication to excellence.

So that you can better assess my knowledge, let me give you a little background about me and my relationship with Vance. I am currently the Associate Chief of Staff for Ambulatory Care at the Veterans Affairs Durham Medical Center. Prior to that, I was on active duty in the Air Force, retiring as a Colonel in 2012. I met Vance in 2006, at F. E. Warren Air Force Base, WY. At the time, he was the head lawyer on the base leading a legal office of approximately 25 people, and I was the Commander of the Medical Group. Together, we provided the best legal and medical support for the country's largest nuclear intercontinental ballistic missile unit deployed to a tristate area covering over 9,600 square miles. From there, we both moved to Travis Air Force Base, California. He was a military Judge, and I ran the largest hospital in the Air Force, David Grant Medical Center. We have remained very close from the time of his move to Japan in 2009 until today.

His mastery in handling complex legal problems with poise, precision, and calm were on full display during our three years at F.E. Warren. Frankly, the entire base looked to him for his insightful advice and legal acumen. His reputation was second to none. All of my peers, senior to him at the time, marveled at his exceptional ability to lead his office and the quality and volume of work all who served with him were able to produce. I can honestly say during my 25 years of federal service both in the military and Veterans Affairs, I have never seen a finer attorney and leader.

When he transitioned to being a trial Judge, not surprisingly, he immediately built a reputation as a Judge who was completely poised, incredibly knowledgeable, and respectful of all who came before him. This included, unfortunately, people who worked for me – and they were impressed with his command of the courtroom. His reputation continues to this very day. I know many people who have been in his courtroom as advocates, and they share my opinion. He is known for his professionalism, legal intellect, and fairness.

In 2010, I had the honor of promoting Vance to Colonel. In collecting information for that ceremony, the number of positive accolades, mostly related to his character, demeanor, and integrity, were astounding. It showed me the breadth of his reputation, and the depth of his ability. You truly will not find a better candidate – especially for a judicial position. Vance is that very rare find of a senior Air Force Officer who is a world-class Judge and tremendous leader. He is that incredible blend of charisma, experience, ability, and character that make him the perfect choice for your Immigration Judge position.

Please do not hesitate to contact me via e mail at brian.hayes3@va.gov or on my office phone at (919) 286-0411 x 6715 with any questions.

Sincerely,

BRIAN P HAYES, MD, MPH
Colonel, USAF (retired)
Associate Chief of Staff, Ambulatory Care Durham VA Medical Center
Assistant Professor, Duke University School of Medicine



**OFFICE OF THE SECRETARY OF DEFENSE**
MILITARY COMMISSIONS TRIAL JUDICIARY
4800 Mark Center Drive, Suite 11F09-02
Alexandria, VA 22350-2100

Trial Judiciary                                                                 5 November 2015

U.S. Department of Justice
Executive Office for Immigration Review
Office of Human Resources
5107 Leesburg Pike, Suite 2300
Falls Church, VA, 22041

Dear Sir or Ma'am:

Colonel Vance Spath has my enthusiastic and unqualified endorsement for selection as an Immigration Judge. I truly believe his background and experience will make him one of your top candidates.

I had the honor and pleasure of serving as Colonel Spath's primary attorney-advisor or law clerk from April 2014 until August 2015 as he presided over four (4) sessions of the complex, capital charged Military Commission case of *United States vs. al-Nashiri*, the alleged mastermind behind the bombing of the USS Cole. I currently serve as the Staff Director for the Trial Judiciary charged with overseeing the 12 staff attorneys and 9 paralegals providing this advice and counsel to Colonel Spath and the other military judges. I joined the Trial Judiciary following a 26 year career as an Army Judge Advocate, retiring at the rank of Colonel in September 2013.

As Colonel Spath's primary attorney-advisor I observed him daily, in and out of the courtroom, during each session of this trial at U.S. Naval Station, Guantanamo Bay, Cuba. We also worked closely together in our offices in Alexandria, Virginia reviewing classified discovery, crafting rulings and orders, and planning how he would proceed during those sessions. It is important to note the courtroom is a Sensitive Compartmented Information Facility (SCIF) located outside the continental United States, the information presented can be classified at the highest levels and all support and almost any witness required must travel to Guantanamo Bay, Cuba. In my opinion this is the second most complex capital case in U.S. history, only the on-going five (5) accused, joint, capital charged Military Commission case involving the alleged planners of the September 11, 2001 attack is more complicated.

During the sessions over which Colonel Spath presided, he consistently treated the counsel, some being uniformed Judge Advocates, some being Department of Justice prosecutors and the civilian learned counsel; court personnel; guard force personnel; technical staff; witnesses; and, the Accused with the upmost dignity and respect. He

runs an efficient and effective courtroom - he is in charge of his courtroom. Yet counsel know they have every opportunity to present their positions to the fullest, and he will rule in a fair and just manner. He is highly organized, but not rigid in his managing of each session. He moved the case forward toward trial in an orderly manner, and maintained the highest professional and judicial decorum in the face of the most challenging of logistical or administrative delays caused by entities in and out of his sphere of judicial influence.

Vance Spath is a man of honor and integrity. He is an exceptional career Air Force officer and jurist. The attributes which made him a success in the military and in his presiding over this Military Commission case will make him a positive addition to the Executive Office for Immigration Review as an Immigration Judge.

If additional information is needed, feel free to contact me at either (b)(6)                or at (b)(6)

Fred P. Taylor
Staff Director



**DEPARTMENT OF THE AIR FORCE**
HEADQUARTERS AIR FORCE LEGAL OPERATIONS AGENCY (HQ AFLOA)

MEMORANDUM FOR ALL HIRING AUTHORITIES

FROM: AFLOA/JAJ
1500 W. Perimeter Road, Suite 1310
Joint Base Andrews, MD 20762

SUBJECT: Letter of Reference – Colonel Vance H. Spath

I have known and worked with Colonel Vance Spath in a variety of capacities since 1992. He is an extraordinary jurist, a bold and decisive leader, and the premier judge advocate in the Air Force military justice arena. I consider it an extraordinary privilege and honor to write this reference letter on his behalf.

I entered the Air Force with a direct commission in 1991 and have served as an active duty judge advocate since then. I have served in a variety of assignments including prosecution and defense, multiple tours at headquarters levels including the Pentagon, as well as two assignments as the lead attorney at Air Force base legal offices. I am currently serving as the Director of the Air Force Judiciary. In this capacity I oversee approximately 300 lawyers, paralegals, and support personnel in five separate divisions encompassing military justice policy, trial and appellate government and defense counsel, and probation and clemency activities.

At our first assignment, Vance and I worked together as assistant staff judge advocates in the base legal office at Ramstein Air Base, Germany, and then tried cases against each other--I as defense counsel and he as prosecutor. Our follow on assignments from Ramstein found us both stationed in San Antonio, Texas, again with me as defense counsel and Vance as prosecutor. Over the course of the four years we overlapped in these adversarial roles, I represented more than 100 clients where he was either the opposing counsel or the advisor to command. Our assignments overlapped again when I was serving as the chief of military justice at Air Force Space Command and he was the deputy staff judge advocate at Schriever Air Force base, one of the eight subordinate wings. In this capacity I had the opportunity to review all of the military justice cases being handled at all eight wings and to discuss the effectiveness of the justice programs at each wing with the senior command judge advocates.

