**UNITED STATES COURT OF APPEALS**
***for the* District of Columbia Circuit**

In re: ABD AL-RAHIM HUSSEIN AL-NASHIRI,

No. 18-1279

**ATTACHMENTS TO PETITIONER'S REPLY BRIEF IN SUPPORT OF HIS PETITION FOR A WRIT OF MANDAMUS AND PROHIBITION**

Dated: November 28, 2018

Michel Paradis
CAPT Brian Mizer, USN, JAGC
LT Alaric Piette, USN, JAGC
U.S. Department of Defense
Military Commission Defense Organization
1620 Defense Pentagon
Washington, DC 20301

*Counsel for Petitioner*

**Attachment A**
DOJ Email Correspondence (excerpts)

**Lee-Sullivan, Marcia L. (EOIR)**

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Wednesday, July 12, 2017 9:55 AM
**To:** Keller, Mary Beth (EOIR); Cheng, Mary (EOIR); Maggard, Print (EOIR); Roldan, Martin (EOIR); Ortiz-Ang, Susana (EOIR)
**Cc:** Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR)
**Subject:** Response from IJ Candidate Spath: Immigration Judge Position - DOJ Arlington Court-Start Date

**Importance:** High

Good Morning,

Please see detailed email below from IJ Candidate Vance Spath (Arlington) regarding the tentative EOD date of September 17, 2017.

Please advise.

Thank you.

Marcia Lee-Sullivan

**From:** Boone-Fisher, Sabina (EOIR)
**Sent:** Wednesday, July 12, 2017 8:09 AM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Subject:** FW: Immigration Judge Position - DOJ Arlington Court- Start Date
**Importance:** High

Good Morning Marcia,

FYI...

**From:** V. Spath [mailto (b)(6) ]
**Sent:** Wednesday, July 12, 2017 7:12 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date

Ms. Pryor,

Duplicate

Duplicate



Vhs

//SIGNED//
VANCE H. SPATH, Colonel, USAF
Chief Trial Judge

On Mon, Jul 3, 2017 at 8:48 AM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Good morning Mr. Spath,


Thank you for the update. I will let our management know that you are awaiting on confirmation from Air Force before committing to the start date that has been offered. Please let me know any updates once you receive them.


Thank you sir and have a great day,


Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

**From:** V. Spath [mailto(b)(6)
**Sent:** Thursday, June 29, 2017 2:27 PM

**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date

Ms. Pryor,

I wanted to give you an update. I am waiting on confirmation from the Air Force or their proposal. I had hoped to have it this week. However, it may be after the hololiday. I will engage with you all next week on way or the other.

Look forward to talking,

Vance

//signed//

Vance H. Spath, Colonel, USAF

Chief Trial Judge

Air Force

Phone (b)(6)

On Tuesday, June 27, 2017, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Hello Mr. Spath,

No worries. I will await to hear back from you on your acceptance or non-acceptance of the September 18, 2017, start date for your appointment to the Immigration Judge position.

Thank you,

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

**From:** V. Spath [mailto:(b)(6)
**Sent:** Tuesday, June 27, 2017 12:30 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge Position - DOJ Arlington Court- Start Date

Sorry, I did not mean email, I meant voicemail? I went back and checked. No idea other than the travel. But again, my apologies - and more very soon,

Vance

On Tue, Jun 27, 2017 at 12:28 PM, V. Spath (b)(6) wrote:

Thank you for the note - I did not get the email. However, I was traveling to California. I will get you the required information later today or tomorrow. I should have an answer back reasonably soon from the AF. Thanks for the email and sorry for the missed call.

V/r

Vance

On Mon, Jun 26, 2017 at 11:28 AM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Good morning Mr. Spath,

Just wanted to follow-up with you regarding the voicemail message I left on your phone on Wednesday, June 21, 2017. The Department of Justice, Executive Office for Immigration Review (EOIR), have set an entrance on duty date for you. The date that has been established is September 18, 2017. Please let me know if you are able to begin employment on this date so that I can notify our Office of the Chief Immigration Judge.

Thank you in advance and please do not hesitate to contact me if you have any questions.

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

---

**From:** Pryor, Holly (EOIR)
**Sent:** Friday, May 12, 2017 9:37 AM
(b)(6)
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** FW: Immigration Judge Salary Offer - Department of Justice Executive Office for Immigration Review - Vance Spath

Good morning Mr. Spath,

I wanted to follow-up our phone conversation with an email of your acceptance of the reconsidered Immigration Judge salary for our Arlington Immigration Court. You are in agreement with the IJ-2 salary which is set at $164,620 for the Arlington area and this salary includes locality pay.

As discussed, I will be in contact with you once our Office of the Chief Immigration Judge (OCIJ) sets a start date.

Should you have any questions or concerns that arise please do not hesitate to contact me.

Thank you,

Holly R. Pryor, HR Specialist

DOJ/EOIR

---

**From:** Pryor, Holly (EOIR)
**Sent:** Wednesday, May 10, 2017 11:49 AM

(b)(6)

**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** Immigration Judge Salary Offer - Department of Justice Executive Office for Immigration Review

Good morning Mr. Spath,

The Executive Office for Immigration Review (EOIR) has reconsidered the salary offer initially extended to you, and we would like to extend the IJ-2 salary offer at $164,620 per year; this amount includes the locality pay. While we do not count "add-ons" like the BAH and BAS (housing and subsistence allowances) your military time counts as federal service, so management looked at your base military pay and awarded you the next higher base pay (not figuring in locality pay). The next higher base pay is the IJ-2 level (base of $129,520). We then adjust that for locality pay at the IJ-2 level, Arlington locality rate ($164,620).

Please let me know if you are in acceptance of the IJ-2 salary offer and your appointment as an Immigration Judge for the Arlington Immigration Court. Once I receive your reply we can discuss further the Entrance on Duty (EOD) date for the position.

Thank you and please do not hesitate to contact me if you have any additional questions.

Holly R. Pryor

Department of Justice

Executive Office for Immigration Review (EOIR)

5107 Leesburg Pike, Suite 2300

Falls Church, VA 22041

Human Resources Specialist (Staffing/Classification)

703-305-1171 (Work)

703-305-1456 (Fax)

**From:** Sheehey, Kate (EOIR)
**To:** McHenry, James (EOIR)
**Subject:** RE: Future IJs
**Date:** Friday, July 28, 2017 10:35:48 AM

---

Spath is still in negotiations – In July he reached out to HR and asked to EOD in May 2018 or later (we had offered him an earlier date which was too soon and then we offered a September date). He said there was some kind of issue with the military finding a replacement for him. Marcia is waiting for OCIJ leadership to tell her what to do with his counteroffer of May 2018 (that is not a typo – nearly 8 months from now). We've had some issues with this candidate (at first he was accidentally offered too low of pay, which we corrected).

Choi was called and asked for a week to decide. We are awaiting whether the position will be accepted or not.

---

**From:** McHenry, James (EOIR)
**Sent:** Friday, July 28, 2017 10:31 AM
**To:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Subject:** RE: Future IJs

Thanks.

Who is still in negotiations?

Also, has Choi been called by OCIJ?

---

Not a responsive record

Not a responsive record

**From:** Keller, Mary Beth (EOIR)
**To:** Ward, Lisa (EOIR)
**Cc:** Sheehey, Kate (EOIR)
**Subject:** RE: Arlington Immigration Judge Candidate Request for an EOD Date in 2018
**Date:** Wednesday, August 02, 2017 7:43:24 PM

---

Ok. Will do.

*MaryBeth Keller*

---

**From:** Ward, Lisa (EOIR)
**Sent:** Wednesday, August 02, 2017 7:36 PM
**To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
**Cc:** Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
**Subject:** Re: Arlington Immigration Judge Candidate Request for an EOD Date in 2018

MaryBeth,

I think you need to talk to James. He is aware of this situation. He's been tracking all IJs with Kate and I hadn't realized that We had let him know about this one.

Also, I wasn't aware he was active duty, so we do have allow that timeframe.

I just think we should check with James first.

Lisa

On Aug 2, 2017, at 7:14 PM, Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV> wrote:

> Thanks Marcia. I don't think we can extend an offer, but delay the EOD indefinitely, until an unknown date at least 10 months into the future. (b)(5) DP
>
> I believe we need to treat this as we have the one other situation where a release from the military has come up, which is to hold the package, and tell the candidate we will connect with him again closer to the date he can EOD. From the below, this sounds like February, which is 120 days prior to the May date he's mentioned, assuming we have a May or later class on the schedule at that time.
> I've copied in Lisa to make sure she is looped in and that we are handling this properly.
>
> Thanks.
> Mtk
>
> *MaryBeth Keller*
>
> ---
>
> **From:** Lee-Sullivan, Marcia L. (EOIR)

**Sent:** Wednesday, August 02, 2017 4:01 PM
**To:** Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** Arlington Immigration Judge Candidate Request for an EOD Date in 2018
**Importance:** High

Judge Keller,

On June 21, 2017, Human Resources made the official offer to Mr. Vance Spath, to become an Immigration Judge at the Arlington Immigration Court at the IJ-2 salary level with an EOD date of September 17, 2017. On July 12, 2017, Human Resources received a response from Mr. Spath. Due to his military obligations, Mr. Spath is requesting an **EOD date of May 15, 2018 or later.** For your review, I am including the message the Human Resource Specialists, Ms. Holly Pryor received from Mr. Vance Spath on July 12, 2017 at 7:12am.