When we both moved on to run our own legal offices, we remained in frequent contact as we discussed the challenges of handling the civil and justice portfolios associated with running what is essentially a small city with a unique military mission--his mission being nuclear weapons and including several extraordinary situations related to international scrutiny of high visibility issues. As I moved to my second legal office, Vance moved to the bench as a trial judge. In that capacity he tried several cases at my base and I had the opportunity to observe him in the courtroom in this far different capacity where he set the standard for professional control of the courtroom. Finally, our careers brought us to the Washington D.C. area where we have had frequent connection through a variety of jobs. Again, I had the opportunity to observe Vance's performance in some of the most challenging legal jobs in the Air Force, to interact with

him in those jobs, and to witness the culmination of his years of experience into a reputation of excellence across the Air Force Judge Advocate General's Corps.

My opinion of Vance's qualification to serve as an Immigration Judge is founded in the context of the unique interactions described above. Not once over the span of this time, regardless of whether our positions were adversarial, peer, or at different positions in the military hierarchy, have I had any question about his integrity. I have had the privilege to see an extraordinary young lawyer evolve over two decades into an absolute expert not just in military justice, but in the ability to lead complex organizations through the most challenging circumstances. In the court room, in the commander's office, and around the conference table, he has earned respect with his unfailing integrity and utmost dedication to the mission. He is relied upon by the most senior judge advocates in the Air Force for his insight and ability to handle the most complex issues deftly and with absolute professionalism.

It is a privilege to provide this letter of reference for Colonel Spath. If you have any additional questions, please contact me at (b)(6)                                          or via email at (b)(6)

CHARLES C. KILLION, Colonel, USAF
Director, United States Air Force Judiciary



**DEPARTMENT OF THE AIR FORCE**
WASHINGTON, DC

Office Of The
General Counsel

11 Nov 15

Julia J. Muedeking
Associate General Counsel
1740 Air Force Pentagon, Suite 4C756
Washington, D.C. 20330-1740

1. I am pleased to enthusiastically recommend Vance Spath to serve as an Immigration Judge. My recommendation is based on my personal knowledge of Vance's dedication to the highest standards of jurisprudence, his commitment to legal excellence, and his outstanding character. Vance would be a welcome addition to any office and will undoubtedly excel in his post-Air Force career.

2. I had the distinct pleasure of working for Vance as one of his newer attorneys when he served as the Staff Judge Advocate at F.E. Warren Air Force Base in Cheyenne, Wyoming in 2006. During that time I witnessed not only his leadership and practice of law first hand, but I had the honor of being mentored by him then and for the past 9 years. Vance taught me how to prepare cases for trial, how to dissect complex legal issues, how to provide candid advice to a variety of clients, but more importantly he taught me the significance of equity and fairness. Vance reviewed every military justice case personally and although his superiors were sometimes more concerned with media or political reactions, I watched Vance weigh the needs of the accused, the victims, and the justice system before giving his advice or rendering a decision; even if the result was not always thought to be the most popular by senior leaders. Vance demonstrated not only a commitment to public service, but to the integrity of the law.

3. Vance is someone who listens first, then thoroughly and objectively considers all facts and legal issues before reaching a conclusion. He is also one of the few lawyers I have met and worked with who is willing to reconsider a prior opinion if the circumstances warrant. He knows getting the right answer is more important than personally being right. Although Vance is extremely passionate about the practice of law, he conducts himself in a professional manner with a temperament that always seems to fit the given situation. Whether he is litigating a case, presiding as a judge, or advising the wing commander about a contract issue, Vance provides spot on legal analysis that is second to none.

4. Vance has a keen intellect and sound reasoning, but more importantly he is respected by his colleagues, his peers, his supervisors, and his subordinates. He is a seasoned leader with the highest caliber of professional skills and legal instincts. Although I no longer have the honor of working for Vance, I have personally watched his judicial career from the Headquarters level. Vance has not only excelled, he has thrived at his current high demand, pressure packed job.

Despite the demands on his time, Vance continues to provide me sage advice and counsel as I proceed through my legal career. Vance's extensive experience in the Air Force as a lawyer has prepared him to effectively serve as an Immigration Judge. He has earned the respect of all he has served with and can be expected to act in a manner above reproach, no matter what the circumstances. I do not hesitate to say that given the opportunity I would be honored to work for Vance again or have him work with me in the future. If you have the chance to hire him, you should take it. You will not regret that decision.

5. Please do not hesitate to contact me should you need additional information. I can be reached at (b)(6) . Thank you in advance of your consideration of this letter.

Julia J. Muedeking
Associate General Counsel
(Intelligence, International and Military Affairs)



**DEPARTMENT OF THE AIR FORCE**
**AIR FORCE COURT OF CRIMINAL APPEALS**
WASHINGTON, D.C.

12 Nov 15

United States Department of Justice
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2300
Falls Church, VA 22041

Colonel Mark L. Allred
USAF/JAH
1500 West Perimeter Road, Suite 1900
Joint Base Andrews Naval Air Facility (JBNAF), MD 20762

Dear Ma'am/Sir,

I cannot imagine how you could find a finer candidate for an Immigration Judge than Colonel Vance Spath. I know his reputation, his work ethic, his career history, and his ability – and he would be perfect for the job.

I served as a criminal trial judge for nine years, culminating as the Chief Trial Judge of the Air Force from 2010-2014. In 2014, I was selected Chief Judge of the Air Force Court of Criminal Appeals, a position I hold today. I strongly recommended to my boss, The Judge Advocate General of the Air Force, that Vance take over as the 13th Chief Trial Judge of the Air Force. My boss and I agreed there could not possibly have been a better candidate. Vance was selected and has served tremendously.

While I was the Chief Trial Judge, Vance worked for me. He served as one of my Chief Regional Judges. His performance was absolutely second to none. During the two years that I supervised him I considered him the very best of more than 20 trial judges. As Chief Appellate Judge, I continue to oversee his work. His command of the courtroom is superb. His mastery of the law is evident in his every ruling. His demeanor is perfect – exactly what is hoped for in a trial judge. He treats all who appear before him and work around him with the utmost dignity and respect. He follows the law – zealously. He teaches, trains, and mentors counsel at courses and events across the Air Force, and the reviews he receives from this service are always exceptional.

I truly cannot conceive of anyone better suited for a position as an Immigration Judge. In writing this, I know you are looking for comments on integrity, attitude, and demeanor. Hopefully, the above give you some idea how highly I think of Vance. He has the attributes you seek – in abundance. I would never have recommended him to become the Chief Trial Judge of the Air Force if I thought otherwise. He has excelled as the Chief, and, frankly, that is no surprise given his exceptional career. He will do great things for your agency, and you will not be disappointed in the least if you choose to hire him.

*Global Power For America*

Please feel free to contact me (b)(6) ) with any questions.

Sincerely,

MARK L. ALLRED, Colonel, USAF
Chief Appellate Military Judge

12 November 2015

Dear Sir/Ma'am,

It is with great pleasure and enthusiasm that I am writing to recommend Vance Spath for an Immigration Judge position.