*Ms. Pryor,*

*I wanted to let get back with you as soon as I could. Please express to your management I remain extremely interested in the position. I also know I would bring the right experience and enthusiasm to the job. The complication of the job offer remains my status as an active duty member of the Armed Forces, and my position as Chief Judge of the Air Force. The application and interview process has taken a bit longer than I expected. When the initial offer came in March 2017, it was for the entry at IJ-1 and a start date only a few weeks later. I indicated this would not work. On May 10, 2017, the offer was changed to IJ-2, with a start date to be determined. On June 21, 2017, a voicemail was left with a start date of September 18, 2017. I did express the September 2017 start may work - in March 2017, but I did not expect the amount of time to see if that date would be approved. The Air Force requires 120 days (at a minimum) for release from active duty. I made some inquiries regarding exceptions to policy, and that is not an option. The Air Force has not approved these for a variety of reasons. I also am uncomfortable with such short notice to the Air Force after the lengthy interview and application process for a variety of reasons.*

*As this timeline has unfolded, there have also been some significant changes in circumstances for me. I am in the midst of a murder trial that has already had extensive motion practice. I remain detailed to a case at Guantanamo Bay Cuba which requires significant time to hand to another trial judge. The requirements for security clearances and clearance to travel for the case are significant. Finally, the Air Force assignment season has passed, and the trial judiciary is left with a couple of significant vacancies that will not be filled until the next course for Air Force trial judges in April 2018. This situation is made worse as a chief judge of a circuit has also just submitted his retirement application. He has requested the 120 day minimum period of time.*

*Again, I want to express my sincere desire to join the team of Immigration Judges. However, I must request a start date of May 15, 2018 or later. That start time period gives me the lead time I need to ensure I give a bit more than the 120 day minimum notice, and to leave the active duty trial judiciary in the place to which I have led it. Please express to management my commitment to them, but also, my commitment to leave active duty in a manner consistent with serving there for over 25 years. I wish the timing of the above events had been different, but at this point, we are where we are at. I look forward to hearing from you all.*

*I am traveling for the next three weeks. However, I have my cell,* (b)(6) *, and I will have email access.*

*I look forward to hearing from you.*

*Vhs*

*//SIGNED//*
*VANCE H. SPATH, Colonel, USAF*
*Chief Trial Judge*

To date, Human Resources has not responded to his request. Please advise.

Marcia Lee-Sullivan
Executive Programs Manager
Office of the Chief Immigration Judge
(703) 305-1725

**Lee-Sullivan, Marcia L. (EOIR)**

**From:** Pryor, Holly (EOIR)
**Sent:** Monday, August 14, 2017 4:34 PM
**To:** Lee-Sullivan, Marcia L. (EOIR)
**Subject:** RE: Status - Mr. Spath

Thank you for the clarification Marcia. I have reached out to Mr. Spath to clarify my message to him. Once I receive his reply I will let you know.

Thank you,

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Wednesday, August 09, 2017 5:56 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Subject:** RE: Status - Mr. Spath

Hi Holly,

Management did not agree to his terms, all they said was HR will contact him in January/February 2018 and that no EOD date has been establish at this time.

The terms of May 15, 2018 or later are "his" words not Managements.

Marcia

**From:** Pryor, Holly (EOIR)
**Sent:** Wednesday, August 09, 2017 5:39 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** FW: Status - Mr. Spath

Hi Marcia,

Just to provide you with an update – I did give Mr. Spath a call yesterday and I sent him an email this evening. hopefully he will respond to either my voicemail message or email to let me know that he is in receipt of management's agreeing to have him EOD on or after May 2018, depending on when OCIJ sets the EOD.

I am out of the office tomorrow and Friday and will return on Monday if you have any questions or need me to do any additional follow-up ☺

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

**From:** Pryor, Holly (EOIR)
**Sent:** Tuesday, August 08, 2017 10:49 AM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Subject:** RE: Status - Mr. Spath

Hi Marcia,

I have to apologize – with some of the specialist being out the past few days each time I was preparing to call him I would get interrupted. I will stop now and see if I can reach him. Thank you for checking in with me because it slipped my mind.

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Tuesday, August 08, 2017 10:42 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Subject:** Status - Mr. Spath

Hi Holly,

Were you able to reach Mr. Spath?

Marcia

## Lee-Sullivan, Marcia L. (EOIR)

**From:** Lee-Sullivan, Marcia L. (EOIR)
**Sent:** Thursday, August 03, 2017 10:27 AM
**To:** Pryor, Holly (EOIR)
**Cc:** Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR)
**Subject:** FW: Arlington Immigration Judge Candidate Request for an EOD Date in 2018

Holly,

Per our conversation, please contact Mr. Spath and update him on Management's decision.

"Management is aware of his request to EOD in 2018, however, at this time, we will hold his paperwork and contact him again in January/February, 2018".

Please note Holly, no EOD date has been establish for Mr. Spath.

Thanks !

Marcia Lee-Sullivan

**From:** Keller, Mary Beth (EOIR)
**Sent:** Wednesday, August 02, 2017 9:57 PM
**To:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>
**Cc:** Maggard, Print (EOIR) <Print.Maggard@EOIR.USDOJ.GOV>; Cheng, Mary (EOIR) <Mary.Cheng@EOIR.USDOJ.GOV>
**Subject:** Fwd: Arlington Immigration Judge Candidate Request for an EOD Date in 2018

Marcia -
Please see the below on candidate Spath.
Thanks.
Mtk

Sent from my iPhone

Begin forwarded message:

> **From:** "McHenry, James (EOIR)" <James.McHenry@EOIR.USDOJ.GOV>
> **Date:** August 2, 2017 at 8:33:00 PM EDT
> **To:** "Keller, Mary Beth (EOIR)" <MaryBeth.Keller@EOIR.USDOJ.GOV>
> **Cc:** "Reilly, Katherine - OGC (EOIR)" <Katherine.Reilly@EOIR.USDOJ.GOV>, "Ward, Lisa (EOIR)" <Lisa.Ward@EOIR.USDOJ.GOV>
> **Subject: Re: Arlington Immigration Judge Candidate Request for an EOD Date in 2018**

Duplicate [redacted]

> On Aug 2, 2017, at 7:53 PM, Keller, Mary Beth (EOIR) <MaryBeth.Keller@EOIR.USDOJ.GOV> wrote:
>
> James,

**Lee-Sullivan, Marcia L. (EOIR)**

| | |
|---|---|
| **From:** | Pryor, Holly (EOIR) |
| **Sent:** | Tuesday, April 10, 2018 2:35 PM |
| **To:** | 'V. Spath' |
| **Cc:** | Lee-Sullivan, Marcia L. (EOIR); Boone-Fisher, Sabina (EOIR) |
| **Subject:** | RE: Immigration Judge - Appointment EOD Confirmation |

Thank you so much sir!

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

**From:** V. Spath [mailto:(b)(6)]
**Sent:** Friday, April 06, 2018 11:00 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Received, and info to follow!

Thank you,

R/

Vance

On Thu, Apr 5, 2018 at 4:47 PM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Hello Mr. Spath,

I am able to confirm that you are all set to start on July 9th with the Arlington Immigration Court. The only thing I will need for you to provide is the following:

- Current HR point of contact if you are employed by Federal government;

- Home address for sending job related correspondence (you can provide this through email);

- And an updated leave and earning statement or SF-50 so that we can ensure that the pay offered is set accurately for your promotion.

You will receive an official congratulatory welcome letter along with information related to your entrance on duty with our agency, such as training dates, court address, mentor judge, etc., as we get closer to the official entrance on duty. Usually this information goes out at least 2-3 weeks before you are expected to arrive for duty.

Unless you have any specific questions related to your upcoming employment you are all set to go for July 9th and again you will be provided with correspondence during the process for your situational awareness.

Please do not hesitate to contact me should you have any questions.

Thank you,

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

**From:** Vance Spath [mailto(b)(6)
**Sent:** Monday, March 26, 2018 12:30 PM

**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina

(EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Ms Pryor, I believe we are still supposed to chat? What do I owe you for the 9 July start? I am around by phone all this week and next. Phone remains (b)(6) .

Hope all is well. Thank you. Regards. Vance.

Sent from my iPhone

On Feb 26, 2018, at 10:34, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Hello Mr. Spath,

I totally understand. I will be out of the office attending a meeting off-site tomorrow morning and will return in the afternoon. Please feel free to call me anytime tomorrow after 2:00 pm EST.

Thank you,

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

<image003.jpg>

**From:** V. Spath [mailto:(b)(6)
**Sent:** Friday, February 23, 2018 7:25 AM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Ms. Pryor,

Finally getting back tonight, after some delays and difficulties in that case.

Are you around Tuesday, 27 Feb 18? If so, I will give you a call then if it is convienient..

Regards,

Vance

On Fri, Feb 16, 2018 at 7:42 AM, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Thank you for the update Mr. Spath. I will await your call upon your return. My direct line is 703-305-1171

Holly R. Pryor

Executive Office for Immigration Review (EOIR)

Human Resources Specialist

703-305-1171 (Work)

<image002.jpg>

**From:** Vance Spath [mailto:(b)(6)]
**Sent:** Thursday, February 15, 2018 8:02 PM
**To:** Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
**Cc:** Lee-Sullivan, Marcia L. (EOIR) <Marcia.Lee-Sullivan@EOIR.USDOJ.GOV>; Boone-Fisher, Sabina (EOIR) <Sabina.Boone-Fisher@EOIR.USDOJ.GOV>
**Subject:** Re: Immigration Judge - Appointment EOD Confirmation

Ms Pryor. Thank you. I get back over the weekend. I will give you a call on Tuesday. Look forward to talking soon. Vr. Vance

Sent from my iPhone

On Feb 15, 2018, at 14:01, Pryor, Holly (EOIR) <Holly.Pryor@usdoj.gov> wrote:

Good afternoon Mr. Spath,

I wanted to send an email to let you know that I have received the notification that you are able to EOD with our agency (Executive Office for Immigration Review (EOIR), on July 8, 2018. When you have returned to the states please let me know so we can arrange a time to call you and go over the Immigration Judge appointment information.

Please do not hesitate to let me know if you have any additional questions.

Thank you,

Holly R. Pryor

Department of Justice

Executive Office for Immigration Review (EOIR)

Human Resources Specialist (Staffing/Classification)

703-305-1171 (Work)

703-305-1456 (Fax)

<image001.jpg>

**From:** Santoro, Christopher A (EOIR)
**To:** Sheehey, Kate (EOIR)
**Subject:** Re: IJ candidate Vance Spath
**Date:** Thursday, June 14, 2018 8:06:37 AM

---

July is definitely out. Everyone n the Air Force has agreed to the Sep 2 EOD but they're holding to see what the Secretary of Defense is going to do. The case he is on at Guantanamo Bay has enough visibility that his departure is beyond AF control. They have found a new judge with high enough clearance to reassign to it but that process has taken longer than they expected.