I have known Vance since 2004 when we served together as Air Force Circuit Trial Counsel and were responsible for prosecuting the Air Force's most serious and complex cases. Since then, I have remained in constant contact with him and observed him both as a military judge and in numerous professional and personal settings. He is clearly the leading courtroom expert in the Air Force who after hundreds of trials combines superb legal skill, masterful knowledge of case law and court procedure, and unmatched judicial temperament. As a prosecutor he was detailed to our most challenging cases, to include the first capital murder case tried in the Air Force in nearly 20 years, and as a military judge he has again been detailed to our most challenging cases, to include the military commissions at Guantanamo Bay. Suffice to say, if there has been a significant trial in the Air Force since 2000, Vance has either been intimately involved in the proceedings or has been sought out by the various participants to consult on the case.

In addition, Vance is a true professional. He has improved the practice of law, instituting a number of innovative practices both as a Chief Circuit Trial Counsel and in his current position as the Chief Trial Judge of the Air Force. Moreover, in these leadership positions he has set the standard of excellence through his own personal conduct. Vance has been given these important and sensitive positions throughout his career because he possesses unquestionable integrity—he has gained the respect and trust of superiors, peers, subordinates as well as those counsel he once litigated against and who now practice in front of him.

I have served as an active duty Air Force attorney for over 19 years and have interacted with hundreds of military, government and civilian attorneys as well as dozens of judges during my various assignments that include defense and trial counsel positions, base office leadership and combatant command staff. Without question, Vance is the finest trial counsel and military judge I have ever seen. As important, he is one of the finest officers I have served with during my career who has consistently demonstrated tremendous dedication to service, unsurpassed commitment to excellence and unwavering integrity. In sum, he will make an outstanding Immigration Judge.

If I can be of any further assistance in support of Vance's application I can be reached at either (b)(6)

Sincerely,

Patrick W. Franzese

PATRICK W. FRANZESE, Colonel, USAF



40 Paterson Street
New Brunswick, NJ 08901
Tel: (732) 545-4717 Fax: (732) 545-4579
www.hoaglandlongo.com

Robert G. Kenny
Partner
rkenny@hoaglandlongo.com

**HOAGLAND
LONGO
MORAN, DUNST
& DOUKAS, LLP**

**ATTORNEYS at LAW**

November 13, 2015

United States Department of Justice
Executive Office for Immigration Review
Office of Human Resources
5107 Leesburg Pike
Suite 2300
Falls Church, VA 22041

      RE:    Vance Spath

Dear Sir/Madam:

      Please accept my highest recommendation for Vance Spath to serve as an Immigration Judge. Vance Spath is an exceptional candidate for this position.

      I am a senior partner of an eighty eight (88) attorney law firm, and a member of that law firm's executive committee. Additionally, I have served a Commissioned Officer in the United States Air Force for over thirty seven (37) years, until my retirement in July 2015. At the time I retired, I was a Major General in the United States Air Force Reserves serving as the principal reserve advisor to the Judge Advocate General of the United States Air Force. I served in a variety of assignments during my time in the Air Force, and in that time, I have known Vance Spath for well over twenty (20) years. In both my civilian position, and my Air Force position, it has been my responsibility to identify not only outstanding performers, but those who go well beyond performance and demonstrate the potential for superior leadership. Vance Spath is the epitome of such a person. Vance Spath has demonstrated all of these qualities at the highest level. He has exhibited the fine character and exceptional ability that is expected and required of our senior leaders.

      Vance Spath possess the highest integrity and is an ideal candidate for such a judicial position. I was personally involved in a decision to make him the Chief Trial Judge of the United States Air Force. Only a person with significant experience, impeccable character, and strategic leadership ability would be considered for such a position. Vance Spath was chosen for it. No better choice could be made. Vance Spath has impacted the Air Force trial judiciary innumerable positive ways during his time as the Chief Trial Judge. He is a true example of a Judge who takes responsibility, not only as a role model, but as the example of judicial integrity.

      Vance Spath possess a positive attitude which is unsurpassed. He is intelligent, and dedicated. He will undoubtedly bring these qualities to the position of Immigration Judge because he has done this throughout his Air Force career. In every position, each of which have been ones of significant responsibility, from Defense Counsel to Prosecutor, to Contract Litigator

New Brunswick, NJ  •  New York, NY  •  Buffalo, NY  •  Philadelphia, PA  •  Clinton, NJ  •  Wall, NJ  •  Hammonton, NJ

to Judge, Vance has brought a belief that he can positively affect the organization for which he works. His beliefs were well founded as he was able to positively affect the development of the Air Force members for which he served, and bring long standing positive and influential changes during each of his assignments throughout his remarkable career.

Additionally, his demeanor has demonstrated that he is the quintessential Trial Judge. Every person with whom he had contact was treated with dignity and respect. He was able to always maintain the decorum of his Courtroom in a manner that provides participants real confidence in their results. He served as the perfect Judge, and now as the perfect Chief Judge. I am aware not only of his reputation, but I have personal knowledge of these facts over the many years, which helped to lead me to select him as the Air Force representative to the Military Commissions at Guantanamo Bay, Cuba. He was then detailed by the Chief Judge of the Commissions to the case of the alleged Cole bombing mastermind. He has been a shining example for the Air Force and the United States during his time, presiding over this high profile, complex, international terrorist trial. There is no doubt that I made the right choice!

Please accept my highest recommendation for Vance Spath to serve as an Immigration Judge. I know Vance, I know his record, I know his reputation, and I know that he would be the perfect choice. He is the "best of the best." You will not find a better or more qualified candidate for the position.

Please do not hesitate to contact me at 732-545-4717 and/or rkenny@hoaglandlongo.com with any questions you may have.

Respectfully submitted,

Robert G. Kenny

## MILITARY COMMISSIONS TRIAL JUDICIARY
## GUANTANAMO BAY, CUBA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ABD AL RAHIM HUSSAYN**<br>**MUHAMMAD AL NASHIRI** | **AE 332U**<br><br>**ORDER**<br><br>**DEFENSE MOTION TO DISMISS**<br>**FOR UNLAWFUL INFLUENCE AND**<br>**DENIAL OF DUE PROCESS FOR**<br>**FAILURE TO PROVIDE AN**<br>**INDEPENDENT JUDICIARY**<br><br>**4 MARCH 2014** |

1. The Accused is charged with multiple offenses in violation of the Military Commissions Act of 2009, 10 U.S.C. §§ 948 *et seq.*, Pub. L. 111-84, 123 Stat. 2574 (Oct. 28, 2009) (hereafter MCA of 2009). He was arraigned on 9 November 2011.