Christopher A. Santoro
Deputy Chief Immigration Judge

On Jun 14, 2018, at 7:55 AM, Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV> wrote:

> Ok. I'm happy to wait until Monday. Do I need to tell Holly not to push for July? Or to hold up and not call back this week?
>
> On Jun 14, 2018, at 7:39 AM, Santoro, Christopher A (EOIR) <Christopher.Santoro@EOIR.USDOJ.GOV> wrote:
>
> > I just spoke with him. I will talk to you when you get back on Monday unless you need a definitive answer sooner than that. I think
> > (b)(5) DP [redacted]
> >
> > Christopher A. Santoro
> > Deputy Chief Immigration Judge
> >
> > On Jun 14, 2018, at 6:31 AM, Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV> wrote:
> >
> > > I feel like (b)(5) DP [redacted]
> > >
> > > Begin forwarded message:
> > >
> > > > **From:** "Sheehey, Kate (EOIR)" <Kate.Sheehey@EOIR.USDOJ.GOV>
> > > > **Date:** June 14, 2018 at 6:31:00 AM EDT
> > > > **To:** "Pryor, Holly (EOIR)"

**From:** Pryor, Holly (EOIR)
**To:** Sheehey, Kate (EOIR)
**Subject:** RE: IJ candidate Vance Spath
**Date:** Friday, June 15, 2018 3:21:30 PM

---

Hi there - sure thing and I'll follow-up once he and I have spoken.

Thanks,

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Friday, June 15, 2018 3:00 PM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

If you haven't already, would you let Mr. Spath know that, while we wish he could come on board in July, we understand and we look forward to seeing him in September.

-----Original Message-----
From: Pryor, Holly (EOIR)
Sent: Thursday, June 14, 2018 8:51 AM
To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

You're welcome! hope it's nice in San Fran!

Holly R. Pryor
Executive Office for Immigration Review (EOIR) Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Thursday, June 14, 2018 8:06 AM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: Re: IJ candidate Vance Spath

Ok, thank you!

> On Jun 14, 2018, at 8:01 AM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>
> Hi Kate,
>
> Mr. Spath has been called to active duty for work on a Guantanamo Bay case. Due to the need for him on the case he says that this is what has prevented him from coming on board with EOIR sooner.
>
> He has put in his retirement request in hopes to alleviate any more delays. In addition a Judge Advocate was

recently hired to take over his cases and has cleared.
>
> Mr. Spath feels very bad that our agency has had to wait for him to EOD, however, he stated that he has to complete the orders he has received.  If approved, he will work to EOD either early September or mid-October, whichever is approved.
>
> Thank you,
>
> Holly R. Pryor
> Executive Office for Immigration Review (EOIR) Human Resources
> Specialist
> 703-305-1171 (Work)
>
>
> -----Original Message-----
> From: Sheehey, Kate (EOIR)
> Sent: Thursday, June 14, 2018 6:31 AM
> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
> Cc: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Dalton, Kay
> (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette (EOIR)
> <Bridgette.Hill@EOIR.USDOJ.GOV>
> Subject: Re: IJ candidate Vance Spath
>
> He told us earlier that he was coming in July, is that no longer possible?  We've been counting on July for some time and already have a docket waiting for him.
>
>> On Jun 13, 2018, at 4:54 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>>
>> Hi Kate,
>>
>> I was able to connect with Mr. Spath.  He is still very interested in the job offer as an IJ with Arlington.  He has put in his retirement papers with the military and is hopeful with that being done he can EOD either early September or mid-October.  Please advise if this is agreeable and I will follow-up with Mr. Spath.
>>
>> Thank you,
>>
>> Holly R. Pryor
>> Executive Office for Immigration Review (EOIR) Human Resources
>> Specialist
>> 703-305-1171 (Work)
>>
>>
>> -----Original Message-----
>> From: Sheehey, Kate (EOIR)
>> Sent: Tuesday, June 12, 2018 5:10 PM
>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>> Subject: Re: IJ candidate Vance Spath
>>
>> Thank you!
>>
>>> On Jun 12, 2018, at 5:06 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>>>
>>> Hi Kate,
>>>
>>> I placed a call to Mr. Spath.  Waiting for him to return my call.  I also sent him an email to reach out and ask that he give me a call to discuss his EOD with EOIR as an Immigration Judge.
>>>

>>> I'll keep everyone posted.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:28 PM
>>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Thanks Holly. It's probably nothing... (b)(5) DP .
>>>
>>> -----Original Message-----
>>> From: Pryor, Holly (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:26 PM
>>> To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Hi Kate,
>>>
>>> I can reach out to Mr. Spath as a follow-up; however, when we last spoke in April he was confirmed to EOD in July. I'll follow-up and provide an update.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:24 PM
>>> To: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly
>>> (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: IJ candidate Vance Spath
>>>
>>> Have we spoken with him recently to confirm he’s really coming in July?

**From:** Santoro, Christopher A (EOIR)
**To:** Sheehey, Kate (EOIR)
**Subject:** Spath
**Date:** Friday, June 15, 2018 2:52:34 PM

---

Have add'l info on Spath. I recommend we go with Sep 2 vs July 8. I have stuff I can show you when you return if you need additional information for the boss.

Christopher A. Santoro

Deputy Chief Immigration Judge

**From:** Pryor, Holly (EOIR)
**To:** Sheehey, Kate (EOIR)
**Subject:** RE: IJ candidate Vance Spath
**Date:** Friday, June 15, 2018 3:21:30 PM

---

Hi there - sure thing and I'll follow-up once he and I have spoken.

Thanks,

Holly R. Pryor
Executive Office for Immigration Review (EOIR)
Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Friday, June 15, 2018 3:00 PM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

If you haven't already, would you let Mr. Spath know that, while we wish he could come on board in July, we understand and we look forward to seeing him in September.

-----Original Message-----
From: Pryor, Holly (EOIR)
Sent: Thursday, June 14, 2018 8:51 AM
To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

You're welcome! hope it's nice in San Fran!

Holly R. Pryor
Executive Office for Immigration Review (EOIR) Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Thursday, June 14, 2018 8:06 AM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: Re: IJ candidate Vance Spath

Ok, thank you!

> On Jun 14, 2018, at 8:01 AM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>
> Hi Kate,
>
> Mr. Spath has been called to active duty for work on a Guantanamo Bay case. Due to the need for him on the case he says that this is what has prevented him from coming on board with EOIR sooner.
>
> He has put in his retirement request in hopes to alleviate any more delays. In addition a Judge Advocate was

recently hired to take over his cases and has cleared.

>

> Mr. Spath feels very bad that our agency has had to wait for him to EOD, however, he stated that he has to complete the orders he has received.  If approved, he will work to EOD either early September or mid-October, whichever is approved.

>

> Thank you,

>

> Holly R. Pryor

> Executive Office for Immigration Review (EOIR) Human Resources

> Specialist

> 703-305-1171 (Work)

>

>

> -----Original Message-----

> From: Sheehey, Kate (EOIR)

> Sent: Thursday, June 14, 2018 6:31 AM

> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>

> Cc: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Dalton, Kay

> (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette (EOIR)

> <Bridgette.Hill@EOIR.USDOJ.GOV>

> Subject: Re: IJ candidate Vance Spath

>

> He told us earlier that he was coming in July, is that no longer possible?  We've been counting on July for some time and already have a docket waiting for him.

>

>> On Jun 13, 2018, at 4:54 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:

>>

>> Hi Kate,

>>

>> I was able to connect with Mr. Spath.  He is still very interested in the job offer as an IJ with Arlington.  He has put in his retirement papers with the military and is hopeful with that being done he can EOD either early September or mid-October.  Please advise if this is agreeable and I will follow-up with Mr. Spath.

>>

>> Thank you,

>>

>> Holly R. Pryor

>> Executive Office for Immigration Review (EOIR) Human Resources

>> Specialist

>> 703-305-1171 (Work)

>>

>>

>> -----Original Message-----

>> From: Sheehey, Kate (EOIR)

>> Sent: Tuesday, June 12, 2018 5:10 PM

>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>

>> Subject: Re: IJ candidate Vance Spath

>>

>> Thank you!

>>

>>> On Jun 12, 2018, at 5:06 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:

>>>

>>> Hi Kate,

>>>

>>> I placed a call to Mr. Spath.  Waiting for him to return my call.  I also sent him an email to reach out and ask that he give me a call to discuss his EOD with EOIR as an Immigration Judge.

>>>

>>> I'll keep everyone posted.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:28 PM
>>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Thanks Holly. It's probably nothing... (b)(5) DP [redacted].
>>>
>>> -----Original Message-----
>>> From: Pryor, Holly (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:26 PM
>>> To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Hi Kate,
>>>
>>> I can reach out to Mr. Spath as a follow-up; however, when we last spoke in April he was confirmed to EOD in July. I'll follow-up and provide an update.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:24 PM
>>> To: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly
>>> (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: IJ candidate Vance Spath
>>>
>>> Have we spoken with him recently to confirm he's really coming in July?

**From:** Santoro, Christopher A (EOIR)
**To:** Sheehey, Kate (EOIR)
**Subject:** Spath
**Date:** Friday, June 15, 2018 2:52:34 PM

---

Have add'l info on Spath. I recommend we go with Sep 2 vs July 8. I have stuff I can show you when you return if you need additional information for the boss.

Christopher A. Santoro

Deputy Chief Immigration Judge

**Pryor, Holly (EOIR)**

**From:** Pryor, Holly (EOIR)
**Sent:** Tuesday, June 19, 2018 7:52 PM
**To:** Giles, Naomi (EOIR)
**Subject:** FW: IJ candidate Vance Spath

Vance Spath is able to EOD on 9/2/18, however, like you were saying we need proof of his terminal leave. I did not send an updated email to Kate as he called not too long ago and did not want to confuse anything that you are following up on for me.

Thanks! :).

Ok --- I'm going home now :)

Holly R. Pryor
Executive Office for Immigration Review (EOIR) Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Friday, June 15, 2018 3:00 PM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

If you haven't already, would you let Mr. Spath know that, while we wish he could come on board in July, we understand and we look forward to seeing him in September.

-----Original Message-----
From: Pryor, Holly (EOIR)
Sent: Thursday, June 14, 2018 8:51 AM
To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>
Subject: RE: IJ candidate Vance Spath

You're welcome! hope it's nice in San Fran!

Holly R. Pryor
Executive Office for Immigration Review (EOIR) Human Resources Specialist
703-305-1171 (Work)

-----Original Message-----
From: Sheehey, Kate (EOIR)
Sent: Thursday, June 14, 2018 8:06 AM
To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
Subject: Re: IJ candidate Vance Spath

Ok, thank you!