2. The Defense filed AE 332 alleging the Convening Authority, Mr. Vaughn Ary, unlawfully influenced the military judges of the military commission trial judiciary in violation of 10 U.S.C. § 948b by having the Deputy Secretary of Defense (DEPSECDEF), the Honorable Robert O. Work, change paragraph 6-2 of the Regulation for Trial by Military Commission (April 2011 Edition) (R.T.M.C.) to "make military commissions the exclusive duty of the military judges assigned to the trial judiciary and, moreover, directing that they 'shall be issued assignment orders for duty at the venue where the military commissions are to be convened." (AE 332 at 3-4). The Defense requested "the charges and specifications be dismissed with prejudice. In the alternative, the defense requests abatement of proceedings until such time as the Department of Defense establishes an independent trial judiciary for the military commissions as required by the Military Commissions Act of 2009." (AE 332 at 1). The Prosecution response (AE 332A) argued Change 1 to the R.T.M.C. is not an example of unlawful influence. The Defense reply

1

continued to argue for dismissal of charges. Testimony was heard and the motion was argued between 23 and 27 February 2015.[1]

3. FACTS:

a. On 10 July 2014, COL James Pohl, USA, Chief Judge, Military Commissions Trial Judiciary, detailed Col Vance Spath, USAF, Chief Trial Judge of the USAF, as the military judge in the case of *United States v. Abd Al Rahim Hussayn Muhammad Al Nashiri*.[2]

b. On or about 1 October 2014, Mr. Vaughn A. Ary was appointed as the Convening Authority for the Military Commissions (CA).[3] He also serves as the Director of the Office of the Convening Authority (Director, OCA).[4]

c. Mr. Ary believed his dual role of designated CA and Director, OCA gave him the authority to and required him to both resource the trial judiciary and recommend changes in the military commission process to DEPSECDEF for implementation. In this instance the

---

[1] *See* Unofficial/Unauthenticated Transcripts of the al Nashiri (2) Motions Hearing Dated:
23 February 2015 from 1:02 P.M. to 2:52 P.M. pp 5384-5458 (Military Judge Disclosures and Argument on AE 332C, AE 332K, AE 332E and AE 332G);
23 February 2015 from 4:01 P.M. to 4:14 P.M. pp 5459 – 68 (Decision on AE 332C, AE 332K, and AE 332E);
24 February 2015 from 1:32 P.M. to 2:36 P.M. pp 5469 – 5511 (Additional Argument on AE 332G);
25 February 2015 from 9:03 A.M. to 10:40 A.M. pp 5512 – 65 (Testimony Mr. Ary);
25 February 2015 from 11:04 A.M. to 11:13 A.M. pp 5566 – 73 (Testimony Mr. Ary);
25 February 2015 from 12:32 P.M. to 2:13 P.M. pp 5574 – 5643 (Testimony Mr. Ary);
25 February 2015 from 2:24 P.M. to 3:54 P.M. pp 5644 – 5700 (Testimony Mr. Ary);
25 February 2015 from 4:02 P.M. to 4:43 P.M. pp 5701 – 5732 (Testimony Mr. Little);
27 February 2015 from 08:31 A.M. to 08:55 A.M. pp 5733 – 5749 (Argument on Production of Service TJAGs (AE 332G));
27 February 2015 from 11:31 A.M. to 12:02 P.M. pp 5750 – 68 (Argument on Mootness of AE 332 and Decision on Production of Service TJAGs);
27 February 2015 from 3:00 P.M. to 4:13 P.M. pp 5769 – 5824 (Argument on AE 332); and,
27 February 2015 from 4:24 P.M. to 5:39 P.M. pp 5825 – 5872 (Argument on AE 332).
[2] AE 302, Detailing Military Judge Memorandum, dated 10 July 2014.
[3] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 2:24 P.M. to 3:54 P.M. at 5655.
[4] *Id.*

2

recommended changes to the R.T.M.C. (i.e., Change 1)[5] impacted the assignment location and "exclusivity of duty" of the currently detailed commission trial judges.[6]

d. Soon after being appointed as the Convening Authority, Mr. Ary did an assessment of the adequacy of resources in the Office of the Chief Prosecutor, Office of the Chief Defense Counsel, and Office of the Trial Judiciary.[7]

e. During the assessment, Mr. Ary became concerned with the pace of litigation in commission cases.[8]

f. As a result of his assessment Mr. Ary concluded the pace of litigation in commission cases was too slow. He also identified resourcing issues.[9]

g. Concerned with the pace of litigation and to improve the trial judges' availability for hearings, Mr. Ary formulated the concept of both making the trial of commission cases the judges' fulltime duty and moving them to Guantanamo Bay Naval Station (GTMO). This concept ultimately became Change 1.[10] (Hereinafter "Change 1" refers to the proposed change to paragraph 6-2 of the 2011 Regulation for Trial by Military Commission (R.T.M.C.))

h. The final proposed (and signed) change to the R.T.M.C. consisted of two paragraphs. Paragraph 6-2a. states: "The Chief Trial Judge will detail a military judge from the Military Commissions Trial Judiciary when charges are referred. Once detailed, military commissions shall be the military judge's exclusive judicial duty until adjournment, final disposition of charges, recusal, replacement…or reassignment by the appropriate Judge Advocate General. A

---

[5] Attachment A, AE 332 and TAB B of Attachment B, AE 332A.
[6] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 9:03 A.M. to 10:40 A.M. at p 5548 and Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 2:24 P.M. to 3:54 P.M. at 5655.
[7] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 2:24 P.M. to 3:54 P.M. and from 4:02 P.M. to 4:43 P.M. at pp 5660-5672.
[8] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 9:03 A.M. to 10:40 A.M. at pp 5526-37;
[9] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 9:03 A.M. to 10:40 A.M. at pp 5526-27, 5529, and 5554 and Tab B of Attachment B AE 332A.
[10] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 9:03 A.M. to 10:40 A.M. at pp 5534-5535, 5562, and from 11:04 A.M. to 11:13 A.M at p. 5575.

3

detailed military judge shall be issued assignment orders for duty at the venue where the military commissions are to be convened." Paragraph 6-2b. states: "A detailed military judge may perform such other duties as are assigned by or with the approval of the appropriate Judge Advocate General or his/her designee, provided that such other duties do not conflict with judicial duties as a detailed military judge for military commissions."[11] The pre-Change 1 version of paragraph 6-2 of the 2011 R.T.M.C. does not make military commission trials the "exclusive judicial duty" of detailed military judges and does not require the issuance of assignment orders to the detailed military judges to "the venue where the military commissions are to be convened." [12]

i. Mr. Ary conferred with the legal advisors assigned to his office concerning Change 1.[13]

j. Mr. Ary did not staff Change 1 with The Judge Advocate Generals (TJAGs) of the various services.[14]

k. Mr. Ary did not staff Change 1 or discuss Change 1 with the Chief Trial Judge of the Military Commissions.[15]

l. Mr. Ary knew that Change 1, if approved and signed by DEPSECDEF, might impact currently detailed and assigned commission judges. By impact he understood they might not continue as currently detailed and assigned judges in a case they were currently working. He recognized there might also be an impact on the pool of commission judges nominated by the service TJAGs.[16]

---

[11] Attachment C, AE 332A.
[12] TAB A of Attachment B, AE 332A.
[13] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 9:03 A.M. to 10:40 A.M.at pp 5562; and from 12:32 P.M. to 2:13 P.M. at pp 5581-5587, 5612-5618, and 5620-5623.
[14] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 12:32 P.M. to 2:13 P.M at pp 5580, 5586, 5612, and from 2:24 P.M. to 3:54 P.M. at pp 5649, and 5676-5678.
[15] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 12:32 P.M. to 2:13 P.M at p 5612.
[16] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 12:32 P.M. to 2:13 P.M at pp 5580, 5583, 5689; and, Attachment E, AE 332A.