> On Jun 14, 2018, at 8:01 AM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>
> Hi Kate,
>
> Mr. Spath has been called to active duty for work on a Guantanamo Bay case. Due to the need for him on the case he says that this is what has prevented him from coming on board with EOIR sooner.
>
> He has put in his retirement request in hopes to alleviate any more delays. In addition a Judge Advocate was recently hired to take over his cases and has cleared.
>
> Mr. Spath feels very bad that our agency has had to wait for him to EOD, however, he stated that he has to complete the orders he has received. If approved, he will work to EOD either early September or mid-October, whichever is approved.
>
> Thank you,
>
> Holly R. Pryor
> Executive Office for Immigration Review (EOIR) Human Resources
> Specialist
> 703-305-1171 (Work)
>
>
> -----Original Message-----
> From: Sheehey, Kate (EOIR)
> Sent: Thursday, June 14, 2018 6:31 AM
> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
> Cc: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Dalton, Kay
> (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette (EOIR)
> <Bridgette.Hill@EOIR.USDOJ.GOV>
> Subject: Re: IJ candidate Vance Spath
>
> He told us earlier that he was coming in July, is that no longer possible? We've been counting on July for some time and already have a docket waiting for him.
>
>> On Jun 13, 2018, at 4:54 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>>
>> Hi Kate,
>>
>> I was able to connect with Mr. Spath. He is still very interested in the job offer as an IJ with Arlington. He has put in his retirement papers with the military and is hopeful with that being done he can EOD either early September or mid-October. Please advise if this is agreeable and I will follow-up with Mr. Spath.
>>
>> Thank you,
>>
>> Holly R. Pryor
>> Executive Office for Immigration Review (EOIR) Human Resources
>> Specialist
>> 703-305-1171 (Work)
>>
>>
>> -----Original Message-----

>> From: Sheehey, Kate (EOIR)
>> Sent: Tuesday, June 12, 2018 5:10 PM
>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>> Subject: Re: IJ candidate Vance Spath
>>
>> Thank you!
>>
>>> On Jun 12, 2018, at 5:06 PM, Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV> wrote:
>>>
>>> Hi Kate,
>>>
>>> I placed a call to Mr. Spath. Waiting for him to return my call. I also sent him an email to reach out and ask that he give me a call to discuss his EOD with EOIR as an Immigration Judge.
>>>
>>> I'll keep everyone posted.
>>>
>>> Thank you,
>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:28 PM
>>> To: Pryor, Holly (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Thanks Holly. (b)(5) DP
(b)(5) DP
>>>
>>> -----Original Message-----
>>> From: Pryor, Holly (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:26 PM
>>> To: Sheehey, Kate (EOIR) <Kate.Sheehey@EOIR.USDOJ.GOV>; Giles, Naomi
>>> (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: RE: IJ candidate Vance Spath
>>>
>>> Hi Kate,
>>>
>>> I can reach out to Mr. Spath as a follow-up; however, when we last spoke in April he was confirmed to EOD in July. I'll follow-up and provide an update.
>>>
>>> Thank you,

>>>
>>> Holly R. Pryor
>>> Executive Office for Immigration Review (EOIR) Human Resources
>>> Specialist
>>> 703-305-1171 (Work)
>>>
>>>
>>> -----Original Message-----
>>> From: Sheehey, Kate (EOIR)
>>> Sent: Tuesday, June 12, 2018 4:24 PM
>>> To: Giles, Naomi (EOIR) <Naomi.Giles@EOIR.USDOJ.GOV>; Pryor, Holly
>>> (EOIR) <Holly.Pryor@EOIR.USDOJ.GOV>
>>> Cc: Dalton, Kay (EOIR) <Kay.Dalton@EOIR.USDOJ.GOV>; Hill, Bridgette
>>> (EOIR) <Bridgette.Hill@EOIR.USDOJ.GOV>
>>> Subject: IJ candidate Vance Spath
>>>
>>> Have we spoken with him recently to confirm he's really coming in July?

**Attachment B**
Col Vance Spath, USAF, Application Materials (Nov. 19, 2015) (excerpts)

B-1

VANCE H. SPATH

19 November 2015

U. S. Department of Justice
Executive Office for Immigration Review
Human Resources Staff, Administration Division
ATTN: Mr. Josh Chapman
5107 Leesburg Pike, Suite 2300
Falls Church, Virginia 22041

Dear Mr. Chapman,

Attached please find my application materials for the vacancy announcement for an Immigration Judge position. As the Chief Trial Judge of the Air Force, I have presided over bench and jury trial in cases ranging from capital murder, to violent assaults, to sexual assault. I am currently presiding over two active capital cases. I have five years of experience as a trial judge, and another 15 years of extensive experience as either a prosecutor or a criminal defense counsel.

In addition to my significant judicial and litigation experience, I have a significant degree of experience in managing high volume litigation, managing large offices of legal personnel, and handling complex civil litigation.

I would welcome the opportunity to discuss whether my judicial, litigation, and management background would be of interest to EOIR.

Sincerely,

SPATH.VANCE.HUDSON.1013673990 Digitally signed by SPATH.VANCE.HUDSON.1013673990 DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=USAF, cn=SPATH.VANCE.HUDSON.1013673990 Date: 2015.11.20 07:38:34 -05'00'

VANCE H. SPATH

**QUALITY RANKING FACTORS**

I have addressed all five of the Quality Ranking Factors.

**1. Ability to demonstrate the appropriate temperament to serve as a judge.**

I have four years' experience as a trial judge. I have demonstrated the appropriate temperament to serve as a judge throughout my time on the bench.

As the Chief Trial Judge of the Air Force (AF), prior Chief Regional Military Judge for the AF's Pacific Judicial Region, and a Regional Trial Judge in the AF's Western Judicial Region, I have presided over more than 240 felony and misdemeanor trials throughout the world. This has included approximately 120 jury trials. The remainder of the trials were judge alone (bench) trials. Throughout these three assignments, my supervisors, who are either judges senior to me, or in my current job, The Judge Advocate General of the Air Force (the top ranking lawyer in the Air Force); have all recognized and commented on my temperament as a trial judge.

Specifically, my judicial performance evaluations include the following comments from them:

- #1/8 O-6 (Colonel) judges.
- Meticulously crafted rulings in 48 pretrial motions; 300+ pages of wisely written decisions protecting both Airmen and the Air Force
- Esteemed jurist in complete control of his courtroom.
- Conscientiously guarded accused's rights and the needs of the Air Force
- Won Major General William Suter Distinguished Judicial Service Award

Needless to say, every decision a trial judge makes requires the exercise of a high degree of discretion. Discretion meaning both a wise interpretation of the law and the actual language used in issuing the ruling. The language and conduct of any judge is always critical. A judge needs to have the perfectly balanced temperament, actual impartiality, and the appearance of complete impartiality. I have a significant record of demonstrating that temperament throughout my time as a judge. I believe all of the letters of recommendation provide significant information regarding my temperament. It is a record of which I am not only proud but diligently work to ensure continues.

During my time as a trial judge, I have presided over a capital murder trial, with significant media interest. The trial was held in Japan, ultimately resulting in a plea bargain, and judge alone sentencing proceeding. My conduct in that trial, in an international environment, required the demonstration of perfect judicial temperament. My supervisor, commenting specifically on that trial in my performance review stated, "Vance's leadership and wisdom protected trial process."

Currently, I am the presiding judge for both a current capital murder trial for an AF member and the military commissions proceedings for the alleged "Cole bombing" mastermind at Guantanamo Bay, Cuba. For both cases, I was handpicked by the top lawyer of the Air Force to be the trial judge. The case at Guantanamo Bay, Cuba, has significant media and federal

government interest, and it again requires the constant demonstration of the appropriate judicial temperament. Hopefully, the recommendation letter submitted by the attorney-advisor who works with me on that case provides the evidence of my temperament.

I have also presided over close to 100 sexual assault trials, and another 50+ trials involving other violent crimes. These highly emotional events require a trial judge who has the demeanor and temperament required to ensure the proceeding is conducted with the appropriate decorum, while at the same time maintaining control of the courtroom. Again, the recommendation letters submitted by people who have seen me in and around the courtroom show my long history of demonstrating the appropriate and required temperament of a judge.

**2. Knowledge of immigration laws and procedures**

I am familiar with the Immigration and Nationality Act, the policies and procedures of EOIR and the immigration courts, and the conduct of master calendar and individual calendar hearings before immigration judges. I have attended a few immigration hearings in the Alexandria, VA area.

Currently I am presiding over the military commission case involving the alleged mastermind behind the Cole bombing. While this does not necessarily relate to immigration law and procedures directly, it does require a mastery of complex international law and procedure. It also has required me to issue rulings related to a host of constitutional issues, including the application of the constitution at Guantanamo Bay, Cuba, and the protections an illegal combatant enjoys under US law.

Additionally, the Air Force has a small population of non-citizens on active duty. They are all first term Airmen. When they are brought to trial, the trial judge is required to engage in a colloquy with them regarding potential adverse impacts on their immigration status a conviction will have on them. I am responsible for ensuring the trial judges who work for me understand and provide this required advice, and I have to ensure I do as well in my courtroom.

**3. Substantial litigation experience, preferably in a high volume context.**

I have the following substantial litigation experience, including experience in a high-volume context:

Currently, I am the Chief Trial Judge of the Air Force (AF). I have been in this position for over one and a half years. In this position, I am responsible for docketing and detailing 26 trial judges to approximately 500 trials annually across the AF, the day to day management of the entire AF judiciary, the supervision of 26 trial judges and 4 support personnel, and the oversight of a travel budget in excess of $1M dollars annually. At the same time, I manage my own substantial trial docket; this typically includes approximately 15 - 20 active felony level trials, and currently, two active capital cases. I am currently the presiding trial judge for the Air Force's only current capital murder case, while at the same time presiding over the Cole bombing case at Guantanamo Bay, Cuba.

As a trial judge, I am continually required to make factual determinations, interpret the law and regulations, draft and issue rulings, instruct juries, determine the guilt or innocence of criminal defendants, and issue sentences for convicted criminal defendants. At the same time, I handle all of the administrative and management responsibilities required to lead the AF Trial Judiciary.

For two years I was the Chief Regional Trial Judge for the AF's Pacific Judicial Circuit. In that position, I was responsible for management, oversight, and ultimately the trial of all courts within that circuit. Although there is only one judge assigned to this circuit, it is the largest geographic circuit in the AF. During those two years, I presided over 86 felony and misdemeanor trials, issued 126 rulings comprised of over 720 pages of legal writing, reviewed 11,000 pages of records of trial, and traveled over 470,000 miles to try criminal cases.

For one year, I was a Regional Trial Judge for the Air Force's Western Judicial Circuit. In that year, I presided over 42 trials, reviewed 2,000 pages of records of trial, and issued 48 pretrial rulings which were comprised of 300 pages of written decisions.