4

m. The only coordination of Change 1 outside the Office of the Convening Authority by Mr. Ary was with the DOD General Counsel's office (DOD OGC), specifically, Mr. Stephen Preston, the DOD General Counsel.[17]

n. Sometime prior to 21 November 2014, Mr. Ary directed Ms. Donna Wilkins, Director, Office of Court Administration, Office Military Commission, to gather information on "days on the record" for FY 2013 and 2014 for each of the currently referred commission cases. The reports attached to Ms. Wilkins' email to Mr. Ary were organized by individual case (and judge). When this information was ultimately submitted to DEPSECDEF, it was consolidated with no reference to individual judges. The information was used to support the proposed Change 1.[18]

o. On 21 November 14, Ms. Wilkins, emailed Mr. Ary. The email subject was "Hours and Numbers on the Record." The attachment was "On the Record 2014.xlsx." The email stated, "Sir[,] Per your request, please see the attached document. Sorry it took so long to get this information to you. It took longer than I had anticipated."[19]

p. The spreadsheet entitled "On the Record 2014.xlsx." contains the reports contained in AE 332O, Product 112 and individually marked with Bates Numbers 10015-00127556 – 10015-00127559. The reports are broken out by individual case and individual judge. The spreadsheet provides information on hours of audio, page count for the transcript, and days on the record.

q. On 24 November 2014, SFC Christopher Blizard, Office of Court Administration, followed up on the above reports, by email, stating, "Ms. Wilkins asked me to adjust the numbers on the chart that she sent you this past Friday…" These updates were to account for

---

[17] Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 2:24 P.M. to 3:54 P.M. at pp 5688, and Attachment A, AE 332.
[18] AE 332O, Product 112, Bates Numbers 10015-00127556 – 10015-00127559; and, TAB B of Attachment B, AE 332A.
[19] AE 332O, Product 112, Bates Number 10015-00127554.

5

classified Military Commission Rule of Evidence (MCRE) 505(h) sessions held in pending commission cases.[20]

r. On 9 December 2014, Mr. Ary personally approved an Action Memo that was forwarded to DEPSECDEF as evidenced by his initials.[21]

s. The Action Memo states in part, "I believe the status quo does not support the pace of litigation necessary to bring these cases to a just conclusion. I believe we must realign resources and reposition the trial judiciary to make it a full-time, on-site duty for the judges assigned to military commissions." It also states, "I believe these actions will accelerate the pace of litigation…"[22]

t. Finally, Mr. Ary recommended what ultimately became Change 1 to the R.T.M.C.[23]

u. On 9 December 2014, Mr. Ary personally approved an Executive Summary that was forwarded to DEPSECDEF.[24]

v. The Executive Summary starts with a conclusion of his assessment of the commission process and includes the statement, "I am convinced we must take action to realign resources and better position the commissions to achieve the efficient, fair, and just administration of ongoing and future military commissions."[25]

w. The Executive Summary then details the days each commission was on the record in FY 14 and FY 13 along with actual hours on the record for each commission. The paragraph includes the statements, "in other words, during FY 14, the commissions as a whole averaged less than three days of hearings each month and an average of less than three and a half hours on

---

[20] AE 332O, Product 112, Bates Number 10015-00127565.
[21] Attachment A, AE 332 and Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 12:32 P.M. to 2:13 P.M. at pp 5625-5626.
[22] Attachment A, AE 332.
[23] *Id.*
[24] TAB B of Attachment B, AE 332A.
[25] *Id.*

6

the record for the days on which hearing[s] were held…An analysis of the FY13 hearing data yields a similar pattern." Additionally, it states, "If you approve my recommendation (which includes Change 1], I believe the pace of litigation will accelerate."[26]

    x. The Executive Summary includes the recommendation that ultimately became Change 1 to the RTMC.[27]

    y. On 7 January 2015, the DEPSECDEF approved the recommendation of Mr. Ary as to Change 1 to the R.T.M.C.[28]

    z. On 26 February 2015, the DEPSECDEF rescinded Change 1 to the R.T.M.C. in response to the ruling on a similar motion in *United States v. Khalid Shaikh Mohammad, et al.*[29]

    aa. Mr. Ary provided credible testimony to the Commission.

4. DETAILING OF MILITARY JUDGES.

    a. A military judge presides over each military commission case. The assignment of a military judge to a commission case is the act of detailing. 10 U.S.C. §948j(a) states, "A military judge shall be detailed to each military commission under this chapter. The Secretary of Defense shall prescribe regulations providing for the manner in which military judges are so detailed to military commissions." 10 U.S.C. §948j(b) defines who is eligible to be a military judge - those commissioned officers certified by TJAG of their respective service who are qualified and certified under 10 USC §826 (Article 26 Uniformed Code of Military Justice (UCMJ)) to be a "military judge of a general court-martial."

---

[26] *Id.*
[27] *Id.*
[28] Attachment A, AE 332.
[29] *See* AE 332S, DEPSECDEF Action Memo, Rescission of Change 1 to the Regulation for Trial by Military Commissions, dated 26 February 2015 for both the Ruling in *United States v. Khalid Shaikh Mohammad, et al.*(AE 343C), and for the DEPSECDEF action.

7

b. 10 U.S.C. §948j(e) requires consultation with the service TJAG should a third party desire to assign other duties, beyond presiding over a military commission to commission military judges. "A commissioned officer who is certified to be qualified for duty as a military judge of a military commission under this chapter may perform such other duties as are assigned to such officer *by or with the approval of the Judge Advocate General* of the armed force of which such officer is a member..."(emphasis added)

c. 10 U.S.C. §948j(f) makes it clear, the Convening Authority cannot formally or informally comment on how commission judges preside over the cases to which they are detailed. "The convening authority of a military commission may not prepare or review any report concerning the effectiveness, fitness, or efficiency of a military judge detailed to the military commission which relates to such judge's performance of duty as a military judge on the military commission." *See also United States v. Mabe*, 33 M.J. 200 (C.M.A. 1991).

d. The Secretary of Defense, exercising the authority given to him by Congress in 10 U.S.C. §948j(a), provided substance to the statutory requirements of 10 U.S.C. §948j (b), (e), and (f) in promulgating Rules for Military Commissions (R.M.C.) 503 and 505. The Secretary or his designee selects a Chief Trial Judge from the pool of military judges certified by the service TJAGs as competent to be detailed to a commission case. R.M.C. 503(b)(2) states, " The Secretary of Defense or designee shall select a military judge from the pool described in subsection (1) to serve as the Chief Trial Judge for the Military Commissions." R.M.C. 503(b)(1) states, "A military judge shall be detailed to preside over each military commission by the Chief Trial Judge from a pool of certified military judges nominated for that purpose by The Judge Advocate General of each of the military departments." It is within the discretion of the Chief Trial Judge to detail and remove trial judges from commission cases. "Before the military

8

commission is assembled, the military judge may be changed by the Chief Trial Judge, without

cause shown on the record." (R.M.C. 505(e)). The R.M.C. does not bestow this detailing or

removal authority to the Convening Authority, the DEPSECDEF, or the service TJAGs.

    e. The United States Supreme Court in *United States v. Weiss*, 510 U.S. 163 (1994),

recognized the importance of the statutory scheme designed to protect the independence of

Military Judges by shielding them from the authority of the convening officer. The Court held:

> Article 26 places military judges under the authority of the appropriate Judge
> Advocate General rather than under the authority of the convening officer. 10
> U.S.C. §826. Rather than exacerbating the alleged problems relating to judicial
> independence, as petitioners suggest, we believe this structure helps protect that
> independence. Like all military officers, Congress made military judges
> accountable to a superior officer for the performance of their duties. By placing
> judges under the control of Judge Advocates General, who have no interest in the
> outcome of a particular court-martial, we believe Congress has achieved an
> acceptable balance between independence and accountability.