For three years I was the Chief Prosecutor for the Eastern Circuit of the Air Force Judiciary. Geographically, this circuit covered 18 states and 26 Air Force bases. Each year, that circuit tried approximately 240 cases. I was responsible for supervising five senior prosecutors, personally trying 4-6 cases per month, and detailing the senior prosecutors to their trials. My responsibilities also included the training of all prosecutors, approximately 75, within that region.

**4. Experience handling complex legal issues.**

Throughout my career I have significant experience handling complex legal issues.

Hopefully, a few examples will demonstrate this ability.

As a trial judge, I am routinely confronted with complex and/or novel legal theories requiring that I become fully knowledgeable about those issues before rendering judgment. The cases over which I presided frequently involved factual scenarios that required application of Fourth and Fifth Amendment Constitutional analysis, an area of the law that is both complex and evolving. I have successfully dealt with complex legal issues – both on the bench and as a litigant – including psychology, psychiatry, false confessions and suggestibility, computer forensics, pathology, rape trauma syndrome, post-traumatic stress syndrome, and victimization, and have successfully applied that knowledge to my judicial rulings or my jury presentations.

As the presiding judge over the alleged Cole bombing mastermind at Guantanamo Bay, Cuba, I have had to demonstrate the ability to handle a complicated trial involving international terrorism. I have had to learn and master appropriate international law, the law of war, and the law related to military commissions. I have also had to review and comprehend over 450,000 pages of discovery, evidence, and motions. I have already issued over 300 rulings in the case, on issues ranging from residual hearsay, torture, interrogation, classified evidence, treatment of illegal noncombatants, and international agreements. The reference letter submitted by Fred Taylor, the attorney-advisor on this case, highlights the complexity of this case. A quote from that letter provides context: "In my opinion this is the second most complex capital case in U.S. history, only the ongoing five accused, joint, capital charged Military Commission case involving the alleged planners of the September 11, 2001 attack is more complicated."

As a contract trial attorney, I defended the Air Force against multi-million dollar claims filed by various defense contractors. These lawsuits involved complex legal issues related to procurement law and the intricate Defense Federal Acquisition Regulation Supplement. These claims against the Air Force were document intensive, sometimes in excess of 100,000 pages of evidence and submissions to the Armed Services Board of Contract Appeals. I had to analyze the issues presented, assimilate the thousands of pages of information, present evidence at an administrative hearing, and then write and file a lengthy post-hearing brief addressing the issues.

**5. Experience conducting administrative hearings.**

I have significant experience both in conducting administrative hearings and practicing before an administrative law judge.

During my career, I have conducted approximately 25 adversarial administrative hearings related to the removal of Air Force members, administratively, from the Air Force. These hearings required that I made findings of fact and conclusions of law; ruled on evidence admissibility; apply and interpret Air Force Instructions and statutes; document production and discovery; schedule hearings; and order production of witnesses.

When handling these hearings, understanding and applying the applicable administrative procedure was critical. Conducting these administrative hearings also required me to deal with administrative panels, panel selection, and demonstrate control of and provide decorum for the administrative hearing room.

I served as a contract trial attorney for two years. In this role, I represented the Air Force in all facets of complex civil litigation before the Armed Services Board of Contract Appeals (ASBCA). I was responsible for a caseload of between 15-20 multi-million dollar claims against the Air Force by contractors or vice versa. I prepared all submissions to the ASBCA including, pleadings, motions, and complex and lengthy post-trial briefs. In the two years as a contract trial attorney, I appeared before an administrative law judge on approximately 25 different occasions in either full blown ASBCA hearings or some form of alternative dispute resolution forum.

**6. Knowledge of judicial practices and procedures.**

As the Chief Trial Judge of the Air Force, former Chief Regional Military Judge, Regional Military Judge, chief and senior prosecutor and defense counsel, I have a strong knowledge of judicial practices and procedures. My criminal practice has been in the military which gives me an excellent understanding of the Federal Rules of Evidence, evidentiary foundation requirements, criminal procedure, and courtroom practice.

As a trial judge, I have presided over 240 felony- and misdemeanor-equivalent bench and jury trials throughout the world. In presiding over those trials, I have: conducted motion and evidentiary hearings; made findings of fact and conclusions of law; ruled on motions concerning admissibility of evidence, constitutionality of statutes, constitutionality of rules of evidence, document production and discovery, witness production and depositions, protective orders, trial scheduling, venue, continuances, pretrial confinement, and search and seizure; interpreted and applied the rules of evidence; conducted jury selection; instructed juries on the law; exercised control over the courtroom, to include control over the parties and the order and manner of the presentation of evidence; determined whether a defendant was guilty or not guilty; and imposed sentences on those found guilty.

In addition to both presiding over and trying criminal cases over the last 23 years, I have been hand-selected to teach at a variety of courses on a variety of topics related to judicial practice and procedure. I have taught at the Air Force JAG School as an adjunct faculty member over 100 different times, covering subject matter such as impeachment, closing argument, opening statement, voir dire, cross-examination, direct examination, application of the rules of evidence, trial procedure, view from the bench, and evidentiary foundations.

As a prosecutor and defense counsel, I tried over 300 cases. The vast majority of these were felony trials. I have tried over 100 sexual assault cases, a capital case, seven other murder or attempted murder cases, and approximately 11 complex fraud cases. A few comments from my supervisors will demonstrate my knowledge of judicial practices and procedures: "1/34 JAGs," One of AF's premier trial advocates," "Finest litigator I have ever served with," and "Tremendous combination of leadership/litigation skills—the best of any JAG observed in my 17+ year career!"



DEPARTMENT OF THE AIR FORCE
AIR FORCE COURT OF CRIMINAL APPEALS
WASHINGTON, D.C.

12 Nov 15

United States Department of Justice
Executive Office for Immigration Review
5107 Leesburg Pike, Suite 2300
Falls Church, VA 22041

Colonel Mark L. Allred
USAF/JAH
1500 West Perimeter Road, Suite 1900
Joint Base Andrews Naval Air Facility (JBNAF), MD 20762

Dear Ma'am/Sir,

I cannot imagine how you could find a finer candidate for an Immigration Judge than Colonel Vance Spath. I know his reputation, his work ethic, his career history, and his ability – and he would be perfect for the job.

I served as a criminal trial judge for nine years, culminating as the Chief Trial Judge of the Air Force from 2010-2014. In 2014, I was selected Chief Judge of the Air Force Court of Criminal Appeals, a position I hold today. I strongly recommended to my boss, The Judge Advocate General of the Air Force, that Vance take over as the 13th Chief Trial Judge of the Air Force. My boss and I agreed there could not possibly have been a better candidate. Vance was selected and has served tremendously.

While I was the Chief Trial Judge, Vance worked for me. He served as one of my Chief Regional Judges. His performance was absolutely second to none. During the two years that I supervised him I considered him the very best of more than 20 trial judges. As Chief Appellate Judge, I continue to oversee his work. His command of the courtroom is superb. His mastery of the law is evident in his every ruling. His demeanor is perfect – exactly what is hoped for in a trial judge. He treats all who appear before him and work around him with the utmost dignity and respect. He follows the law – zealously. He teaches, trains, and mentors counsel at courses and events across the Air Force, and the reviews he receives from this service are always exceptional.

I truly cannot conceive of anyone better suited for a position as an Immigration Judge. In writing this, I know you are looking for comments on integrity, attitude, and demeanor. Hopefully, the above give you some idea how highly I think of Vance. He has the attributes you seek – in abundance. I would never have recommended him to become the Chief Trial Judge of the Air Force if I thought otherwise. He has excelled as the Chief, and, frankly, that is no surprise given his exceptional career. He will do great things for your agency, and you will not be disappointed in the least if you choose to hire him.

Please feel free to contact me (b)(6) ) with any questions.

Sincerely,

MARK L. ALLRED, Colonel, USAF
Chief Appellate Military Judge

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ABD AL RAHIM HUSSAYN MUHAMMAD AL NASHIRI** | **AE 332U**<br><br>**ORDER**<br><br>**DEFENSE MOTION TO DISMISS FOR UNLAWFUL INFLUENCE AND DENIAL OF DUE PROCESS FOR FAILURE TO PROVIDE AN INDEPENDENT JUDICIARY**<br><br>**4 MARCH 2014** |

1. The Accused is charged with multiple offenses in violation of the Military Commissions Act of 2009, 10 U.S.C. §§ 948 *et seq.*, Pub. L. 111-84, 123 Stat. 2574 (Oct. 28, 2009) (hereafter MCA of 2009). He was arraigned on 9 November 2011.

2. The Defense filed AE 332 alleging the Convening Authority, Mr. Vaughn Ary, unlawfully influenced the military judges of the military commission trial judiciary in violation of 10 U.S.C. § 948b by having the Deputy Secretary of Defense (DEPSECDEF), the Honorable Robert O. Work, change paragraph 6-2 of the Regulation for Trial by Military Commission (April 2011 Edition) (R.T.M.C.) to "make military commissions the exclusive duty of the military judges assigned to the trial judiciary and, moreover, directing that they 'shall be issued assignment orders for duty at the venue where the military commissions are to be convened." (AE 332 at 3-4). The Defense requested "the charges and specifications be dismissed with prejudice. In the alternative, the defense requests abatement of proceedings until such time as the Department of Defense establishes an independent trial judiciary for the military commissions as required by the Military Commissions Act of 2009." (AE 332 at 1). The Prosecution response (AE 332A) argued Change 1 to the R.T.M.C. is not an example of unlawful influence. The Defense reply

**Attachment C**
Col Vance Spath, Curriculum Vitae (undated)

VANCE H. SPATH (b)(6)

(b)(6)

## PROFESSIONAL SUMMARY

Twenty-three years of complex litigation and judicial experience. Trial judge for 4+ years, handling over 240 trials, including three death penalty cases. Prosecutor and defense counsel for 12 years, trying over 300 cases, to include a death penalty trial, and many homicide, sexual assault, felony, and complex fraud trials. Complex civil litigation experience. Multiple leadership positions, responsible for managing high volume criminal dockets, and large numbers of office staff/personnel. Responsible for multi-million dollar budgets.

## PROFESSIONAL EXPERIENCE

**Chief Trial Judge Of the Air Force** — U. S. Air Force, Joint Base Andrews, MD (April 2014 – present)

Responsible for operation of Air Force (AF) Trial Judiciary to include its 26 trial judges. AF's senior jurist for tribunals and criminal trials worldwide. Vested with independent authority to issue final, binding decisions on criminal, evidentiary, and procedural issues. Managed annual criminal court docket of 500+ federal criminal trials. Presided over 30+ felony federal criminal trials each year, to include capital litigation. Overseas travel and operational budget of $1.8 million per year. Handpicked to preside over Cole bombing case at Guantanamo Bay, Cuba.