*Weiss*, 510 U.S. at 180.

    f. The Chief Trial Judge "is responsible for the supervision and administration of the

Military Commissions Trial Judiciary." The Chief Trial Judge is the Secretary's sole designee for

these matters. *See* Regulation for Trial by Military Commission (2011 Edition) (R.T.M.C.) 1-

3(b). The Convening Authority, as Director, Office of the Convening Authority has the

responsibility to "[e]nsure that the Trial Judiciary is properly staffed with a Chief Clerk of the

Trial Judiciary…and any additional staff necessary to perform the various support roles and

duties necessary to maintain the proper and efficient administration of the Trial Judiciary…,

assign other personnel necessary (e.g., security personnel, bailiffs, and clerks) to facilitate

military commissions[.]" R.T.M.C. 2-3(a)(6). The Convening Authority's sole interaction with

the Trial Judiciary is as a provider of resources, not a creator of requirements, not a supervisor of

trial judges or staff, and most certainly not an entity to set the pace of litigation.

9

g. Consistent with the 2009 MCA provisions and the R.M.C. provisions discussed above, the R.T.M.C. at paragraph 6-2 clarifies that in the exercise of his supervisory function, "the Chief Trial Judge will detail a military judge from the Military Commissions Trial Judiciary for each military commission trial." Additionally, "Military judges in the Military Commission Trial Judiciary may be detailed to other duties by the Chief Trial Judges of their respective services, provided that such other duties do not conflict with the primary duty as military judges for military commissions trials." Again the Convening Authority has no authority to assign duties to a military judge detailed to a military commission case.

5. UNLAWFUL INFLUENCE.

a. The 2009 MCA prohibits actual or attempted Unlawful Influence (UI).[30] The Act prohibits such influence regardless of source and thus provides greater protection than the Uniform Code of Military Justice (UCMJ)[31] prohibition of Unlawful Command Influence (UCI) which focuses on the chain of command as the source of the influence.[32]

b. Although the 2009 MCA provision is more expansive than the UCMJ, extensive UCI litigation in military courts provides a useful framework in analyzing the issue.

c. UCI is the improper use, attempted use or perception of use, of superior authority to interfere with the court-martial process. *See* Gilligan and Lederer, COURT-MARTIAL PROCEDURE, Volume 2 §18-28.00 (2d Ed. 1999).

d. UCI is the "mortal enemy of military justice." *United States v. Thomas*, 22 M.J. 388, 393 (C.M.A. 1986). UCI can manifest itself in a multitude of different situations and can affect

---

[30] 10 U.S.C. §949b.

[31] Uniform Code of Military Justice (UCMJ), 64 Stat. 109, 10 U.S.C. §§ 801–946.

[32] No authority convening a general, special, or summary court-martial, nor any other commanding officer, may censure, reprimand, or admonish the court or any member, military judge, or counsel thereof, with respect to the findings or sentence adjudged by the court, or with respect to any other exercises of its or his functions in the conduct of the proceedings. No person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial or any other military tribunal or any member thereof, in reaching the findings or sentence in any case. Article 37(a), UCMJ, 10 U.S.C. §837(a) (2012).

10

the various phases of the court-martial process. *See United States v. Gore*, 60 M.J. 178, 185

(C.A.A.F. 2004). Furthermore, "[t]he term 'unlawful command influence' has been used broadly

in our jurisprudence to cover a multitude of situations in which superiors have unlawfully

controlled the actions of subordinates in the exercise of their duties under the UCMJ." *United*

*States v. Hamilton,* 41 M.J. 32, 36 (C.M.A. 1994).

      e. UCI situations include actual UCI or apparent UCI. The R.T.M.C. specifically warns

against the appearance of UI: "all persons…should be sensitive to the existence, or appearance,

of unlawful influence, and should be vigilant and vigorous in their efforts to prevent it."[33]

Therefore, even if there is no actual UCI, there may still be apparent UCI, and the military judge

must take affirmative steps to ensure that both forms of potential UCI are eradicated from the

court-martial in question. *United States v. Lewis*, 63 M.J. 405, 416 (C.A.A.F. 2006).

      f. The "appearance of unlawful command influence is as devastating to the military as the

actual manipulation of any given trial*." Lewis*, 63 M.J. at 407. Thus, the resolution of an issue

involving UCI, once it has been raised, is insufficient if it fails to take into full consideration

even the mere appearance of UCI. *Id.* at 416. The question of whether there is apparent UCI is

determined "objectively." *Id.* This objective test for apparent UCI is similar to the tests that are

applied in determining questions of implied bias of court members or in reviewing challenges to

military judges for an appearance of a conflict of interest. *Id.* Specifically, the Court must focus

on the "perception of fairness in the military justice system as viewed through the eyes of a

reasonable member of the public." *Id.* Therefore, the central question to ask is whether, an

"objective, disinterested observer fully informed of all the facts and circumstances would harbor

a significant doubt about the fairness of the proceeding." *Id.*

---

[33] R.T.M.C. Chapter 1, p. 1-4.

g. In *United States v. Biagase*, 50 M.J. 143 (C.A.A.F. 1999), the U.S. Court of Appeals for the Armed Forces (C.A.A.F.) provided an analytical framework applicable to cases of UCI. The Court held that the initial burden is on the defense to raise the issue of UCI. The burden is "low," but it is more than mere allegation or speculation. The quantum of evidence required to meet this burden, and thus raise the issue of UCI, is "some evidence." *Biagase*, 50 M.J. at 150. Elaborating on this rule C.A.A.F. held the defense must show facts which, if true, would constitute UCI, and it must show that such evidence has a "logical connection" to the court-martial at issue in terms of potential to cause unfairness in the proceedings. Again, if the defense shows "some evidence" of such facts, then the issue is "raised." *United States v. Stoneman*, 57, M.J. 35, 41 (C.A.A.F. 2002).

h. Once the issue has been raised, the burden shifts to the Government. The Government may show either that there was no UCI, or that any UCI would not taint the proceedings. If the Government elects to show that there was no UCI, then it may do so either by disproving the predicate facts on which the allegation of UCI is based, or by persuading the Military Judge that the facts do not constitute UCI. The Government may choose not to disprove the existence of UCI, but instead prove the UI will not affect the specific proceedings at issue. Despite which tactic the Government chooses, the Government's burden is beyond a reasonable doubt. *Stoneman*, 57 M.J. at 41 (citing *Biagase*, 50 M.J. at 151).

i. If actual or apparent UCI is found to exist, the Military Judge "has broad discretion in crafting a remedy to remove the taint of unlawful command influence," and such a remedy will not be reversed, "so long as the decision remains within that range." *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010). The judge may consider dismissal of charges when the accused would still be prejudiced despite remedial actions, or if no useful purpose would be served by

12

continuing the proceedings. *Douglas*, 68 M.J. at 354. C.A.A.F. elaborated: "However, we have noted that when an error can be rendered harmless, dismissal is not an appropriate remedy. Dismissal is a drastic remedy and courts must look to see whether alternative remedies are available." *Id.* Indeed, the Court went on to say, "this Court has recognized that a military judge can intervene and protect a court-martial from the effects of unlawful command influence." *Id.* Finally, the military judge should attempt to take proactive, curative steps to remove the taint of UCI, and therefore ensure a fair trial. *Id.* C.A.A.F. has long recognized once UCI is raised "…it is incumbent on the military judge to act in the spirit of the UCMJ by avoiding even the appearance of evil in his courtroom and by establishing the confidence of the general public in the fairness of the court-martial proceedings." *United States v. Gore*, 60 M.J. 178, 186 (C.A.A.F. 2004) (citations omitted).