**Director, Training & Readiness** — U. S. Air Force, Joint Base Andrews, MD (July 2013 – April 2014)

Selected by AF's top lawyer to inspect all legal operations across the service. Guaranteed uniform delivery of legal services AF-wide. Provided maximum efficiency to legal operations annual $6M budget. Ensured criminal prosecutions conducted in professional, just, competent, civil manner. Ensured administrative processing of federal convictions appropriately processed. Provided critical training to all trial participants, to include prosecutors, defense counsel, and paralegals.

**Staff Judge Advocate** — U. S. Air Force, Joint Base Andrews, MD (July 2012 – July 2013)

Led 48 person office providing legal support to AF's premier base, provided advice and guidance across spectrum of legal practice. Responsible for prosecution of over 40 felony trials, including allegations of rape, murder, robbery, and assault. Supervised complex and high-profile criminal investigations involving federal and local investigative agencies. Guided $55M in contract action and successfully defeated a $1M claim against AF.

**Chief Regional Military Judge Pacific Judicial Region** — U.S. Air Force, Kadena Air Base, Japan (July 2010 – July 2012)

Led AF's largest geographic judicial region. Responsible for all criminal trials conducted throughout region; to include docketing, case management orders, training, and discovery oversight. Personally presided over 65 felony trials, to include a capital murder case, numerous sexual assault and child pornography cases. Instructed juries, issued rulings, ruled on objections, and adjudged federal convictions and imposed federal sentences. Federal judicial duties extended to all uniformed DoD personnel.

**Regional Military Judge**                             U. S. Air Force, Travis Air Force Base, CA
**Western Judicial Region**                                            (July 2009 – July 2010)

Presided over 85 felony and misdemeanor federal criminal trials.  Applied and interpreted the Federal Rules of Evidence, the United States Code, and all applicable laws and regulations.  Instructed juries on the law.  Ruled on motions and objections.  Adjudged federal convictions and imposed federal sentences.

**Staff Judge Advocate**                             U. S. Air Force, F. E. Warren Air Force Base, WY
                                                                         (July 2006 – July 2009)

Led 25 person legal office providing legal services to 4,800 people.  Responsible for prosecution of 78 felony and misdemeanor courts.  Worked directly with Internet Crimes Against Children, WY, the U.S. Attorney Office for the District of Wyoming, and other federal and local investigative agencies investigating and prosecuting internet and physical crimes against children.  Recipient of Federal Child Defender Award.

**Chief Circuit Trial Counsel (Prosecutor)**            U.S. Air Force, Bolling Air Force Base, MD
**Eastern Judicial Region**                                            (July 2004 – July 2006)

Chief Prosecutor for high-visibility and complex felony trials across 23 Air Force Bases located along the Eastern seaboard.  Oversaw 400+ trials, provided guidance, developed trial strategy, detailed prosecutors, managed travel budget, developed and provided litigation training for prosecutors throughout circuit, First chair on capital murder prosecution leading to death penalty sentence.  First chair on 128 felony trials conducting motion practice, voir dire, opening statements, direct exams, cross-exams, closing argument, and sentencing proceedings.

**Deputy Staff Judge Advocate,**                        U.S. Air Force, Shriever Air Force Base, CO
**And Prosecutor**                                                     (July 2001 – July 2004)

Lead prosecutor for 15 felony trials.  Responsible for all aspects of criminal prosecution for a base with a total population of approximately 4,000 people.  Responsible for reviewing over one billion dollars in contract actions and resolving bid protests in excess of $400M.

**Contract Trial Attorney**                         U.S. Air Force, Wright-Patterson Air Force Base, OH
                                                                         (July 1998 – July 2000)

Represented the Air Force in complex civil litigation hearings before the Armed Services Board of Contract Appeals (ASBCA).  Personally handled a caseload of 30-40 multi-million dollar defense contractor claims asserted against the Air Force.  Prepared submissions to the ASBCA, to include pleadings, motions, and complex multi-issue post-trial briefs, engaged in full range pre-trial discovery practice, conducted direct and cross-examination during trial, and resolved cases using a variety of alternative dispute resolution techniques.

**Circuit Trial Counsel (Prosecutor)**                 U.S. Air Force, Randolph Air Force Base, TX
**Central Judicial Region**                                            (July 1995 – July 1998)

Prosecuted 75 criminal felonies and misdemeanors in trials before either a jury or judge.  Responsible for all aspects of trial practice, to include pre-trial discovery, charging decisions, pre-trial hearings, direct and cross-examinations, voir dire, opening statements, and closing arguments.  First chair on trials involving murder, sexual assault, child exploitation, and fraud.  Trial region covered 25 Air Force bases throughout the central United States.

**Area Defense Counsel**                            U.S. Air Force, Ramstein Air Force Base, Germany
                                                                         (April 1994 – July 1995)

Provided military defense services to a base population exceeding 9,600 people.  Represented accused in criminal trials, interrogation situations, pretrial confinement hearings, and all other adverse proceedings they faced.  Defended criminal defendants in 25 jury or bench trials.

**Base Prosecutor**                         U.S. Air Force, Ramstein Air Force Base, Germany
                                                              (July 1993 – April 1995)

    Served as lead and second chair prosecutor on 80 criminal trials, conducting all aspects of pre-trial and trial practice.  Handled multiple child sexual abuse, sexual abuse, assault, and fraud trials.

## EDUCATION

LL.M., The Army Judge Advocate General's School  (2001)
Juris Doctor, Quinnipiac University  (1991)
Bachelor of Arts, Political Science, Virginia Wesleyan College  (1987)

## BAR ADMISSIONS

Supreme Court of the United States
New York, All Court Levels
United States Court of Appeals for the Armed Forces
United States Air Force Court of Criminal Appeals

**Attachment D**
Memorandum for the Attorney General (May 18, 2018)



D-1

4036925.RN2

**U.S. Department of Justice**

Executive Office for Immigration Review

*Office of the Director*

---

Director

*5107 Leesburg Pike, Suite 2600*
*Falls Church, Virginia 22041*

May 18, 2018

MEMORANDUM FOR THE ATTORNEY GENERAL

THROUGH: THE DEPUTY ATTORNEY GENERAL ZB for RJR 6.4.18

FROM: James R. McHenry III KHR for JRM
Director

SUBJECT: Permanent Appointment of Vance H. Spath as an Immigration Judge in the Arlington Immigration Court

PURPOSE: To refer to the Attorney General for his consideration the paperwork to permanently appoint Vance H. Spath as an immigration judge.

TIMETABLE: At the Attorney General's earliest convenience.

DISCUSSION: On September 23, 2016, then Attorney General Loretta E. Lynch tentatively selected Vance H. Spath to serve as an immigration judge. On March 20, 2017, Attorney General Session signed an order temporarily appointing Mr. Spath as an immigration judge position, not to exceed 14 months, pending a background investigation.[1] Mr. Spath's background investigation has now been completed and adjudicated, and there is no derogatory information that would preclude him from being permanently appointed to this position.

---

1 The signed/approved Temporary Appointment memo/order (*see* WF 3796084) stated, By the authority vested in me as the Attorney General by 8 U.S.C. § 1103(g)(1), I hereby appoint Vance H. Spath as an Immigration Judge, defined in 8 U.S.C. § 1101(b)(4), for a period not to exceed 14 months. This order shall be effective on the first day of the pay period in which the oath of office is taken. Subsequent to that memo, however, Mr. Spath did not enter on duty due to a lengthy military commitment to which he was assigned while waiting for his Executive Office for Immigration Review paperwork. The military commitment will be complete this month and, now that the background investigation is complete, we recommend Mr. Spath enter on duty with a permanent appointment.

Mr. Spath is an excellent candidate for an immigration judge position. Mr. Spath has significant experience presiding over trials, and is, to quote one of his interviewers, "a seasoned advocate in complex areas of law" and a "seasoned judge who has a plethora of judicial experience." Although Mr. Spath does not have significant immigration experience, he has presided over cases involving many complex issues, including areas of international law and procedure, highly sensitive and emotional issues such as proceedings involving sexual assault or violent crimes, as well as complex Fourth and Fifth Amendment Constitutional cases.

Mr. Spath is a chief trial judge with the United States Air Force, Joint Base Andrews, Maryland. Mr. Spath has served in this position since April 2014. While chief trial judge, Mr. Spath was responsible for the operation of the Air Force Trial Judiciary, including its 26 trial judges. He served as the Air Force's senior jurist for tribunals and criminal trials worldwide, and was vested with independent authority to issue final, binding decisions on criminal, evidentiary, and procedural issues. Mr. Spath managed an annual criminal court docket of more than 500 federal criminal trials, and presided over more than 30 felony federal criminal trials each year, to include capital litigation.

Prior to serving as the chief trial judge, Mr. Spath served as director of training and readiness from July 2013 to April 2014, and from July 2012 to July 2013, he served as staff judge advocate. Mr. Spath has served in the United States Air Force since 1993 and has held a variety of other positions. He served as a chief regional military judge in the Pacific Judicial Region, Kadena Air Base, Japan, from July 2010 to July 2012, a regional military judge in the Western Judicial Region, Travis Air Force Base, California, from July 2009 to July 2010, a staff judge advocate, F.E. Warren Air Force Base, Wyoming, from July 2006 to July 2009, a chief circuit trial counsel in the Eastern Judicial Region, Bolling Air Force Base, Washington, D.C. from July 2004 to July 2006, a deputy staff judge advocate and prosecutor, Shriever Air Force Base, Colorado, from July 2001 to July 2004, a contract trial attorney, Wright-Patterson Air Force Base, Ohio, from July 1998 to July 2000, a circuit trial counsel/prosecutor, in the Central Judicial Region, Randolph Air Force Base, Texas, from July 1995 to July 1998, and an area defense counsel, Ramstein Air Force Base, Germany, from April 1994 to July 1995.

Mr. Spath holds a Bachelor of Arts degree from Virginia Wesleyan College, Norfolk, Virginia, and a J.D. from Quinnipiac University, Hamden, Connecticut.

Until one year from the date of his entry on duty. Mr. Spath will be subject to removal from his newly-appointed position, without regard to many of the procedural requirements and appeal procedures specified in 5 U.S.C. Chapters 43 and 75 and 5 C.F.R. Parts 432 and 752, if he has performance problems or engages in misconduct.

Mr. Spath's selection for this immigration judge position was made in accordance with the immigration judge hiring procedures approved on April 2, 2007.