DISCUSSION:

a. The purpose of Change 1 to the R.T.M.C. was to "accelerate the pace of litigation" and was specifically predicated upon analyzing judicial performance. Mr. Ary, although well intentioned, was concerned with influencing the process so that the various commission cases were concluded at an accelerated pace. Decisions on continuances and pace of litigation are within the sole discretion of the trial judge. "[A] judge is ultimately responsible for the control of his or her court and the trial proceedings…[p]roper case management during a trial…is encompassed within that responsibility." *United States v. Vargas*, 74 M.J. 1, 8 (C.A.A.F. 2014) (internal quotations and citations omitted). This is a complicated international terrorism case under a relatively new statutory scheme with an unprecedented amount of classified evidence.

13

There are numerous factors that impact the pace of litigation, none of which would be affected by relocating the trial judiciary. It will take time to try this case.[34]

b. In the face of what was Change 1, any legitimate denial of a delay requested by the Defense immediately gives rise to an issue as to whether the Military Judge acted in the interests of justice, personal convenience, or an acknowledgement of the Convening Authority's belief that the pace of litigation is too slow. Even though the DEPSECDEF may not have intended for the Military Judge to adjust his trial schedule to limit any personal inconvenience caused by living at GTMO, his actions created the appearance of such an intent.[35] An "objective, disinterested observer fully informed of all the facts and circumstances would harbor a significant doubt about the fairness of the proceeding."[36]

c. The Convening Authority was aware the implementation of Change 1 could have the direct effect of removing an otherwise properly detailed military judge from presiding over a military commission case to which they were currently detailed. He also knew the change had the potential to actually impact the available pool of judges who were available to be detailed to commission cases. The Convening Authority, in his e-mail[37] to the various service TJAGs expressed a desire that the currently detailed military judges would remain on their cases. However, this demonstrates that the Convening Authority was well aware of the potential impact of Change 1. There is no evidence these outcomes were made known to the General Counsel or the DEPSECDEF. This military commission case is in the pre-trial hearing phase. The members

---

[34] As a point of reference the trial of Zacarias Moussaoui began 2 January 2002 and concluded 4 May 2006. http://www.npr.org/templates/story/story.php?storyId=5243788. Last accessed 28 February 2015.
[35] See Attachments A and B, AE 332B.
[36] United States v. Lewis, 63 M.J. 405, 416 (C.A.A.F. 2006)
[37] See Attachment E, AE 332A and Ary testimony in Unofficial/Unauthenticated Transcript Dated 25 February 2015 from 12:32 P.M. to 2:13 P.M at pp 5580, 5583, 5689.

14

have not been seated, thus the Commission is not assembled.[38] At this juncture, only the Chief

Trial Judge can properly remove a detailed military judge.

d. The Defense has demonstrated that the motivation behind Change 1 was to ensure that

trial judges would move cases along faster. This is evidenced by the history behind the change,

the supporting documentation gathered in finalizing the recommendation, and the final package

sent to DEPSECDEF for signature.[39]

e. The Convening Authority's role is well defined in relation to the Military Commission

Trial Judiciary. The Director, Office of Convening Authority is critical in relation to resourcing.

Resourcing is defined in the R.T.M.C.[40] and clearly does not include the ability to impact the

location or duties of currently assigned or detailed commission trial judges. Both the 2009 MCA

and the Rules for Military Commissions are clear on this very fact.

f. Mr. Ary's recommended change, Change 1, was outside of his role as the Convening

Authority for the commission cases. He clearly stepped into the arena of the Chief Trial Judge of

the Military Commissions and the Service TJAGs. He did so without any coordination or

discussion with them. Additionally, the language of Change 1 conflicts with the language of the

2009 MCA and the R.M.C.s related to the detailing of commission judges.

g. The recommendation, once approved, would have the very real potential to impact an

outsider's view of the objectivity of the trial judiciary, future rulings and decisions made by any

trial judge whether it involved Change 1, or not, and the fairness of the overall system. Any

objective outsider watching the process may well have concerns that an impacted trial judge is

making decisions in a manner that would allow them to depart GTMO and return to their

previously assigned duty locations. They could easily wonder if decisions were made in the

---

[38] *See* R.M.C. 911.
[39] *See* Product 112, AE 332O.
[40] R.T.M.C. paragraph 2-3a(4) – (6), (10), and (11).

interests of speed, rather than a just fair outcome. This cannot be allowed; "any question of a judge's impartiality threatens the purity of the judicial process and its institutions." *United States v. Brewster*, ACM 37247 (A.F.Ct. Crim.App., May 7 2009) (unpub. Op.) (citations omitted).

    h. The Convening Authority's gathering data to document how much time a particular military judge spent on the record in a commission case[41] to show his dedication to moving the pace of litigation forward at an acceptable level can be viewed as a commentary on the efficiency with which military judge "exercises one of his functions in the conduct of the proceedings."[42] His gathering of data occurred at the same time another commission judge made a comment about having conflicts with his two jobs. While possibly coincidental, again, an objective observer would have concerns about the timing of these events.

    i. Whether purposeful or not, the timing of the request for reports and the issue in another commission case that had been highlighted by Mr. Ary's staff, gives rise to a strong impression that Mr. Ary was requesting information specifically about commissions trial judges and their efficiency. This improper report or comment is compounded in reporting this data, in a repackaged format, to DEPSECDEF in the Executive Summary[43] in support of the need for the change.

    j. This action directly impacted the Trial Judiciary and directly impacted the appearance of independence of that judiciary. In fact, any objective observer would wonder if this was a punitive measure taken against trial judges and if it would impact their substantive decisions in order to cause the relevant cases to move more quickly to conclusion. This appearance issue is

---

[41] *See* AE 332O, Product 112, Bates Numbers 10015-00127556 – 10015-00127559 and AE 332O, Product 112, Bates Number 10015-00127565.
[42] 10 U.S.C. 949b(a)
[43] See TAB B, Attachment B, AE 332A.

16

solidified as the trial judges were the only entities the Convening Authority recommended and DEPSECDEF directed to relocate.

k. Applying the *Biagase* analysis, the Defense more than met its initial burden to show "some evidence" that the actions of the Convening Authority and DEPSECDEF raised the issue of UI by attempting to accelerate the pace of the litigation and creating the appearance of improper pressure on the military judge to adjust the pace of the litigation. There is no dispute the Convening Authority formulated Change 1, did not staff Change 1 as proposed outside his circle of legal advisors in the Office of the Convening Authority and the General Counsel, recommended the change to DEPSECDEF, and that DEPSECDEF approved Change 1. As discussed earlier, the actions would affect the proceedings as they were directed solely at the military judge in these proceedings in the exercise of his sole discretion in managing the pace of litigation.

l. Finding that Mr. Ary set out to impact the pace of litigation, with acknowledgement of a likely impact on detailed judges, we turn to see if the Government presented any evidence to demonstrate no UI or that the actual, attempted or apparent UI will not taint the proceedings or was the taint was removed by corrective action taken by the Government. The Government chose to present no evidence to demonstrate the absence of UI or that the actual, attempted or apparent UI would not taint the proceedings when offered the opportunity to do so. The Government called no witnesses, but offered the DEPSECDEF rescission action,[44] and the military judge's decision in *United States v. Khalid Shaikh Mohammad, et al.*[45] to lift the abatement order based on the DEPSECDEF rescission action as evidence of corrective action

---

[44] *See* AE 332S, DEPSECDEF Action Memo, Rescission of Change 1 to the Regulation for Trial by Military Commissions, dated 26 February 2015.
[45] *See* AE 332T, AE 343D, ORDER, *United States v. Khalid Shaikh Mohammad, et al.*, Defense Motion to Dismiss for Unlawful Influence on Trial Judiciary, dated 27 February 2015.