An Attorney General Order, permanently appointing Mr. Vance H. Spath as an immigration judge, is attached hereto for signature.

RECOMMENDATION: That the Attorney General sign the attached order.

APPROVE: [signature]
Date: June 6, 2018

Concurring components:

OLC [signature] 6/7/18

OARM [signature] 5/29/18

DISAPPROVE: ____________________

Nonconcurring components:

None

OTHER: ____________________

Attachment

**Attachment E**
*United States v. Mohammed*, AE555WW (Sept. 27, 2018) (excerpts)

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**KHALID SHAIKH MOHAMMAD; WALID MUHAMMAD SALIH MUBARAK BIN 'ATTASH; RAMZI BINALSHIBH; ALI ABDUL AZIZ ALI; MUSTAFA AHMED ADAM AL HAWSAWI** | **AE 555WW (GOV)**<br><br>**Government Written Memorialization of Its Intended Oral Argument**<br><br>27 September 2018 |

**1. Timeliness**

Pursuant to the Commission's order, the Prosecution timely files this written memorialization of its intended oral argument.

**2. Relief Sought**

The Prosecution respectfully requests that this Commission deny the Defense's request for testimony from Mr. Rishikof and Mr. Castle; deny the Defense's request for testimony from additional witnesses and for further discovery; and deny the Defense motion to dismiss for unlawful influence (AE 555 (AAA)), including their motion for a legal ruling that the Defense has produced "some evidence" of unlawful influence.

**3. Intended Oral Argument**

Over the last seven months, the Defense has had ample time and opportunity to collect information to substantiate their claim of unlawful influence. LT Newman's investigation is proof of this. Leveraging declarations from the Secretary of Defense ("SecDef"), the then-Acting General Counsel ("AGC"), Mr. Rishikof, and Mr. Brown, as well as substantial discovery that has already been produced, LT Newman examined hundreds of pages of internal Coast Guard emails and spoke with over 15 individuals, including senior-level government officials such as the former White House Counsel, the former Deputy Secretary of Defense, a Navy

Admiral, a Coast Guard Admiral, and Congressional staff. LT Newman also testified for over four hours, was examined by three defense attorneys, and was cross-examined by the Prosecution. After LT Newman's extensive testimony, Ms. Bormann then placed the reports of the entire inquiry conducted at Mr. Connell's behest into the record as AE 555SS (WBA). None of this information, even if assumed to be true despite the one-sided nature of its collection, amounts to "some evidence" of actual or apparent unlawful influence. And because LT Newman simply recounted what many of the most important witnesses would say, it is unnecessary to call them, or any other witnesses, to testify. While the Defense furnishes many details regarding what, in the end, were DoD personnel actions, none of the evidence establishes even a whiff of unlawful influence sufficient to justify further testimony or discovery.

Solely for purposes of AE 555, the Commission should consider LT Newman's testimony as to what others would say, as well as the reports in the record at AE 555SS (WBA), as evidence. In lieu of calling further witnesses, the Commission should also assume that the individuals interviewed by LT Newman would testify on Defense direct examination consistent with his reports. If the Commission does so, the Prosecution realizes it would forego the opportunity to cross-examine those witnesses, including those who gave one-sided accounts to LT Newman so as to justify their own actions. These stipulations for purposes of AE 555 compel immediate denial of the motion and its various offshoots, since not a single word uttered during LT Newman's testimony, or printed on any of the documents, constitutes any evidence of unlawful influence. As the Prosecution has explained at length in prior briefs, *see* AE 555A (GOV), AE 555I (GOV), AE 555P (GOV), AE 555T (GOV), AE 555DD (GOV), AE 555EE (GOV), AE 555HH (GOV), the Defense's factual allegations do not constitute unlawful influence as a matter of law because neither SecDef nor the AGC, in removing Messrs. Rishikof and Brown from their positions, attempted "to coerce or, by any unauthorized means, influence" them, or anyone else, "with respect to their judicial acts." *See* 10 U.S.C. § 949b(a)(2). Nor can the Defense point to any evidence of actual unlawful influence, or that what occurred in the termination placed an "intolerable strain" on the public's perception of military justice such that

"an objective, disinterested observer, fully informed of all the facts and circumstances, would harbor a significant doubt about the fairness of the proceeding." *United States v. Boyce*, 76 M.J. 242, 248, 251 (C.A.A.F. 2017).

Notwithstanding sworn declarations from the Secretary and the AGC confirming that Messrs. Rishikof and Brown were removed due to repeated failures to coordinate properly, especially on matters that concern other Department components, the Defense claims that the stated reasons for Messrs. Rishikof's and Brown's removal were unjustified and thus a pretext. According to the Defense, the true reason for the termination of Messrs. Rishikof and Brown was disagreement over the Convening Authority's "independent legal strategy," including whether to entertain pre-trial agreements with the Accused. As the Prosecution has already exhaustively shown, however, this Defense theory is speculative and does not withstand scrutiny. *See* AE 555DD (GOV). With respect to pretrial agreements in particular, the Defense is unable to point to any evidence that SecDef, the AGC, or any other Department leader directed or encouraged Messrs. Rishikof or Brown not to engage in plea negotiations or even expressed disagreement or concern with doing so.[1] *Id*. at 24–26. There simply is no evidence that anyone sought to influence the Convening Authority's consideration of pretrial agreements.

Nothing in LT Newman's testimony undermines this conclusion. If anything, the overwhelming evidence from the Defense's own investigation reveals that Messrs. Rishikof's and Brown's lack of proper coordination, as described in the SecDef's and AGC's declarations, was indeed the real reason for their removal and that this reason was wholly justified. The documents in the record, and much of the Defense's own evidence, show that for almost all of 2017, and into late January 2018, the Convening Authority cared little for established protocol,

[1] As the Prosecution previously explained, the Attorney General's comments do not constitute *unlawful* influence because the Convening Authority was obligated to consult with the Attorney General on this issue and did so. It cannot be unlawful influence, then, for the Attorney General to express a view. The important point is that no one with authority over the Convening Authority made any attempt to discourage him from exercising his independent judgment to accept or reject a pretrial agreement with the Accused. AE 555DD (GOV) at 24–26.

formal coordination, and the limitations place on them by the Regulation for Trial by Military Commission.

In sum, SecDef had the authority to relieve Mr. Rishikof, and he did so in such a way that was lawful and did not cause any appearance of unlawful influence. Consistent with the guidance provided to Commanders by the Army Judge Advocate General's Legal Center and School, the SecDef reached down and took current cases from one subordinate convening authority, and gave the cases to a different subordinate convening authority. The new convening authority has declared, under oath, that he was not told the reasons for Mr. Rishikof's termination; had no discussions of pretrial agreements prior to or during his time as the Convening Authority; and retained full authority to enter into pretrial agreements during his tenure. This action was a perfect "by the book" example of how to remove a case from a subordinate convening authority and send it to a different subordinate convening authority, without causing unlawful influence or the appearance thereof.

The Defense tries to claim that the actual act of firing the Convening Authority is what constituted the Unlawful Influence, and that this was done in "retaliation" of Mr. Rishikof's consideration of guilty pleas. But it is important to remember that Mr. Rishikof was not a typical convening authority in a normal military justice sense. He did not command any soldiers, airmen, sailors or Marines. He was fully aware that he was hired as a highly qualified expert, terminable at will, to act as Convening Authority and the Director of the Office of Military Commissions. Unlike military commanders, whose military justice responsibilities are just a part of their duties, Mr. Rishikof's entire job existed to facilitate military commissions. Once SecDef determined he should be terminated, Mr. Rishikof had no other duties left to perform for DoD. The firing was not "retaliation" for an act (it is important to note that no such "act" had actually occurred as there was no fully-signed PTA) any more than a Commander being relieved over a loss of confidence in his ability to command is being "retaliated" against. It was a simple personnel action that is unquestionably within the authority of the SecDef, as the sole-statutorily recognized Convening Authority, to make.

Q. All right. So based on your experience in the military then, there's a general order that's issued that isn't rescinded, someone else takes command; you would agree that that general order is still in place?

A. I would agree.

Tr. at 20932–34.

Because Mr. Work was not in office during the time many of the issues that caused Mr. Rishikof's firing occurred, his testimony regarding the justification for firing is speculative and thus insufficient to establish unlawful influence. Moreover, even if Mr. Work did have an agreement with Mr. Rishikof to bypass the Office of the General Counsel, that agreement would not automatically remain in place once DepSecDef Shanahan's appointment began. It would be naïve to think otherwise. Mr. Shanahan was the DepSecDef at the time the memo was submitted in December 2017, and his office obviously believed it needed to be coordinated because the memo was sent directly back to OGC for their input shortly after it arrived. As such, former DepSecDef Work's anticipated testimony does not support the Defense's theory of unlawful influence.

<u>The Prosecution's Position Has Been Consistent from Its First Response in AE 555A (GOV).</u>

To the extent the Defense wish to convince the Commission that "the government's assertions . . . have, to say the least, evolved over time," AE 555GG (KSM) at 2, such belief is inaccurate and should be rejected. As noted earlier, it is the Defense that continues to mine for new and evolving theories of malfeasance to assign to the Department's actions. Instead, the Prosecution has consistently maintained that Messrs. Rishikof and Brown were terminated for their failure to coordinate on non-judicial acts as set forth in the sworn declarations submitted by SecDef and the AGC. The Prosecution has only sought to respond to the Defense's own repeated practice of advancing different and new speculative claims and theories of unlawful influence, and then abandoning them upon realizing there is no evidence to support them.

Despite Defense contentions otherwise, the Prosecution's factual assertions regarding the reasons for the termination of Messrs. Rishikof and Brown have also remained consistent

throughout the litigation of the AE 555 motion series. Specifically, both men were terminated because of their "questionable decision-making, professional judgement, and temperament they displayed in administratively managing the Office of Military Commissions," that included (but was not limited to):

    a. Their December 2017 submission of an uncoordinated internal memorandum that would potentially impact the organizational structure and responsibilities for multiple components, offices, and service currently outside the OMC;

    b. Their January 2018 communication with the Commander of a Combatant Command (CCDR) and uncoordinated request for aerial imagery of a sensitive site; and

    c. Their subsequent January 2018 uncoordinated request that the United States Coast Guard (USCG) capture aerial imagery of that same site.