17

and its sufficiency. The Government did not marshal any evidence to disprove the acts or their consequences, if implemented. There is no doubt the action of Convening Authority and his legal advisors at a minimum appeared to attempt to unlawfully influence the military judge in these proceedings.

m. The Commission does not understand how assigning the military judge at GTMO would make the litigation proceed at a faster pace. Hearings in this capital referred case require the presence of counsel, including Learned Counsel,[46] and a large number of support personnel, almost none of whom are, or in the case of Learned Counsel can be, permanently assigned to the Naval Station.[47] (*See* 10 U.S.C. § 949a(2)(C)(ii) granting an accused the right to "representation by … counsel who is learned in applicable law relating to capital cases and who, if necessary, may be a civilian…"). Unless the intent is to make the military judge ignore his duty to exercise discretion under the law and instead move the case faster to shorten his stay at GTMO, the purported change would not, and could not, have its intended effect. Moreover, any legitimate denial of delay requested by the Defense immediately gives rise to an issue as to whether the military judge acted in the interests of justice or personal convenience. Though the Convening Authority, in developing the recommended course of action, working to obtain DEPSECDEF approval, and ultimately DEPSECDEF approving the change, may not have intended for the Military Judge to adjust his trial schedule to limit his personal inconvenience caused by living at GTMO, these actions did create the appearance of that intent. An "objective, disinterested observer fully informed of all the facts and circumstances would harbor a significant doubt about the fairness of the proceeding."

---

[46] Learned Counsel in this case is a civilian, not an employee of the federal government. *See* R.T.M.C. paragraph 9-1a(6).
[47] See Rule 4, Military Commissions Rules of Court (5 May 2014).

n. As to whether the influence was removed, the Government did offer the DEPSECDEF rescission of Change 1. However, this only removes part of the appearance of unlawful influence. With Change 1 removed, the specific effort to speed the pace of litigation has been removed. However, the actions of the Convening Authority, outside of his appropriate field of action, cast a cloud over the independence of the Military Commission Trial Judiciary. The Convening Authority in this case believed he had the responsibility to recommend action to his superior, the DEPSECDEF, which would affect the location/duty assignment of the detailed trial judge. He went about making such a recommendation knowing it might result in the loss of this trial judge. As an experienced military attorney, he should have known this was an unwarranted intrusion into the sole province of the trial judge. A disinterested member of the public may always wonder whether this Convening Authority meant to have this particular judge removed or if it was an unintended consequence. No matter, it leaves doubt as to the independence of the Military Commission Trial Judiciary.

6. REMEDY

a. As noted in *Douglas*, the military judge "has broad discretion in crafting a remedy to remove the taint of unlawful command influence"[48] In crafting a remedy the Commission takes note of the 26 February 2015, action by DEPSECDEF to rescind Change 1. That action was taken in response to a ruling on a similar motion in *United States v. Khalid Shaikh Mohammad, et al.*[49] DEPSECDEF also required any future proposed changes to the Regulation or Rules be staffed with the Office of the General Counsel, the various DoD components, the service TJAGs, and the Trial Judiciary as appropriate. That action removes some of the UI from this case, however, the Commission also notes the Convening Authority testified he would act similarly if

---

[48] *Douglas*, at 354.
[49] *See* AE 332S, DEPSECDEF Action Memo, Rescission of Change 1 to the Regulation for Trial by Military Commissions, dated 26 February 2015.

presented with similar facts again in the future. He believed his recommendation was appropriate and thus the DEPSECDEF's action proper.

b. Dismissal with or without prejudice is a drastic remedy, and not appropriate at this juncture. Lesser measures can be taken to remove the taint of the unlawful influence from this military commission. DEPSECDEF has taken some action to purge the taint of unlawful influence. The Commission finds the Convening Authority did not act in bad faith in making the recommendation to change paragraph 6-2 of the R.T.M.C., however, they did step outside the boundaries of their customary, regulatory and statutory duties.

c. The actions of the Convening Authority and his legal staff are central to the cause of the unlawful influence. Due to the number of measures orchestrated outside of their scope, any further actions by the Convening Authority, or his legal staff, would still be viewed by the public as tainted as the Convening Authority impacting the "pace" of the litigation. The Convening Authority's approving of experts, additional staff, or funding for investigation, hearings, etc. that proves detrimental to either the prosecution or defense will carry with it taint that these decisions were based upon the Convening Authority wanting to quicken the pace of litigation, despite such denials generally creating additional litigation. In order to further absolve the proceedings of taint, the current Convening Authority (Mr. Vaughn Ary) and his staff of legal advisors (Mr. Mark Toole, Ms. Alyssa Adams, LTC Patricia Lewis, CDR Raghav Kotval,[50] and CPT Matthew Rich) are disqualified from taking any future action in this case. They are disqualified from all decisions related to this case and from providing recommendations specific to this case from this point forward. Similar to disqualifications of a convening authority in the traditional Military Justice scenario, the Secretary of Defense or his designee will appoint a new Convening

---

[50] CDR Raghav Kotval has left the legal staff of the Convening Authority in the normal course of business. See AE 332O, Product 112, Bates Number 10015-00127573.

Authority who will seek legal advice from a legal staff outside the Office of Military Commission/Office of the Convening Authority.

       d. Furthermore, to ensure any last vestiges of taint from UI are totally expunged, the trial judge needs to affirmatively demonstrate there is no pressure to accelerate the pace of litigation or succumb to the pressures of the Convening Authority. To demonstrate this, any potential evidentiary session this week is postponed until at least our next session. Additionally, the currently scheduled April hearing in this case is truncated by one week. This is to further demonstrate that the pace and timing of litigation must remain solely within the trial judiciary's discretion and to demonstrate that this detailed trial judge does not feel pressure to accelerate the pace of litigation.

       e. It is imperative that no similar efforts be undertaken in the future to improperly influence the trial judiciary as that will likely lead to more drastic remedies.

Accordingly, AE 332 is **GRANTED** in part and **DENIED** in part.

So **ORDERED** this 4th day of March, 2015.

SPATH.VANCE.HU
DSON.1013673990
*/s//*

Digitally signed by
SPATH.VANCE.HUDSON.1013673990
DN: c=US, o=U.S. Government, ou=DoD,
ou=PKI, ou=USAF,
cn=SPATH.VANCE.HUDSON.1013673990
Date: 2015.11.19 10:18:18 -05'00'

VANCE H. SPATH, Colonel, USAF
Military Judge
Military Commissions Trial Judiciary

21