AE 555E (GOV), Attachment C, ¶ 4 (Declaration of Mr. Castle). Although the Defense does not believe that these reasons are the true cause for the termination of Messrs. Rishikof and Brown, the Defense has failed to provide any evidence, including more than four hours of testimony from LT Newman regarding his investigation. Rather the Defense relies wholly on what can only, at best, be described as "mere allegation or speculation" to demonstrate otherwise. *See Boyce*, 76 M.J. at 251.

      In their latest attempt to satisfy their burden, the Defense advance the theory that the plain implication of the anticipatory memorandum at AE 555DD, Attachment E, is that the act of firing the Convening Authority and his Legal Advisor under these circumstances could appear to a reasonable observer to constitute actual or apparent unlawful influence. Otherwise, according to the Defense, it would never have occurred to the Office of General Counsel in the first instance to form "a group of non-testifying expert consultants" to conduct the analysis, draft a memorandum, or otherwise address the issue. This argument is nonsensical.

      The Defense's repeated (and often frivolous) allegations of unlawful influence in this case are well known. As LT Newman testified, Deputy Secretary Work was personally aware that at least one military judge found an appearance of unlawful influence in the DepSecDef's

order purporting to compel the military judges to move to Guantanamo Bay. OGC was certainly aware of the numerous unlawful influence motions filed by the Defense in the past, alleging unlawful influence over statements made by Attorney General Holder, President Obama, President Trump, former Secretary Carter and former Chairman of the Joint Chiefs of Staff, General Dempsey, multiple Directors of the CIA, and other United States Government officials. And indeed, as expected, the Defense filed the unlawful influence motion at issue here, almost immediately after Messrs. Rishikof and Brown were removed, based solely on conjecture and without any facts, let alone evidence, to support their claim. Given the Defense's penchant for claiming unlawful influence, the AGC affirmatively seeking and receiving legal advice and taking reasonable steps to avoid any appearance of unlawful influence in advance of the personnel action was the prudent thing to do. To have taken a personnel action without contemplating the collateral effects – particularly on continuing litigation – would be precisely the type of impetuous behavior the former judge in this case decried when abating the proceedings in response to "Change 1." *See* AE 485C, Order, n.13 ("The process of this sudden change is reminiscent of Change 1 to the Regulation for Trial by Military Commission (2011), Chapter 6, Military Judges, 6-2. Detail of Military Judges, dated 7 January 2015, which was also a bolt out of the blue, rendered with no notice, no circulation, and no discussion.").

When making the removal recommendation to the SecDef due to Mr. Rishikof's lack of coordination, the AGC was certainly aware that the Convening Authority was contemplating plea negotiations, and that the Attorney General had expressed concern about pleas to the SecDef. While the actual reasons for the termination, given under oath, clearly involved non-judicial acts, it was still important to be sure that the terminations were done in such a way that would not create even the appearance of unlawful influence. The Defense suggestion that the AGC's desire to "minimize the potential risk"[4] of unlawful influence somehow amounts to

[4] AE 555DD (GOV), Attachment E, ¶ 2.

"some evidence" of unlawful influence is circular deductive logic that should be rejected on its face.

Moreover, a subordinate convening authority is not immune from removal by a superior authority for proper reasons merely because the subordinate is contemplating judicial action at the time. Otherwise, a subordinate convening authority could never be relieved and replaced. The SecDef should not have to tolerate an ineffective convening authority under such circumstances. The important doctrine of unlawful influence should not be distorted and expanded in this way. Military justice provides no support for this theory. Good order and discipline would erode if a commander could not relieve or replace an ineffective subordinate commander simply because the subordinate also happens to possess courts-martial convening authority. AE 555DD (GOV) at 15–16.

In sum, a disinterested observer, knowing all of the facts and circumstances of the terminations—including the serial nature of Mr. Rishikof's failure to coordinate, the Attorney General's legitimate role in the consideration of pre-trial agreements, and the fact that

Mr. Coyne, as the successor Convening Authority, had no discussions with anyone in DoD or DOJ regarding pretrial agreements (before or after he was hired), and had no limitations placed on his authority to enter into pretrial agreements—would harbor no doubts about the fairness of these proceedings. But even if the Military Judge determined that there is "some evidence" of the Defense-contrived pretext argument that Mr. Rishikof was fired for his consideration of pretrial agreements, and that the Defense further met their burden that the unlawful influence has a logical connection to the Commission in terms of its potential to cause unfairness in the proceedings, the Prosecution nevertheless has demonstrated beyond a reasonable doubt that these proceedings are untainted. *See United States v. Lewis*, 63 M.J. 405, 413, (C.A.A.F. 2006) (citing *United States v. Stoneman*, 57 M.J. 35, 41 (C.A.A.F. 2002)). As the Prosecution has previously briefed, *see* AE 555DD (GOV) at 26–29, the Accused has no right to a particular Convening Authority and no right to enter into a pretrial agreement. The Government's decision to entertain plea negotiations is a policy decision requiring wide-ranging

interagency coordination across the Executive Branch for which there is no judicial enforcement mechanism. Moreover, none of the Accused have relied to their detriment on any approved pretrial agreement by pleading guilty. *United States v. Villareal*, 52 M.J. 27, 30-31 (C.A.A.F. 1999). Despite Mr. Nevin's claim that his client signed a pretrial agreement, there is no evidence of that. He has not provided the agreement to the Commission or even to the Prosecution, nor has he disclosed any of the terms of that agreement. Significantly, neither he nor Mr. Rishikof in his declarations asserts that the Convening Authority had approved an agreement. Mr. Connell also had no pretrial agreement pending before the Convening Authority, and there has been no evidence that any of the other teams had anything more than initial plea discussions with the Convening Authority. Furthermore, even if the Military Judge determines that the termination created at least the appearance of unlawful influence, this appearance would have been cured by the transfer of the case to Mr. Coyne. *See Villareal*, 52 M.J. at 30 ("[E]ven if the telephone call created an appearance of unlawful command influence, a conclusion we need not reach here, it was cured by the transfer of the case to a new convening authority for separate consideration and action."). Documents provided in the course of litigating this matter support Mr. Coyne's sworn declaration that no one in the Department Defense or from the Executive Branch had any discussion with him on the topic of entering into pretrial agreements. AE 555DD (GOV), Attachment M, ¶ 2 (Declaration of Mr. Coyne). Further, if any of the defendants wished to discuss the terms of a pretrial agreement with him, he "retain[ed] the full independence and authority to execute [his] duties as Convening Authority for Military Commissions." *Id.* at ¶ 3. Therefore, if any appearance of unlawful influence ever existed it was fully cured by the assignment of a subsequent Convening Authority fully authorized to exercise the requisite independence and who had never discussed with anyone the topic of pretrial agreements. Any reasonable observer would view a perfectly clean-slate as a fair and impartial one.

There is now an ample record on this issue to decide whether the Defense has identified "some evidence" of actual or apparent unlawful influence on account of the removal of Messrs. Rishikof and Brown. No more valuable court-time, or the time of high-level government

officials with other important duties, should be expended for additional testimony or discovery in light of the ample record currently before the Commission. The Prosecution therefore respectfully requests that the Commission deny all of the Defense's pending motions in this series and bring this ancillary unlawful influence litigation to a close so the Commission can start once again moving toward justice of the 2,976 people who were killed over seventeen years ago.

Respectfully submitted,

__________//s//____________________
Clay Trivett
Managing Trial Counsel

**Attachment F**
Case No. 08-002, Response to Order (CMCR, Mar. 26, 2018)

**MILITARY COMMISSIONS TRIAL JUDICIARY**
**GUANTANAMO BAY, CUBA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**ABD AL-RAHIM HUSSEIN MUHAMMAD ABDU AL-NASHIRI** | **RESPONSE TO ORDER**<br><br>of Court of Military Commission Review<br>CMCR Case No. 18-002<br><br>**26 March 2018** |

1. On 22 March 2018, the Court of Military Commission Review (CMCR) in Case No 18-002, ordered the undersigned Military Judge presiding over the Military Commission Case of *United States v. Abd Al-Rahim Hussayn Muhammad Al-Nashiri* to answer the following question:

> Assuming Commander Mizer or another learned counsel is detailed to represent Al-Nashiri and files a notice of appearance, will the military commission resume the proceedings before it without being ordered to do so by this Court?

2. I respond in the negative for the following reasons:

a. The appointment of Commander Mizer or another learned counsel was one of the solutions contemplated to mitigate what this Commission determined was Mr. Kammen's abandonment of his client. However, the appointment of Commander Mizer or another learned counsel will not resolve what this Commission views as an existential threat to its ability to bring this case to trial. Those issues include:

(1) The validity of the claimed "unilateral and unreviewable" authority of the Chief Defense Counsel (CDC) to excuse Defense Counsel after appearance before the Commission; and

(2) The authority of this Commission to issue binding orders and the concomitant duty of those subject to said orders and their supervisors to obey those orders.

b. This situation is analogous to those in which appellate courts have declined to moot review of expired short-term agency orders, because such orders are "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v Interstate Commerce Com*., 219 US 498 (1911); *Safari Club International v. Jewell,* 842 F.3d 1280 (D.C. Cir. 2016). Mooting the issues of excusal authority and willful disobedience of Commission orders based on appointment of new Learned Counsel will leave unresolved the underlying issues regarding the military judge's authority to ensure continuity of representation by being the sole authority to excuse counsel who have appeared before the Commission and the military judge's ability to enforce judicial orders.

3. It is apparent that without the imprimatur of this Honorable Court (or perhaps that of its superior Federal Circuit Court), the Commission is powerless to move the case forward to a fair, just, and timely disposition as the CDC has given every indication he will continue to exercise his claimed unilateral and unreviewable power to excuse counsel.

**SUBMITTED** this 26th day of March, 2018.

*//S//*

VANCE H. SPATH, Colonel, USAF
Military Judge
Military Commissions Trial Judiciary

**Attachment G**
Prof. Aaron O'Connell, Twitter (Nov. 4, 2017)

 G-1

Aaron O'Connell
@OConnellAaronB

Follow

New dictionary entry in honor of #Gitmo Judge Vance Spath. Bravo to @carolrosenberg for such fine reporting.

**Spath**: *Verb. transitive*

1. To disregard law and the Constitution while angrily claiming to defend it.

2. To lose one's cool and confine U.S. citizens without authority, while complaining they should have called you "Your Honor" instead of just "colonel."

*The judge just spathed all over my client's rights!*

*If we get spathed, we'll have to appeal.*

**Origin**: Camp Justice, Guantanamo Bay, Cuba (2017).

**See also:** Anything ever written by George Orwell.

7:37 AM - 4 Nov 2017

**17** Retweets **28** Likes